Edward Gartenberg (State Bar No. 102693)
Milena Dolukhanyan (State Bar No. 303157)
GARTENBERG GELFAND HAYTON LLP
15260 Ventura Boulevard, Suite 1920
Sherman Oaks, California 91403
Telephone: (213) 542-2100
Facsimile: (213) 542-2101
egartenberg@gghslaw.com
mdolukhanyan@gghslaw.com

Attorneys for Defendants
TWEED FINANCIAL SERVICES,
INC. and ROBERT RUSSEL
TWEED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>TWEED FINANCIAL SERVICES, INC. and ROBERT RUSSEL TWEED,<br><br>Defendants. | Case No.: 2:17-cv-07251-FMO-E<br><br>**DEFENDANTS TWEED FINANCIAL SERVICES, INC. AND ROBERT RUSSEL TWEED'S NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND TO STRIKE**<br><br>[Filed Concurrently with Declaration of Edward Gartenberg and Milena Dolukhanyan and Proposed Order]<br><br>Date: February 22, 2018<br>Time: 10:00 a.m.<br>Ctrm.: 6D |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 22, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Fernando M. Olguin, 350 West 1st Street, Los Angeles, California 90012, Defendants, Tweed Financial Services, Inc. and Robert Russel Tweed (the "Tweed Defendants") do hereby move to dismiss the entire complaint pursuant to Rule 12(b)(6), Fed. R. Civ.

P., or in the alternative to strike the Section III of the Prayer for Relief for civil penalties pursuant to Rule 12(f), Fed. R. Civ. P.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities together with the files and records of this entire case and any evidence and/or argument that may be adduced at a hearing held by the Court on this Motion.

**Pursuant to Local Rule 7-3, counsel for Tweed Defendants had already met and conferred telephonically with Lynn Dean, counsel for Plaintiff Securities and Exchange Commission on December 27, 2017 prior to filing the Motion on January 4, 2018. However, the Motion inadvertently left out the statement reflecting the meet and confer process. Although Tweed Defendants had already met the requirements pursuant to Local Rule 7-3, following the Court's Order [Doc. 22], counsel for Tweed Defendants again met and conferred on January 17, 2018. (See Declarations of Edward Gartenberg and Milena Dolukhanyan filed concurrently with the Motion).**

Dated: January 25, 2018                    Respectfully submitted,

                                           GARTENBERG GELFAND HAYTON LLP

                                           By:    /s/ Edward Gartenberg
                                                  Edward Gartenberg
                                                  Milena Dolukhanyan
                                                  Attorneys for Defendants
                                                  Tweed Financial Services, Inc. and
                                                  Robert Russel Tweed

# TABLE OF CONTENTS

I. FACTS AND SUMMARY OF ARGUMENT ..................................................... 1

II. ARGUMENT ........................................................................................................ 2

   A. The SEC Claims Under The Advisers Act Are Subject To A Five-Year Statute Of Repose ....................................................... 2

      1. *Gabelli* Held the Five-Year Limitation of 18 USC § 2462 Applies ................................................................ 2

      2. §2462 Is a Statute of Repose ................................................................ 4

      3. Section III of the Prayer for Monetary Penalties Should Be Stricken ............................................................ 4

      4. § 2462 Applies to All of the SEC Claims .......................................... 5

   B. The SEC Cannot Use a "Continuing Acts" Exception to Circumvent the Limitations Period ............................................. 7

III. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*,
  522 U.S. 192 (1997) ............................................................................................. 2

*Bradford v. Scherslight*,
  803 F.3d 382 (9th Cir. 2015) ................................................................................ 2

*Corp. v. Morgan*,
  536 U.S. 101S. Ct. 2061 (2002) ........................................................................... 8

*FEC v. Williams*,
  104 F.3d 237 (9th Cir. 1996) ............................................................................ 2, 5

*Gabelli v. SEC*,
  568 U.S. 442 (2013) ..................................................................................... 2, 4, 5

*Gonzalez v. Hasty*,
  802 F.3d 212 (2d Cir. 2015) ................................................................................. 8

*In re Comverse Technology, Inc. Securities Litigation*,
  543 F. Supp. 2d 134 (E.D.N.Y. February 20, 2008) ............................................ 8

