LYNN M. DEAN (Cal. Bar No. 205562)
Email: deanl@sec.gov
DoHOANG T. DUONG (Cal. Bar No. 219127)
Email: duongdo@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
John W. Berry, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                 Plaintiff,<br><br>       vs.<br><br>TWEED FINANCIAL SERVICES, INC. and ROBERT RUSSEL TWEED,<br><br>                 Defendants. | Case No. 2:17-cv-7251<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to Sections 209(d), 209(e)(1) and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) & 90b-14.

2.     Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of

business alleged in this complaint.

3.     Venue is proper in this district pursuant to Section 214 of the Advisers Act, 15 U.S.C. § 90b-14, because one or more of the acts or transactions constituting the violations alleged occurred within this district.  In addition, venue is proper in this district because Defendants reside in this district.

## SUMMARY

4.     From October 2, 2012 to April 2014, Defendant Tweed Financial Services, Inc., ("TFSI"), an investment advisory firm in California, and its owner, defendant Robert Russel Tweed ("Tweed"), defrauded their clients by misleading them about how their money was invested and how poorly those investments were performing.  During this period, defendants sent their clients false and misleading statements of their accounts' worth, and omitted to send clients required audited financial statements that would have revealed the defendants' fraud.

5.     The defrauded clients were investors in an investment fund, Athenian Fund, L.P. ("the Athenian Fund"), which was a "feeder" fund that was supposed to invest in a specific, unrelated fund that purported to employ a quantitative stock trading strategy.  At least 22 investors, some of whom had more than one account in the fund, had collectively invested about $1.7 million in the fund.

6.     TFSI and Tweed ultimately invested this money in another fund, the Quantitative Analytics Master Fund ("QAMF"), which was operated by a business acquaintance of Tweed's.  Tweed, however, knew that about 40% of Athenian Fund's investment in QAMF had not been invested in any stock at all, but was instead purportedly tied up in a one-year loan to a third party.  But even after QAMF had returned the part of Athenian Fund's investment that was not tied up in that third-party loan, Tweed did not invest that returned capital in stocks as promised.  Instead, the defendants then caused the Athenian Fund to invest that money in a software business run by a friend of Tweed's.

7.     By 2012, Tweed was on clear notice that neither of these investments—

QAMF or the software business—were profitable.  He was on notice that the purported promissory note held by QAMF was uncollectible, and the funds had been diverted to invest in a gold mining venture in Ghana.  In June 2012, Tweed also learned that the QAMF manager had been indicted for bank fraud.  And by June 2013, Tweed knew that the software business the Athenian Fund had invested in planned to file for bankruptcy.  These investments, therefore, should have been written down, and eventually written-off.

8.      Rather than notify the Athenian Fund's investors of the losses on those investments, TFSI and Tweed sent them quarterly account statements from October 2012 to April 2014 falsely claiming flat or positive income and returns on these failing investments.

9.      By engaging in this conduct, TFSI and Tweed violated Section 206(4) of the Advisers Act, 15 U.S.C. §80b-6(4), and Rule 206(4)-8, 17 C.F.R. §275.206(4)-8, thereunder.  In the alternative, Tweed aided and abetted TFSI's violations of those provisions.  The SEC seeks a permanent injunction and civil penalties against TFSI and Tweed.

## THE DEFENDANTS

10.      **Tweed Financial Services, Inc.** is a California corporation based in San Marino, California.  Tweed established TFSI in 1992 to provide investment advisory services to his clients.  TFSI has five employees, all of whom report to Tweed.  TFSI has never been registered with the Commission in any capacity.  During the relevant period, TFSI was a California registered investment adviser.  On March 31, 2015, TFSI filed a notice of withdrawal of its registration as an investment adviser, and terminated its state registration on April 30, 2015.  TFSI is still an active California corporation that purports to provide financial planning services.

11.      **Robert Russel Tweed,** age 58, is a resident of Glendale, California.  He is the sole owner and President of TFSI, and manages TFSI's portfolio, operations and day-to-day activities.  Tweed holds Series 7, 24, 31, 63 and 65 securities licenses.

