**EXHIBIT A**



GARTENBERG GELFAND HAYTON LLP

Please reply to:
Edward Gartenberg
Direct Tel: 213-542-2111
egartenberg@gghslaw.com

June 6, 2018

**VIA E-MAIL**

Lynn M. Dean, Esq.
Securities and Exchange Commission
444 South Flower Street, Suite 900
Los Angeles, CA 90071

    Re:   *Securities and Exchange Commission v. Tweed Financial Services, Inc. and Robert Russel Tweed*/Meet and Confer Letter

Dear Ms. Dean:

    In connection with our scheduled meet and confer concerning the Defendant's proposed motion to dismiss, or in the alternative to strike, I am writing this meet and confer letter.

    It is the Defendants' view the SEC action is based upon an offering to 24 investors more than eight years ago. The SEC alleges that between **December 2009 and March 2010**, defendant Robert Russel Tweed, a registered securities broker and investment adviser, acting through his wholly-owned advisory firm, defendant Tweed Financial Services, Inc. (collectively "Tweed") raised approximately $1.7 million for Athenian Fund, L.P. (the "Fund"), a limited partnership. The SEC asserts that the offering documents for the Fund indicated that Fund was established to invest in another fund (known as a "master fund"), but the offering documents gave Tweed authority to make other investments in his discretion. In **March 2010**, Tweed switched the funds from the original master fund to another master fund.

    The complaint is about two investments made. The first was a $650,000 investment made in **2010** by the second master fund in a gold mining venture in Africa. The SEC asserts that Tweed knew by **October 2010** that these funds has not been invested in the manner described in offering documents and by **February 2012** he specifically knew about their use for the gold mining venture. The second was a $200,000 loan Tweed made in **March 2011** to a software start-up company. The SEC claims that Tweed failed thereafter to disclose problems with these investments including issuing misleading quarterly accountings about them. There is no allegation that Tweed personally profited from either investment.

    More specifically, please consider the following analysis in support of the Defendants' position:

15260 Ventura Boulevard | Suite 1920
Sherman Oaks, California 91403

213.542.2100

www.gghslaw.com

GGH GARTENBERG GELFAND HAYTON LLP

Lynn Dean
June 6, 2018
Page 5

the foregoing to the SEC's sanctions of censure a suspension (which are essentially equivalent to the non-monetary injunctive relief sought here), the Court reasoned that these remedies constituted penalties subject to the limitation of §2462, explaining:

> Here, the sanctions imposed by the SEC--censure and a six-month suspension--clearly resemble punishment in the ordinary sense of the word. The SEC not only restricted Johnson's ability to earn a living as a supervisor during her six-month suspension, but the suspension was also likely to have longer-lasting repercussions on her ability to pursue her vocation. Suspended brokers must forever after disclose the sanction, and it becomes part of their permanent public file. *See* Form ADV, 17 C.F.R. § 279.1, Part I, Item 11(C)(4) (must disclose whether SEC has "entered an order denying, suspending, or revoking the applicant's ... registration"). Congress has also required securities associations such as the National Association of Securities Dealers to set up a toll-free number for investors and other members of the public to check whether brokers or other brokerage employees have been subject to disciplinary actions. *See* 15 U.S.C. § 78o-3(i). These collateral consequences of the censure and suspension, while not the central determinant in whether a sanction reaches penalty status, do suggest its punishment-like qualities.
>
> This sanction would less resemble punishment if the SEC had focused on Johnson's current competence or the degree of risk she posed to the public. Despite the SEC's claims to the contrary, however, it is evident that the sanctions here were not based on any general finding of Johnson's unfitness as a supervisor, nor any showing of the risk she posed to the public, but rather were based on Johnson's alleged failure reasonably to supervise Zetterstrom, as required by section 15(b) of the [Exchange Act].

*Id.* at 488-489.