*Johnson v. SEC*,
  87 F.3d 484 (D.C. Cir. 1996) ............................................................................ 2, 5

*Kokesh v. SEC*,
  137 S. Ct. 1635 (2017) ...................................................................................... 4, 5

*Rawlings v. Ray*,
  312 U.S. 96 (1941) ................................................................................................ 2

*SEC v. DiBella*,
  409 F.Supp.2d 122 (D. Conn. 2006) ..................................................................... 7

*SEC v. Microtune*,
  783 F. Supp. 2d 867 (N.D. Tex. 2011) .................................................................. 7

*U.S. v. Perry*,
  431 F.2d 1020 (9th Cir. 1970) ............................................................................... 6

*Wallace v. Kato*,
  549 U.S. 384 (2007) .............................................................................................. 2

**STATUTES**

15 U.S.C.
§80b-9(e)(1) ...................................................................................................................5

28 U.S.C.
§2462 ....................................................................................................................passim

Advisers Act
§209(e)(1) .......................................................................................................................5

Federal Rules of Civil Procedure
Rule 12(b)(6) ................................................................................................................11
Rule 12(f). ....................................................................................................................11

**TREATISES**

Webster's Third New International Dictionary 1668 (1976) .......................................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  FACTS AND SUMMARY OF ARGUMENT

The Plaintiff, the Securities and Exchange Commission ("SEC"), has filed this action based upon an offering to 24 investors more than eight years ago. The SEC alleges that between December 2009 and March 2010, defendant Robert Russel Tweed, a registered securities broker and investment adviser, acting through his wholly-owned advisory firm, defendant Tweed Financial Services, Inc. (collectively "Tweed") raised approximately $1.7 million for Athenian Fund, L.P. (the "Fund"), a limited partnership.[1] The SEC asserts that the offering documents for the Fund indicated that Fund was established to invest in another fund (known as a "master fund"), but the offering documents gave Tweed authority to make other investments in his discretion.[2] In March 2010, consistent with Tweed's discretionary authority, he directed from the original master fund to another master fund.[3]

The complaint is about two investments made. The first was a $650,000 investment made in 2010 by the second master fund in a gold mining venture in Africa.[4] The SEC asserts that Tweed knew by October 2010 that these funds has not been invested in the manner described in offering documents and by February 2012 he specifically knew about their use for the gold mining venture.[5] The second was a $200,000 loan Tweed made in March 2011 to a software start-up company.[6] The SEC claims that Tweed failed thereafter to disclose problems with these investments including issuing misleading quarterly accountings about them.[7] There is no allegation that Tweed personally profited from either investment.

---

[1] Complaint ¶20.
[2] Complaint ¶22.
[3] Complaint ¶30.
[4] Complaint ¶¶34, 40.
[5] Complaint ¶¶35, 40.
[6] Complaint ¶50.
[7] Complaint ¶¶59-67.

1
**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO STRIKE**

Thus, the claims against Tweed accrued no later than February 2012 and arguably earlier. It is, "the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action,…'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings* v. *Ray*, 312 U.S. 96, 98 (1941). See also, *Bradford v. Scherslight*, 803 F.3d 382, 387 (9th Cir. 2015). The Complaint was filed October 2, 2017—more than five years after the claims accrued.

The Supreme Court held in *Gabelli v. SEC,* 568 U.S. 442 (2013) that claims under the anti-fraud provisions of the Investment Advisers Act of 1940 seeking penalties are subject to the five-year limitations provision of 28 U.S.C. §2462. Previously, in *FEC v. Williams,* 104 F.3d 237 (9th Cir. 1996), the Ninth Circuit held that §2462 applied to both equitable and penal sanction imposed by the government. Alternatively, both the monetary and non-monetary relief sought here by the SEC should be deemed "penal." See *Johnson v. SEC,* 87 F.3d 484, 488-489 (D.C. Cir. 1996) (Applying limitations provision of §2462 to SEC causes of action seeking censure and suspension as penalties.). Accordingly, as more fully discussed below, the action is time-barred.