12.     Since October 2015, Tweed has also been a registered representative and/or investment adviser representative associated with various broker-dealers or investment advisers.

13.     On April 27, 2017, the Financial Industry Regulatory Authority ("FINRA") instituted a disciplinary proceeding against Tweed for violations of FINRA Rule 2010 (standards of commercial honor and principles of trade) and Sections 17(a)(2) and (3) of the Securities Act of 1933 ("Securities Act") for negligent misrepresentations and omissions when soliciting investors in 2009 and 2010 for the Athenian Fund.  As of the date of this filing, the matter remains pending.

## RELATED INDIVIDUALS AND ENTITIES

14.     **Athenian Fund, L.P.** is a California limited partnership that was formed in 2008 and operates as an unregistered private fund.  It meets the definition of a pooled investment vehicle under Rule 206(4)-8(b) of the Advisers Act, 17 C.F.R. §275.206(4)-8(b).  At all relevant times, it was managed by TFSI, which was controlled by Tweed.

15.     **Quantitative Analytics Master Fund, L.P.** ("QAMF") is a Utah limited partnership that was formed on February 11, 2010.  Its Utah business license expired in June 2010. Until July 2012, QAMF was managed by Richardson Performance Management and Investments Company, LLC (dba RPM Investments Company).

16.     **Eric Richardson** is a former mayor of Cedar Hills, Utah.  Richardson operated RPM Investments Company from 2009 until 2012. In November 2012, Richardson pleaded guilty to felony bank fraud charges and was sentenced to more than a year in prison, followed by supervised release, and ordered to pay restitution. On May 31, 2013, Richardson was permanently enjoined for violations of the antifraud provisions of the Commodities Exchange Act for fraud in connection with commodity futures trading.

17.    **Teamwork Retail, LLC** ("Teamwork Retail") is an inactive Florida point of sale software company with its principal place of business in Clearwater, Florida.  Teamwork Retail's president is one of Tweed's personal friends.  Tweed received more than $100,000 for performing consulting services for Teamwork Retail between December 2009 and December 2010.

## FACTUAL ALLEGATIONS

### I.    Background Facts

#### A.    The Athenian Fund

18.    TFSI and Tweed formed the Athenian Fund on January 22, 2008.  TFSI had discretionary authority over the fund's investments.  At all relevant times, TFSI was the general partner of the Athenian Fund as well as the Athenian Fund's investment adviser and administrator.  Tweed handled the investment decisions and day-to-day operations of TFSI, including the investment decisions for the Athenian Fund.

19.    In exchange for its services, TFSI was entitled to collect a monthly management fee based on a percentage of the Athenian Fund's assets and a quarterly payment based on the performance of the Fund.

20.    From December 2009 to March 2010, Tweed, through TFSI, raised more than $1.7 million from 24 investors for the Athenian Fund.

21.    During this time, Tweed was associated with a broker-dealer registered with the SEC.   However, Tweed and TFSI alone managed TFSI and the Athenian Fund, handling all of the investment decisions and day-to-day operations.  Tweed operated the Athenian Fund as an outside business activity, separate from any work he performed for the broker-dealer with which he was associated.

#### B.    The Athenian Fund's Offering Document

22.    According to the Athenian Fund private placement memorandum ("PPM"), which defendants provided to the fund's investors, the Athenian Fund was established as a "feeder fund" for an unrelated master fund called PMI Quant Pool 1,

1  LLC ("PMI Quant Pool") that had been established to trade stocks using an
2  algorithmic trading platform developed by acquaintances of Tweed. The PPM gave
3  broad discretion to TFSI and Tweed to manage the Athenian Fund and specifically
4  authorized "[t]he Partnership . . . to invest outside of the [PMI Quant Pool]. . . ."

5       23.    The PPM described Tweed's role with respect to TFSI and the Athenian
6  Fund as follows:  "Mr. Rusty Tweed controls [TFSI] and is primarily responsible for
7  the management of the Partnership's portfolio and he controls all of the Partnership's
8  operations and activities."  Tweed explained to investors orally that TFSI's role as
9  general partner of the Athenian Fund would allow Tweed to control how the money
10 was invested.