The same analysis was utilized by the Court in *SEC v. Microtune*, 783 F. Supp. 2d 867, 885 (N.D. Tex. 2011) in which the Court held that injunctive relief and officer-and-director bar constituted penalties as a matter of law. *See also, SEC v. DiBella, 409 F.Supp.2d 122, 127-128, n.3 (D. Conn. 2006) (Request* for permanent injunction and officer-and-director bar sought to punish defendant for role in alleged backdating and were penalties subject to §2462.)

GGH GARTENBERG GELFAND HAYTON LLP

Lynn Dean
June 6, 2018
Page 2

### A. Gabelli Held the Five-Year Limitation of 18 USC § 2462 Applies

28 U.S.C. § 2462 provides that, "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon." In *Gabelli, supra,* in a case brought by the SEC against an investment adviser and its chief operating officer and portfolio manager, the Supreme Court held that §2462 applied to the SEC and that the time began to run when the fraud was complete regardless of when the SEC discovered it. Chief Justice Roberts, writing for a unanimous Court, explained:

> **This case centers around the meaning of 28 U.S.C. §2462:** "an action . . . for the enforcement of any civil fine, penalty, or forfeiture . . . shall not be entertained unless commenced within five years from the date when the claim first accrued." **Petitioners argue that a claim based on fraud accrues--and the five-year clock begins to tick--when a defendant's allegedly fraudulent conduct occurs.**
>
> **That is the most natural reading of the statute. "In common parlance a right accrues when it comes into existence . . . ."** *United States v. Lindsay, 346 U.S. 568, 569, 74 S. Ct. 287, 98 L. Ed. 300 (1954).* **Thus the "standard rule" is that a claim accrues "when the plaintiff has a complete and present cause of action."** *Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)* (internal quotation marks omitted); see also, *e.g., Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997); Clark v. Iowa City, 87 U.S. 583, 20 Wall. 583, 589, 22 L. Ed. 427 (1875).* That rule has governed since the 1830's when the predecessor to *§2462* was enacted. See, *e.g., Bank of United States v. Daniel, 37 U.S. 32, 12 Pet. 32, 56, 9 L. Ed. 989 (1838); Evans v. Gee, 36 U.S. 80, 11 Pet. 80, 84, 9 L. Ed. 639 (1837).* And that definition appears in dictionaries from the 19th century up until today. See, *e.g.,* 1 A. Burrill, A Law Dictionary and Glossary 17 (1850) ("an action *accrues* when the plaintiff has a right to commence it"); Black's Law Dictionary 23 (9th ed. 2009) (defining "accrue" as "[t]o come into existence as an enforceable claim or right"). This reading sets a fixed date when exposure to the specified Government enforcement efforts ends, advancing "the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Rotella v. Wood, 528 U.S. 549, 555, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000).*

*Id.* at 447-448 (emphasis added).

**G G H** GARTENBERG GELFAND HAYTON LLP

Lynn Dean
June 6, 2018
Page 3

### B. The FAC Provides No Basis for Extending the Five-Year Bar

The FAC provides no basis for extending the five-year bar in §2462. The plaintiff has not attempted to plead an exception based upon delayed to discovery. To invoke delayed discovery in California, a plaintiff must plead specific facts in the complaint that show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. *Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653 (9th Cir. 2016). The FAC is devoid of any assertion by the plaintiff of delayed discovery, let alone one meeting this standard.

Moreover, in *Gabelli,* the Supreme Court specifically rejected a discovery rule for §2462, holding, "grafting the discovery rule onto *§2462* would... leave defendants exposed to Government enforcement action not only for five years after their misdeeds, but for an additional uncertain period into the future. And repose would hinge on speculation about what the Government knew, when it knew it, and when it should have known it." *Id.* at 443. See also, *Kokesh v. SEC,* 137 S. Ct. 1635, 1642 (2017) (Applying the five-year limit of §2462 to SEC disgorgement claims, Justice Sotomayor, writing for a unanimous Court in another investment advisory case, held, "Statutes of limitations 'se[t] a fixed date when exposure to the specified Government enforcement efforts en[d].' [citing *Gabelli*]. Such limits are "vital to the welfare of society" and rest on the principle that "even wrongdoers are entitled to assume that their sins may be forgotten." *Id.* at 449.")