## II. ARGUMENT

### A. The SEC Claims under the Advisers Act Are Subject to a Five-Year Statute of Repose

#### 1. *Gabelli* Held the Five-Year Limitation of 18 USC § 2462 Applies

28 U.S.C. § 2462 provides that, "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon." In *Gabelli, supra,* in a case brought by the SEC against an investment adviser and its chief operating officer and portfolio manager, the Supreme Court held that §2462 applied

to the SEC and that the time began to run when the fraud was complete regardless of when the SEC discovered it. Chief Justice Roberts, writing for a unanimous Court, explained:

> **This case centers around the meaning of *28 U.S.C. §2462*:** "an action . . . for the enforcement of any civil fine, penalty, or forfeiture . . . shall not be entertained unless commenced within five years from the date when the claim first accrued." **Petitioners argue that a claim based on fraud accrues--and the five-year clock begins to tick--when a defendant's allegedly fraudulent conduct occurs.**
>
> **That is the most natural reading of the statute.** "In common parlance a right accrues when it comes into existence . . . ." *United States v. Lindsay*, 346 U.S. 568, 569, 74 S. Ct. 287, 98 L. Ed. 300 (1954). **Thus the "standard rule" is that a claim accrues "when the plaintiff has a complete and present cause of action**." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (internal quotation marks omitted); see also, *e.g.*, *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997); *Clark v. Iowa City*, 87 U.S. 583, 20 Wall. 583, 589, 22 L. Ed. 427 (1875). That rule has governed since the 1830's when the predecessor to *§2462* was enacted. See, *e.g.*, *Bank of United States v. Daniel*, 37 U.S. 32, 12 Pet. 32, 56, 9 L. Ed. 989 (1838); *Evans v. Gee*, 36 U.S. 80, 11 Pet. 80, 84, 9 L. Ed. 639 (1837). And that definition appears in dictionaries from the 19th century up until today. See, *e.g.*, 1 A. Burrill, A Law Dictionary and Glossary 17 (1850) ("an action *accrues* when the plaintiff has a right to commence it"); Black's Law Dictionary 23 (9th ed. 2009) (defining "accrue" as "[t]o come into existence as an enforceable claim or right"). This reading sets a fixed date when exposure to the specified Government enforcement efforts ends, advancing "the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Rotella v. Wood*, 528 U.S. 549, 555, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000).

*Id.* at 447-448 (emphasis added).

### 2. §2462 Is a Statute of Repose

The five-year limit is a statute of repose. While a statute of limitations may start to run at a date other than when a wrongful act or omission occurred, or may be extended based upon later discovery, a statute of repose places an outside limit on bringing an action which is not ordinarily subject to extension or exception. Thus, in *Gabelli,* the Supreme Court specifically rejected a discovery ruling for §2462, holding, "grafting the discovery rule onto *§2462* would... leave defendants exposed to Government enforcement action not only for five years after their misdeeds, but for an additional uncertain period into the future. And repose would hinge on speculation about what the Government knew, when it knew it, and when it should have known it." *Id.* at 443. See also, *Kokesh v. SEC,* 137 S. Ct. 1635, 1642 (2017) (Applying the five-year limit of §2462 to SEC disgorgement claims, Justice Sotomayor, writing for a unanimous Court in another investment advisory case, held, "Statutes of limitations 'se[t] a fixed date when exposure to the specified Government enforcement efforts en[d].' [citing *Gabelli*]. Such limits are ''vital to the welfare of society'' and rest on the principle that ''even wrongdoers are entitled to assume that their sins may be forgotten.'' *Id.* at 449.")

### 3. Section III of the Prayer for Monetary Penalties Should Be Stricken

As discussed further below, all of the SEC's claims should be dismissed as untimely penalties. However, at a minimum, Section III of the Prayer for Relief which seeks monetary penalties should be stricken. There can be no doubt that this is a prayer for civil penalties. The language of Section III citing to Section 209(e)(1) of the Advisers Act, 15 U.S.C. §80b-9(e)(1) **uses** the term penalties as does the referenced statute. *Gabelli, supra* and *Kokesh, supra,* confirm that monetary penalties are subject to the five-year limitation period of §2462.