11      24.    The Athenian Fund PPM stated that TFSI would determine the net asset
12 value of the Athenian Fund on a periodic basis in accordance with Generally
13 Accepted Accounting Principles ("GAAP"), and that its value determinations would
14 be "final and conclusive."  Accounting Standards Codification Topic 946-320-35-1
15 ("ASC 946") provides that to be in accordance with GAAP, an investment company
16 shall measure investments in debt and equity securities at fair value.  The Athenian
17 Fund was an investment company as defined by ASC 946, and should have valued its
18 investments at fair value.

19      25.    The Athenian Fund PPM disclosed that Athenian Fund investors would
20 receive various periodic reports, including annual audited financial statements
21 prepared in accordance with GAAP.  The Athenian Fund PPM indicated that on such
22 periodic reports, net income or loss would be allocated to each limited partner "in
23 proportion to their capital account balances" as of the beginning of each reporting
24 period, and that investors' capital account balances would reflect capital
25 contributions, previous allocations of increases and decreases in net asset value,
26 withdrawals, and the net profits attributable to that partner based on the formula set
27 forth in the PPM and defined as the "Performance Allocation."

28

C.     **The Athenian Fund's Investment Losses**

26.     TFSI and Tweed covertly made two investments on behalf of the Athenian Fund that ultimately lost approximately $800,000 in value.

1.     **The Quantitative Analytics Master Fund and the LLC L Gold Mining Investment**

27.     Tweed initially invested the Athenian Fund's capital in PMI Quant Pool, consistent with the PPM disclosure.  In March 2010, however, Tweed switched all of the Athenian Fund's capital to another fund, QAMF.  QAMF had been formed the month before by Richardson, an acquaintance of Tweed's. Tweed met Richardson through the individuals who were creating the algorithmic trading platform for PMI Quant Pool.

28.     Tweed did not amend the Athenian Fund's PPM to disclose that the new master fund would be QAMF instead of PMI Quant Pool.

29.     In October 2010, Tweed asked Richardson to return all of Athenian Fund's investment in QAMF because QAMF was generating lower than expected returns.  Richardson told Tweed that he had invested $650,000 of the approximately $1.7 million invested by Athenian Fund in a purported one-year note with another unrelated and unregistered entity ("LLC L").  Tweed never obtained a copy of the note.

30.     Tweed thus knew by October 2010 that a significant portion of the Athenian Fund's assets had not been invested in the manner described in the Athenian Fund's PPM.

31.     In late 2010, Richardson returned $924,460 of the Athenian Fund's capital.  This amount was the portion of Athenian Fund's investment that had not been invested in the purported one-year note with LLC L.

32.     Instead of disclosing that the Athenian Fund's assets had been invested in a manner that diverged from the stated investment strategy, Tweed told investors only that "the money was locked up for another year."

33.     By February 2012, Tweed learned that the FBI had executed a search warrant at Richardson's office.

34.     In February 2012, Richardson amended the QAMF operating agreement to allow the Athenian Fund and, by extension, Tweed, to co-manage QAMF. Richardson also transferred his files concerning the $650,000 investment in the LLC L one-year note to Tweed and began copying Tweed on his correspondence with LLC L.

35.     The documents Tweed received included a February 17, 2012 letter in which Richardson acknowledged that the $650,000 invested by Athenian Fund in June 2010 was not invested in a one-year year note, as Richardson had previously represented to Tweed, but was invested in a gold mining venture in Africa. Specifically, the letter stated that these funds "were further credited or placed . . . in a nondepletable escrow account for a gold purchase contract out of Ghana, Africa."

36.     In June 2012, the U.S. Attorney's Office for the District of Utah filed felony bank fraud charges against Richardson.  In July 2012, Richardson resigned as manager of QAMF.  On July 12, 2012, Richardson notified Tweed that he was resigning as the co-manager of QAMF due to "extraneous events."  Tweed understood that Richardson was resigning because he was being criminally prosecuted.