### C. Section III of the Prayer for Monetary Penalties Should Be Stricken

As discussed further below, all of the SEC's claims should be dismissed as untimely penalties. However, at a minimum, Section III of the Prayer for Relief which seeks monetary penalties should be stricken. There can be no doubt that this is a prayer for civil penalties. The language of Section III citing to Section 209(e)(1) of the Advisers Act, 15 U.S.C. §80b-9(e)(1) uses the term penalties as does the referenced statute. *Gabelli, supra* and *Kokesh, supra,* confirm that monetary penalties are subject to the five-year limitation period of §2462.

### D. Section 2462 Applies to All the SEC Claims

#### 1. Section 2462 Is Directed to Causes of Action; Not Merely Remedies

Section 2462 by its explicit terms, applies to "an action," not individual remedies. The statute provides:

> Except as otherwise provided by Act of Congress, **an action**, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, **shall not be entertained unless commenced within five years from the date when the claim first accrued** if, within the same period, the offender or the

GGH GARTENBERG GELFAND HAYTON LLP

Lynn Dean
June 6, 2018
Page 4

      property is found within the United States in order that proper service may be made thereon.
(emphasis added).

### 1. "Penalties" as Used in Section 2462 Includes Injunctive Relief

*Gabelli, supra,* held that §2462 applies to "penalties," but did not explicitly decide whether "penalties," included the equitable relief of injunctive relief and disgorgement. *Id.* at 447, n.1. But, in *Kokesh, supra,* the Supreme Court made it clear that the equitable relief of disgorgement was also a "penalty" covered by §2462. In the Ninth Circuit, *FEC v. Williams,* 104 F.3d 237 (9th Cir. 1996) has long held that the statute of limitations set forth in §2462 should apply to both equitable and penal sanctions imposed by government agencies. The Court held:

> [The Federal Election Commission] argues that § 2462 does not apply to actions for injunctive relief. This assertion runs directly contrary to the Supreme Court's holding in *Cope v. Anderson,* 331 U.S. 461, 464, 91 L. Ed. 1602, 67 S. Ct. 1340 (1947). *Cope* holds that "equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy." In other words, because the claim for injunctive relief is connected to the claim for legal relief, the statute of limitations applies to both.

*Id.* at 240.

      The D.C. Circuit Court of Appeals reached the same conclusion in an SEC action employing a different analysis. In *Johnson v. SEC,* 87 F.3d 484 (D.C. Cir. 1996) the Court of Appeal vacated an SEC censure and suspension against a securities industry supervisor under the Securities Exchange Act of 1934 because it held that the five-year limitation period of §2462 applied and the SEC proceeding was not commenced within the limitations period. The Court held that the application of the statute of limitation turned on the meaning of "penalty." Given that the statute did not itself define "penalty," the Court explained that in common usage a penalty is, "the suffering in person, rights or property which is annexed by law or judicial decision to the commission of a crime or public offence. *Id.* at 253, quoting Webster's Third New International Dictionary 1668 (1976). The Court then analyzed Supreme Court precedent and concluded that "penalty or feature" under §2462 referred to something imposed in a punitive way for an infraction of public law and not solely for redressing a private injury. *Id.* at 253-255.

      The *Johnson* Court also found that the Ninth Circuit's decision in *U.S. v. Perry,* 431 F.2d 1020 (9th Cir. 1970) implicitly supported the same conclusion when it held that government could maintain action for forfeiture of bail bond even after five years, because such action was essentially just "a proceeding upon the breach of a condition of a contract"). *Id.* at 254. Applying

**G G H** GARTENBERG GELFAND HAYTON LLP

Lynn Dean
June 6, 2018
Page 6

    I look forward to meeting with you to discuss these matters.

    Thank you.

                                  Sincerely,

                                  Edward Gartenberg

cc:  Robert Russel Tweed