### 4. § 2462 Applies to All of the SEC Claims

*Gabelli, supra,* held that §2462 applies to "penalties," but did not explicitly decide whether "penalties," included the equitable relief of injunctive relief and disgorgement. *Id.* at 447, n.1. In *Kokesh, supra,* the Supreme Court made it clear that the equitable relief of disgorgement was also a "penalty" covered by §2462. In the Ninth Circuit, *FEC v. Williams,* 104 F.3d 237 (9th Cir. 1996) has long held that the statute of limitations set forth in §2462 should apply to both equitable and penal sanctions imposed by government agencies. The Court held:

> [The Federal Election Commission] argues that § 2462 does not apply to actions for injunctive relief. This assertion runs directly contrary to the Supreme Court's holding in *Cope v. Anderson,* 331 U.S. 461, 464, 91 L. Ed. 1602, 67 S. Ct. 1340 (1947). *Cope* holds that "equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy." In other words, because the claim for injunctive relief is connected to the claim for legal relief, the statute of limitations applies to both.

*Id.* at 240.

The D.C. Circuit Court of Appeals reached the same conclusion in an SEC action employing a different analysis. In *Johnson v. SEC,* 87 F.3d 484 (D.C. Cir. 1996) the Court of Appeal vacated an SEC censure and suspension against a securities industry supervisor under the Securities Exchange Act of 1934 because it held that the five-year limitation period of §2462 applied and the SEC proceeding was not commenced within the limitations period. The Court held that the application of the statute of limitation turned on the meaning of "penalty." Given that the statute did not itself define "penalty," the Court explained that in common usage a penalty is, "the suffering in person, rights or property which is annexed by law or judicial decision to the commission of a crime or public offence. *Id.* at 253, quoting Webster's Third New International Dictionary 1668 (1976). The Court then analyzed Supreme Court precedent and concluded that "penalty or feature" under

§2462 referred to something imposed in a punitive way for an infraction of public law and not solely for redressing a private injury. *Id.* at 253-255. The *Johnson* Court also found that the Ninth Circuit's decision in *U.S. v. Perry,* 431 F.2d 1020 (9th Cir. 1970) implicitly supported the same conclusion when it held that government could maintain action for forfeiture of bail bond even after five years, because such action was essentially just "a proceeding upon the breach of a condition of a contract"). *Id.* at 254. Applying the foregoing to the SEC's sanctions of censure a suspension (which are essentially equivalent to the non-monetary injunctive relief sought here),[8] the Court reasoned that these remedies constituted penalties subject to the limitation of §2462, explaining:

> Here, the sanctions imposed by the SEC--censure and a six-month suspension--clearly resemble punishment in the ordinary sense of the word. The SEC not only restricted Johnson's ability to earn a living as a supervisor during her six-month suspension, but the suspension was also likely to have longer-lasting repercussions on her ability to pursue her vocation. Suspended brokers must forever after disclose the sanction, and it becomes part of their permanent public file. *See* Form ADV, 17 C.F.R. § 279.1, Part I, Item 11(C)(4) (must disclose whether SEC has "entered an order denying, suspending, or revoking the applicant's … registration"). Congress has also required securities associations such as the National Association of Securities Dealers to set up a toll-free number for investors and other members of the public

---

[8] An SEC injunction would have severe collateral consequences on the defendants. The following are examples only: (1) Section 9(a) of the Investment Company Act would bar that adviser from serving as an adviser to a registered investment company absent an SEC exemptive order; (2) Section 9(a) would also prohibit a broker-dealer affiliated with a barred adviser from serving as a principal underwriter to a registered investment company without an SEC exemptive order; (2) Injunctions against individuals would prohibit the adviser or the broker-dealer from employing those individuals while serving as an investment adviser to, or a principal underwriter for, a registered investment company without an SEC exemptive order, regardless of whether the individual was involved with the work performed for the registered investment company; (3) Article III of FINRA's bylaws contains a similar automatic bar, referred to as "statutory disqualification;" and Rule 506(d) under the Securities Act of 1933 prohibits an issuer from utilizing the safe harbor for private placements afforded by Rule 506 if it is a "bad actor" or a "bad actor" is participating in the offering or is related to the issuer in certain designated capacities. "Bad actor"-designation events include injunctions in connection with securities industry activities, certain SEC administrative orders entered under Sections 203(e) or 203(f) of the Advisers Act.

to check whether brokers or other brokerage employees have been subject to disciplinary actions. *See* 15 U.S.C. § 78o-3(i). These collateral consequences of the censure and suspension, while not the central determinant in whether a sanction reaches penalty status, do suggest its punishment-like qualities.