37.     By September 2012, long after the purported note with LLC L should have matured, the Athenian Fund had still not received a return of its principal. Tweed continued to represent to investors that their principal was invested in securities, and did not disclose that their principal had been invested in a gold mining venture in Ghana, under the direction of his friend who had been indicted for felony bank fraud.

38.     Tweed orally assured at least one investor that his money was still invested in securities and he would return his capital once those securities were liquidated.  He represented this would occur no later than the end of 2012.

39.     In November 2012, Richardson pleaded guilty to the bank fraud charge and was sentenced to more than one year in prison, followed by supervised release, and ordered to pay restitution.  Tweed knew of Richardson's guilty plea.

40.     At this point, Tweed began communicating directly with LLC L in an effort to recover the Athenian Fund's capital.  Tweed also knew by this time, or at least was reckless or negligent in not knowing, that the Athenian Fund's capital had gone from QAMF, to LLC L, to a third entity that purportedly used the money to finance a gold mining operation.  Thus, Tweed was on notice no later than November 2012 that the collectability of the Fund's $650,000 investment in QAMF was dubious, at best.

41.     Although Tweed was unable to recover the $650,000 in Athenian Fund assets that he had placed under Richardson's management, TFSI and Tweed made no disclosures to Athenian Fund investors about QAMF, Richardson, LLC L, or the gold mining operation.

42.     Up to the first quarter of 2014, TFSI, acting through Tweed, issued quarterly account statements to Athenian Fund investors valuing the Athenian Fund's investment in QAMF at $777,190, including principal and accrued interest.  These statements were false and misleading because Tweed knew that the QAMF investment had been conveyed away and was likely uncollectible.

43.     In the first quarter of 2014, Tweed caused the Athenian Fund to partially write down the value of the QAMF investment to the principal amount of $650,000.

44.     To date, Tweed has not recovered the $650,000 QAMF investment.

### 2.     TFSI Loaned $200,000 to a Startup Software Company

45.     In March 2011, TFSI and Tweed caused the Athenian Fund to loan $200,000 of the $924,460 that Richardson had returned from the initial QAMF investment to an entity called Teamwork Retail.  Teamwork Retail is purportedly a software company.  It is operated by a friend of Tweed.

FIRST AMENDED COMPLAINT                    9

46.   The Athenian Fund's loan to Teamwork Retail was supposed to earn 18% interest quarterly.  No interest was ever paid to the Athenian Fund on the loan. Nor was the loan repaid when it came due in September 2011.

47.   Despite this, Tweed informed TFSI's outside accountant ("Accountant BC") that interest on the loan continued to accrue.

48.   Tweed received updates on Teamwork Retail from its president–his personal friend–every few weeks and was familiar with its financial condition. Tweed did not demand repayment of the loan from September 2011 until August 2013 because he knew the company could not pay back the note as it was "struggling" financially and had no assets.  By 2012, Tweed knew that Teamwork Retail was experiencing "financial difficulty."

49.   On June 12, 2013, Tweed received an email message notifying him that Teamwork Retail planned to file for bankruptcy.  Teamwork Retail did so in August 2013.  Documents filed in the bankruptcy proceeding reflect a debt of $284,887 to the Athenian Fund.

50.   Even after Teamwork Retail filed for bankruptcy protection in August 2013, TFSI, acting through Tweed, continued to issue account statements to the Athenian Fund's investors that contained information based on the full value of the loan plus accrued interest.

51.   Despite his knowledge of Teamwork Retail's financial difficulties and ultimate bankruptcy filing, Tweed concealed this information from Accountant BC Teamwork Retail's and delayed instructing him to revalue the promissory note held by the Athenian Fund until November 2013, after Teamwork Retail's bankruptcy plan was confirmed.

52.   TFSI wrote down the carrying amount of the Teamwork Retail loan on the Athenian Fund's internal financial statements to $43,500 for the fourth quarter of 2013 based on what was expected to be collected through the bankruptcy plan.  That write-down caused the Athenian Fund's reported return on investment to drop by

nearly 20%.  In fact, even to date, Teamwork Retail has paid only a fraction of the $43,500 owed to Athenian Fund.