This sanction would less resemble punishment if the SEC had focused on Johnson's current competence or the degree of risk she posed to the public. Despite the SEC's claims to the contrary, however, it is evident that the sanctions here were not based on any general finding of Johnson's unfitness as a supervisor, nor any showing of the risk she posed to the public, but rather were based on Johnson's alleged failure reasonably to supervise Zetterstrom, as required by section 15(b) of the [Exchange Act].

*Id.* at 488-489.

The same analysis was utilized by the Court in *SEC v. Microtune,* 783 F. Supp. 2d 867, 885 (N.D. Tex. 2011) in which the Court held that injunctive relief and officer-and-director bar constituted penalties as a matter of law. *See also, SEC v. DiBella,* 409 F.Supp.2d 122, 127-128, n.3 (D. Conn. 2006) (Request for permanent injunction and officer-and-director bar sought to punish defendant for role in alleged backdating and were penalties subject to §2462.)

### B. The SEC Cannot Use a "Continuing Acts" Exception to Circumvent the Limitations Period

As noted above, the statute of limitation accrued as soon as the claims came into existence. That occurred more than five years before this action was filed. Tweed anticipates that the SEC may seek to avoid this by arguing that subsequent financial reports to members of the Fund were misleading with respect to the earlier investments and that these reports, or omissions in describing the 2010 and 2011 investments were continuing acts which provide an exception to the five-year statute.

As the District Court in *SEC v. Straub* 2016, U.S. Dist. LEXIS 136481 (S.D.N.Y. Sep. 30, 2016) explained in rejecting the SEC's attempt to apply the

1  doctrine to avoid the limitations period imposed by §2462, "The continuing violation
2  doctrine is an exception to the general rule of accrual that applies to claims
3  'composed of a series of separate acts that collectively constitute one unlawful . . .
4  practice' - usually involving claims that by their nature accrue only after the plaintiff
5  has been subjected to some threshold amount of mistreatment - and does not apply
6  to 'discrete unlawful acts, even where those discrete acts are part of a 'serial
7  violation[ ].' *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Nat'l R.R.*
8  *Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106
9  (2002)). Where the doctrine applies, 'the limitations period begins to run when the
10 defendant has 'engaged in enough activity to make out an actionable . . . claim.'" *Id.*
11 at *67-68.

12    The continuing acts exception cannot be used to circumvent the limitations
13 period here.  While Tweed has not located Ninth Circuit authority directly on point,
14 courts in the Second Circuit and the Third Circuit have expressed a reluctance to
15 apply the continuing acts doctrine at all in securities cases.  *See In re Comverse*
16 *Technology, Inc. Securities Litigation,* 543 F. Supp. 2d 134 (E.D.N.Y. February 20,
17 2008), in which the Court, while deferring action on the issue, wrote:

> The "continuing violations doctrine" operates to delay the triggering of a statute of limitations where a continuing violation is "occasioned by continual unlawful acts, not continual ill effects from a single violation." New York v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650, 660 (W.D.N.Y. 2003). The weight of authority in this circuit is skeptical of the application of the continuing violations doctrine in securities fraud cases. See, e.g., SEC v. Jones, 2006 U.S. Dist. LEXIS 22800, 2006 WL 1084276 (S.D.N.Y. Apr. 25, 2006); De la Fuente v. DCI Telecommunications, Inc., 206 F.R.D. 369, 385-86 (S.D.N.Y. 2002) ("It is not at all clear that the continuing fraud doctrine applies in securities fraud cases."); SEC v. Caserta, 75 F. Supp. 2d 79, 89 (E.D.N.Y. 1999); Stoll v. Ardizzone, 2007 U.S. Dist. LEXIS 75769, 2007 WL 2982250 at *2 (S.D.N.Y. Oct. 9, 2007) ("there is no 'continuing violations' exception to the absolute bar of [**56] the statutory limitations period"), But see In re Dynex Capital Sec. Litig., 2006 U.S. Dist. LEXIS 4988, 2006 WL 314524 at *5 (S.D.N.Y. Feb.