53.    Throughout 2013, Tweed made no written or oral disclosures about Teamwork Retail's bankruptcy filing to Athenian Fund investors.

**D.    Tweed Processed Investor Redemptions Based on Inflated Asset Values**

54.    Tweed allowed ten investors to redeem a total of approximately $676,000 in capital from the Athenian Fund from 2010 through 2012.  Each of these redemptions should have prompted Tweed to reassess the value of the Fund.

55.    Four investors who requested redemptions in 2010 received the entire amount of their capital contribution back.

56.    One of those investors was the TFSI Profit Sharing Plan, which had invested $65,000 in the Athenian Fund.  In 2010, Tweed redeemed the entire $65,000 investment made by the TFSI Profit Sharing Plan, pursuant to preferential withdrawal rights described in the PPM.  This redemption benefited Tweed and his employees, who obtained a full redemption.  However, no adjustment was made to reflect the Athenian Fund's performance in connection with these early redemptions.

57.    The remaining six investors who exited the Athenian Fund received redemption amounts which were adjusted to reflect the Athenian Fund's performance, as calculated by TFSI.

58.    Because the Athenian Fund's performance was based on inflated asset values, the investors who were able to redeem their interests received more money than they would have been entitled to if the assets had been valued according to GAAP, as stated in the PPM.

59.    For example, one investor who cashed out in February 2012 received $99,911.43 of his initial $100,000 investment.  Tweed's stepson, whose investment was completely redeemed in the first quarter of 2012, received $50,103.25, which was more than his $50,000 original investment.  These investors would have received

1  far less back had the Athenian Fund's investments been written down to fair value in

2  a timely manner.

3       60.    Beginning in 2012, Tweed began to deny redemptions requests by the

4  Athenian Fund's investors because the Fund had insufficient liquidity to satisfy the

5  requests.  Instead of telling investors seeking redemptions that there was insufficient

6  cash in the Athenian Fund to satisfy their requests, Tweed persuaded them to stay in

7  the Athenian Fund or told them that the money "would be released shortly."

8       61.    Tweed seemed to prioritize some requests over others submitted at the

9  same time.  For example, Tweed redeemed his stepson's investment in the first

10 quarter of 2012, but he claimed that he was unable to cash out another investor, who

11 was not a family member, but who had submitted a written redemption request during

12 that same period. Tweed's stepson was one of the last Athenian Fund investors who

13 was able to redeem his investment.

14 **II.    The Actionable Misleading Statements And Omissions**

15      **A.    The Misleading Quarterly Account Statements**

16      62.    Having concealed from his clients the true nature of their investments,

17 Tweed fraudulently misrepresented the value of investors' accounts.

18      63.    From at least the fourth quarter of 2012 through the first quarter of 2014,

19 TFSI, acting through Tweed, issued quarterly account statements to Athenian Fund

20 investors that were false and misleading.

21      64.    The account statements portrayed positive gains and returns on the

22 QAMF and the Teamwork Retail investments even though these amounts had been

23 derived from valuations of the Athenian Fund's investments that should have been

24 written down, and eventually, written off to adjust to fair market value.

25      65.    These account statements made it appear as if the Athenian Fund was

26 profitable and that the investors were earning flat or positive returns when, in fact, the

27 investments were losing money and at times had negative returns.

28

FIRST AMENDED COMPLAINT                    12

66.     For example, one account statement for the fourth quarter 2012 contained line items for "Net Income/Loss" and "ROI (Return on Invest.)" that stated that the net income on the investment was positive and that the return was positive. This is an excerpt from that statement:

| Account Summary | Prior YTD | Current Period | Year to Date |
|---|---|---|---|
| Contributions | 50,000 | 0.00 | 50,000.00 |
| Net Income/Loss | 728.77 | $ 765.80 | 1,494.57 |
| Prior Year Adjustment | 0.00 | 271.46 | 271.46 |
| ROI (Return on Invest.) | 1.46% | 1.53% | 3.01% |
| | | | |
| Capital Balance | 49,934.89 | 50,429.23 | 50,429.23 |

67.     The Athenian Fund quarterly account statements did not disclose that the Net Income/Loss and ROI amounts had been derived using "estimated" asset valuations, consisting of the principal investment amount and accrued interest for QAMF and the Teamwork Retail loan, despite the fact that both of these investments had failed to pay returns as scheduled.