10, 2006) (where a "series of fraudulent misrepresentations is alleged, this period of repose begins when the last alleged misrepresentation was made" (citation and internal quotation marks omitted))

*Id.* at 155.

In *In re DVI Secs. Litig.,* 2005 U.S. Dist. LEXIS 17286, 2005 WL 1307959, at *11 (E.D. Pa. May 31, 2005) the Court recognized the application in the Third Circuit of the continuing violations doctrine to employment/civil rights cases, but declined to extend it to a case brought under securities laws.

In *SEC v. Harden,* 2006 U.S. Dist. LEXIS 2681 (W.D. Mich. Jan. 12, 2006) the Court specifically held that §2462 is not subject to a continuing acts exception:

> [28 U.S.C. § 2462], in light of its wording, has been applied by federal courts to limit actions brought by federal agencies, including the S.E.C., to assess monetary penalties. *3M Co. v. Browner,* 305 U.S. App. D.C. 100, 17 F.3d 1453, 1461 (D.C. Cir. 1994); *Johnson v. S.E.C.,* 318 U.S. App. D.C. 250, 87 F.3d 484, 488 (D.C. Cir. 1996). This is a statute of repose, and not a statute of limitations, which means that it is not subject to equitable extensions, such as due to delayed discovery, fraudulent concealment or the interest of "public policy." *3M Co.,* 17 F.3d at 1460-61; *Johnson,* 87 F.3d at 492. It is also not subject to extension on the ground that multiple violations constitute a single "continuing violation." *See Newby v. Enron Corp. (In re Enron Corp. Sec.)* 310 F. Supp. 2d 819, 844 (S.D. Tex. 2004) [*5] (citing *Caviness v. DeRand Resources Corp.,* 983 F.2d 1295, 1301-02 (4th Cir. 1993)); *S.E.C. v. Caserta,* 75 F. Supp. 2d 79, 89 (E.D.N.Y. 1999); *De La Fuente v. DCI Telecomms., Inc.,* 259 F. Supp. 2d 250, 265 (S.D.N.Y. 2002).

*Id.* at *2.

Similarly, in *SEC v. Straub, supra,* the Court explained:

> Although the terms of Section 2462 do not appear to categorically preclude application of the continuing violation doctrine, . . the doctrine is a poor fit for the alleged violations here — repeated, discrete uses of the mails and offers and payments of bribes. *Cf. In re Comverse Tech., Inc. Sec. Litig.*, 543 F. Supp. 2d 134, 155 (E.D.N.Y. 2008) (noting that the "weight of authority in [the Second Circuit] is skeptical of the application of the continuing violations doctrine in securities fraud cases"); *de la Fuente v. DCI Telecommc'ns, Inc.*, 206 F.R.D. 369, 385-

9

86 (S.D.N.Y. 2002) ("It is not at all clear that the continuing fraud doctrine applies in securities fraud cases."). Application of the continuing violation doctrine to Section 2462 is further called into question, at least in the SEC enforcement context, by the Supreme Court's decision in *Gabelli*, which, as discussed above, rejected the application of the discovery rule (which, like the continuing violation doctrine, is an exception to the general rule of accrual) to Section 2462. *See Gabelli*, 133 S. Ct. at 1221-24. The Court thus rejects the SEC's argument that it may pursue FCPA violations that occurred outside of the limitations period simply on the basis that those violations were similar in character to and part of the same alleged "scheme" as violations that occurred within the limitations period.

*Id.* at *68-*69.

## III. CONCLUSION

For the foregoing reasons, the entire complaint should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P. for failure to state a claim upon which relief can be granted, or in the alternative to strike the Section III of the Prayer for Relief for civil penalties pursuant to Rule 12(f), Fed. R. Civ. P., as constituting a prayer for relief that is immaterial as it is barred by the applicable statute of limitations.

Dated: January 25, 2018         Respectfully submitted,

                                GARTENBERG GELFAND HAYTON LLP

                                By:     /s/ Edward Gartenberg
                                        Edward Gartenberg
                                        Milena Dolukhanyan
                                        Attorneys for Defendants
                                        Tweed Financial Services, Inc. and
                                        Robert Russel Tweed