68.     Accountant BC was employed by TFSI from December 2010 to April 2014.  Tweed provided Accountant BC with the estimated asset valuations for the Athenian Fund and Account BC prepared the account statements, including the Athenian Fund's total gain or loss and return on investment, and the investor's pro rata allocation based on those estimates.

69.     Despite Tweed's knowledge of facts calling into question the reported asset values for QAMF (by no later than November 2012) and Teamwork Retail (by no later than June 2013), Tweed did not instruct Accountant BC to write down those values in a timely manner.

70.     In the example in paragraph 66 above, had Tweed written down the Teamwork Retail loan and the QAMF investment to zero in the fourth quarter of 2012, the Athenian Fund's total ROI would have been negative instead of positive.

71.     Tweed knew, or at least was reckless or negligent in not knowing, that the asset values reflected in the account statements to investors were inaccurate but did not write down the value of the Athenian Fund's investment in QAMF even after he learned Richardson would be imprisoned and Teamwork Retail intended to file for bankruptcy protection.

**B.     The Failure to Provide Required Audited Financials**

72.     Although the Fund's offering documents required him to provide audited financial statements to Athenian Fund investors, Tweed did not do so.  In January 2014, a state regulator issued a deficiency letter to TFSI, raising questions about Tweed's management of the Athenian Fund, including his failure to have the Athenian Fund's financial statements audited.  Only after receiving that deficiency letter did Tweed attempt to engage an accounting firm to audit the Athenian Fund's financial statements.

73.     In the first quarter of 2014, Tweed hired an outside accountant, ("Accountant EG"), who was affiliated with outside Accountant BC, to undertake the audit.  Even after Accountant EG completed the multi-year audit, Tweed did not distribute the audited financials to investors.

**C.     Tweed's Cover-Up Efforts**

74.     Shortly after the TFSI received the state regulator deficiency letter in January 2014, the SEC commenced an on-site examination of Tweed's branch office of the investment advisory firm where Tweed was associated.  During the course of the SEC examination, the chief compliance officer of that advisory firm, which did not manage the Athenian Fund, discovered Tweed's misconduct with respect to the Athenian Fund.  On April 3, 2014, the advisory firm directed Tweed to take certain corrective actions, including retaining fund counsel and issuing a written disclosure to Athenian Fund investors.

75.     In a letter dated April 30, 2014, Tweed notified some investors in writing about the missing $650,000 invested in QAMF and the Teamwork Retail

loan. That letter omitted several important facts, such as Tweed's personal connection to Teamwork Retail's president, his selective redemptions of certain investors including his stepson, and his advance knowledge of Teamwork Retail's bankruptcy filing.

76.     In his April 30, 2014 letter, Tweed claimed that he had been working diligently since 2012 to recover the $650,000 invested in QAMF. Tweed further asserted that approximately $43,000 of the amount due from Teamwork Retail would be repaid over time to the extent funds were available from Teamwork Retail's quarterly earnings. Contrary to the statements in his letter, Tweed has not taken obvious steps to recover the funds invested in QAMF, such as filing suit against LLC L. To date, Tweed has not recovered the $650,000 investment that had been directed to the purported Ghanaian gold mining operation, and has only collected "one to two-thousand" dollars from Teamwork Retail.

77.     Tweed has not had the Athenian Fund's financial statements audited, nor has he distributed account statements to investors since 2014.

### III.   Tweed's Culpability And The Materiality Of The False Statements

78.     During all relevant times, Tweed failed to exercise reasonable care by providing investors materially false information about the true uses, liquidity and performance of their investments, and lulled investors to remain in the Athenian Fund by making redemptions that were not authorized by the Athenian Fund's PPM, given the status of the Athenian Fund's performance.

79.     In the alternative, Tweed acted knowingly or recklessly when he provided false information to the Athenian Fund's investors about the true uses, liquidity and performance of their investments, and lulled investors to remain in the Athenian Fund by making redemptions that were not authorized by the Athenian Fund's PPM, given the status of the Athenian Fund's performance.

80.     Tweed's fraudulent acts withheld or misstated material for the investors in the Athenian Fund. The underlying nature of an investment, its liquidity, the

performance of an investor's account, and the availability of redemptions, are all important factors for any reasonable investor.

## IV.  Tweed And TFSI Were Investment Advisers To a Pooled Investment Vehicle

81.     The Athenian Fund held itself out to be primarily engaged in the business of investing in securities, thus, it was a pooled investment vehicle as defined in Advisers Act Rule 206(4)-8(b).

82.     During all relevant times, TFSI was registered as an investment adviser with the state of California, and Tweed was associated with TFSI.  In exchange for its services, TFSI was entitled to collect a monthly management fee based on a percentage of the Athenian Fund's assets and a quarterly payment based on the performance of the fund.  Accordingly, TFSI was an investment adviser.

83.     TFSI was the *alter ego* of Tweed and was under his complete control. Although TFSI has five employees, they merely perform administrative duties. Tweed is the owner and president of TFSI, which acts only through him.  Moreover, TFSI is the general partner of the Athenian Fund and, through Tweed, exercised discretionary authority over all of the Athenian Fund's investments.  In fact, Tweed alone directed the Athenian Fund's investments in QAMF and Retail Teamwork – the investments at issue here.  Tweed was also the primary contact with the limited partners of the Athenian Fund.  In committing the violations alleged in this Complaint, Tweed acted for himself and for the benefit of TFSI.

84.     Operating through TFSI, Tweed caused account statements to be issued to the Athenian Fund investors that falsely claimed the Athenian Fund's investments were profitable when they were not, and took action to give the false appearance that the Athenian Fund assets were performing well.

85.     As investment advisers responsible for the day-to-day management of the Athenian Fund, TFSI and Tweed had a duty to be truthful concerning the investments made by the Fund, and were prohibited from making untrue statements

of material fact or from omitting to state material facts necessary to make their statements not misleading.  TFSI and Tweed violated these obligations by committing the acts alleged in this Complaint.

86.     In the alternative, Tweed knowingly or recklessly disregarded TFSI's violations and his role in furthering them, and substantially assisted TFSI's violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.  Tweed knew that contrary to the PPM, the Athenian Fund had not invested in the PMI Quant Pool. Instead, it first invested in a different fund, the QAMF Fund, which in turn made illiquid investments in gold mining equipment.  Then Tweed caused the Fund to loan money to a friend's struggling startup software company.  Yet from October 2, 2012 to April 2014 in his communications with investors, Tweed failed to disclose these material departures from the Athenian Fund's stated investment strategy and its associated investment losses.

87.     Tweed also knew or was reckless in not knowing that he was providing misleading and/or inaccurate information about the value of the Athenian Fund's assets to its investors.  Tweed nevertheless continued issuing account statements that reported false valuations of the Athenian Fund's investments; processed redemptions without restating the Fund's value; failed to distribute audited financials to investors; and lulled investors concerning the expected timeframe when their investments would be liquid.

## FIRST CLAIM FOR RELIEF

### Fraud Involving a Pooled Investment Vehicle

### Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8(a)(1) and 8(a)(2) Thereunder

### (Against Defendants TFSI and Tweed)

88.     The SEC realleges and incorporates by reference paragraphs 1 through 87 above.

89.     Defendant TFSI and Tweed, by engaging in the conduct described

above, while acting as an investment adviser to a pooled investment vehicle, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce:

(a)    made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which there were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; and

(b)    engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

90.    Specifically, from October 2012 to April 2014, TFSI, acting through Tweed, provided investors in the Athenian Fund with materially false and misleading information in their account statements and through other communications about the actual uses and liquidity of their investment monies, and the performance of their accounts.  Tweed failed to disclose to investors that the Athenian Fund's investment strategy was not the strategy described in the PPM—investment in the PMI Quant Pool, but rather, investment in a different fund, QAMF, whose manager pled guilty to felony bank fraud; in a Ghanaian gold mining venture; and in his friend's failed software startup.

91.    In his role as TFSI's sole owner and president, Tweed's failure to exercise reasonable care, and his knowledge and recklessness, are imputed to TFSI.

92.    By engaging in the conduct described above, TFSI and Tweed violated, and unless restrained and enjoined will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8(a)(1) and (2) thereunder [17 C.F.R. § 275.206(4)-8(a)(1) and (2)].

## SECOND CLAIM FOR RELIEF

**Aiding and Abetting Fraud by an Investment Adviser**

**Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8(a)(1) and 8(a)(2) Thereunder**

**(Against Defendant Tweed, In the Alternative)**

93.     The SEC realleges and incorporates by reference paragraphs 1 through 87 above.

94.     TFSI was during all relevant times a registered investment adviser.

95.     Tweed committed the acts alleged above during the course and scope of his employment with TFSI.

96.     Through the acts of Tweed alleged above, TFSI violated Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4) and Rule 206(4)-8(a)(1) and (2) thereunder, 17 C.F.R. § 275.206(4)-8(a)(1) and (2).

97.     Defendant TFSI, by engaging in the conduct described above, while acting as an investment adviser to a pooled investment vehicle, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce:

(a)     made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which there were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; and

(b)     engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

98.     Specifically, from October 2012 to April 2014, TFSI, acting through Tweed, provided investors in the Athenian Fund with materially false and misleading information about the actual uses and liquidity of their investment monies, and the performance of their Fund accounts.  Tweed failed to disclose to investors that the Athenian Fund's investment strategy was not the strategy described in the PPM—

investment in the PMI Quant Pool, but rather, investment in a different fund, QAMF, whose manager pled guilty to felony bank fraud; in a Ghanaian gold mining venture; and in his friend's bankrupt software startup.

99.   Tweed knew of or recklessly disregarded TFSI's violations, and knew of or recklessly disregarded his own role in furthering these violations.

100.   Tweed substantially assisted TFSI in its violations of Section 206(4) and Rule 206(4)-8 thereunder.

101.   By reason of the actions alleged herein, pursuant to Sections 209(d) and (f) of the Advisers Act, 15 U.S.C. § 80b-9(d) and (f), Tweed aided and abetted, and, unless enjoined, will continue to aid and abet, violations of Section 206(4) and Rule 206(4)-8(a)(1) and (2) thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating, or, in the alternative, from aiding and abetting any violation of, Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4),  and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

### III.

Order Defendants to pay civil penalties under Section 209(e)(1) of the Advisers Act,  15 U.S.C. § 80b-9(e)(1).

## IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## V.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: May 31, 2018

*/s/ Lynn M. Dean*
Lynn M. Dean
DoHoang T. Duong
Counsel for Plaintiff
Securities Exchange Commission

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On May 31, 2018, I caused to be served the document entitled **FIRST AMENDED COMPLAINT** on all the parties to this action addressed as stated on the attached service list:

☐     **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐     **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐     **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐     **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐     **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐     **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒     **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐     **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  May 31, 2018

*/s/ Lynn M. Dean*
Lynn M. Dean

FIRST AMENDED COMPLAINT                    22

*SEC v. Tweed Financial Services, Inc., et al.*

**United States District Court—Central District of California**
**Case No. 2:17-cv-07251-FMO-E**

## <u>SERVICE LIST</u>

Edward Gartenberg, Esq. *(via ECF only)*
Gartenberg, Gelfand, Hayton LLP
15260 Ventura Blvd., Suite 1920
Sherman Oaks, CA 91403
Tel: (213) 542-2111
Fax: (213) 542-2101
Email: egarternberg@ggslaw.com
*Attorneys for Defendants*