1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) | Case No. ED CV 17-7251 FMO (Ex) |

SECURITIES AND EXCHANGE
COMMISSION,                              )      Case No. ED CV 17-7251 FMO (Ex)
                                         )
                Plaintiff,               )
                                         )      **ORDER RE MOTION TO DISMISS**
        v.                               )
                                         )
TWEED FINANCIAL SERVICES, INC.           )
and ROBERT RUSSEL TWEED,                 )
                                         )
                Defendants.              )
_____  )

Having reviewed and considered all the briefing filed with respect to Tweed Financial Services, Inc. ("TFSI"), and Robert Russel Tweed's ("Tweed") (collectively, "defendants") motion to dismiss first amended complaint, or in the alternative, to strike, (see Dkt. 32, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## **BACKGROUND**

TFSI is an investment advisory firm operating in California that is owned by Tweed.  (See Dkt. 31, First Amended Complaint ("FAC"), at ¶ 4).   In January 2008, defendants formed a California limited partnership known as the Athenian Fund.  (See id. at ¶¶ 14, 18).   Between December 2009 and March 2010, defendants raised more than $1.7 million from 24 investors for the Athenian Fund.  (See id. at ¶ 20).  Defendants managed the Athenian Fund, "handling all of the investment decisions and day-to-day operations."  (Id. at ¶ 21).

Initially, defendants, as they had represented to their investors, invested the Athenian Fund's

capital in a fund called PMI Quant Pool. (See Dkt. 31, FAC at ¶ 27). In March 2010, however, Tweed "switched all of the Athenian Fund's capital to another fund, QAMF." (Id.). Tweed did not tell the investors that the Athenian Fund's capital was being invested in this manner. (See id. at ¶ 32).

On February 17, 2012, defendants discovered that $650,000 of the Athenian Fund's capital had been placed "in a nondepletable escrow account for a gold purchase contract out of Ghana, Africa." (See Dkt. 31, FAC at ¶ 35). Subsequently, Tweed represented to investors that the Athenian Fund's capital had been invested in securities; he did not disclose that the money that had been put into the gold mining venture. (See id. at ¶ 37).

"Up to the first quarter of 2014, TFSI, acting through Tweed, issued quarterly account statements to Athenian Fund investors valuing the Athenian Fund's QAMF investment at $777,190," even though they knew "that the QAMF investment had been conveyed away and was likely uncollectible." (Dkt. 31, FAC at ¶ 42). Thus, these statements "were false and misleading[.]" (See id.). To date, the $650,000 remains to be recovered. (See id. at ¶ 44).

Separately, in March 2011, defendants loaned $200,000 of Athenian Fund assets to a software company, Teamwork Retail, owned by one of Tweed's friends. (See Dkt. 31, FAC at ¶ 45). Although Teamwork Retail failed to pay interest on this loan, Tweed told TFSI's outside accountant that interest was accruing on the loan. (See id. at ¶¶ 46-47).

In June 2013, Tweed learned that Teamwork Retail was planning to file for bankruptcy. (See FAC at ¶ 49). Teamwork Retail filed for bankruptcy two months later, at which point it owed the Athenian Fund $284,887. (See id.). Nonetheless, defendants continued to issue account statements to investors "that contained information based on the full value of the loan plus accrued interest." (Id. at ¶ 50). Tweed also concealed information about the Teamwork Retail bankruptcy from the outside accountant. (See id. at ¶ 51).

On October 2, 2017, the Securities and Exchange Commission ("SEC" or "plaintiff") filed a complaint in this court. (See Dkt. 1). The complaint brought two causes of action, for (1) fraud involving a pooled investment vehicle, in violation of 15 U.S.C. § 80b-6(4) and associated regulations; and (2) aiding and abetting fraud by an investment advisor, in violation of 15 U.S.C.

§ 80b-6(4) and associated regulations.  (See Dkt. 1, Complaint at ¶¶ 92-105).  On May 31, 2018, plaintiff filed the FAC, asserting the same two causes of action.  (See Dkt. 31, FAC at ¶¶ 88-101).  Defendants now move to dismiss the FAC.  (See Dkt. 32, Motion).

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 550 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010).  Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 267, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005).  Dismissal for

failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory.  See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim.  Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

Moreover, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that those allegations be pled with particularity.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citations and quotation marks omitted).  The complaint must set out the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997) (superseded by statute on other grounds)).  "'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false.'"  Id. (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by statute on other grounds)).

## DISCUSSION

Defendants argue that 28 U.S.C. § 2462 bars this suit.  (See Dkt. 32, Motion at 2).  That statute provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon."  28 U.S.C. § 2462.  An action "accrues" for purposes of § 2462 "when the plaintiff has a complete and present

cause of action." <u>Gabelli v. S.E.C.</u>, 568 U.S. 442, 448, 133 S.Ct. 1216, 1220 (2013) (quoting <u>Wallace v. Kato</u>, 549 U.S. 384, 388, 127 S.Ct. 1091, 1095 (2007)); <u>see</u> <u>also</u> <u>Heimeshoff v. Hartford Life & Acc. Ins. Co.</u>, 571 U.S. 99, 105, 134 S.Ct. 604, 610 (2013) ("As a general matter, a statute of limitations begins to run when the cause of action accrues—that is, when the plaintiff can file suit and obtain relief.") (internal quotation marks omitted).

Here, defendants argue that the present action accrued earlier than October 2, 2012, <u>i.e.</u>, earlier than five years prior to when plaintiff filed its complaint.  (See Dkt. 32, Motion at 1-2). However, the FAC does not allege that defendants engaged in fraudulent conduct prior to October 2, 2012. For example, the FAC states that defendants' fraudulent conduct spanned "[f]rom October 2, 2012 to April 2014."  (Dkt. 31, FAC at ¶ 4).  With respect to the Athenian Fund's investment in the QAMF venture, the FAC does not allege that defendants made false or misleading statements to investors, or otherwise defrauded investors, prior to October 2, 2012. (<u>See</u>, <u>generally</u>, <u>id.</u> at ¶¶ 27-44; <u>see</u> <u>also</u> <u>id.</u> at ¶ 89(a)-(b) (identifying defendants' alleged false statements to investors and "fraudulent, deceptive, or manipulative [acts] with respect to any investor" as the basis for plaintiff's first cause of action); <u>id.</u> at ¶ 97(a)-(b) (same for plaintiff's second cause of action)).  Instead, the FAC alleges that from November 2012 to the first quarter of 2014, defendants issued account statements to investors which misrepresented the Athenian Fund's QAMF investment. (<u>See</u> <u>id.</u> at ¶¶ 41-42).

With respect to the Teamwork Retail loan, the FAC does not allege a clear start date as to when defendants' fraudulent conduct began, but does state that they "continued to issue account statements to . . . investors that contained" false information after August 2013. (<u>See</u> Dkt. 31, FAC at ¶ 50).  Similarly, the FAC alleges that throughout 2013, Tweed failed to disclose Teamwork Retail's bankruptcy to investors.  (<u>See</u> <u>id.</u> at ¶ 53).

While the FAC does allege some pre-October 2012 conduct on the part of defendants, the allegations provide background and context and do not appear to be alleging fraudulent conduct. For example, the FAC contains allegations that defendants established the Athenian Fund in January 2008, and raised money for the Fund throughout 2009 and 2010. (<u>See</u> Dkt. 31, FAC at ¶¶ 18, 20).  The FAC also discloses that defendants made the QAMF investment in March 2010,

(see id. at ¶ 27), and the Teamwork Retail loan in March 2011.  (See id. at ¶ 45).  In short, because the FAC does not allege that these pre-October 2012 activities were, in and of themselves, fraudulent, (see, generally, id.); see McDonough v. Anoka Cty., 799 F.3d 931, 942 (8th Cir. 2015), cert. denied, 136 S.Ct. 2388 (2016) (accrual occurred "at the time of the alleged [unlawful] access[ing of plaintiffs' information]"), the court is unable to conclude that plaintiff "ha[d] a complete and present cause of action" prior to October 2, 2012.  See Gabelli, 568 U.S. at 448, 133 S.Ct. at 1220; see also Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (at motion to dismiss stage, "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them").

Based on the foregoing, IT IS ORDERED THAT:

1.  Defendants' Motion To Dismiss First Amended Complaint, Or in the Alternative, To Strike **(Document No. 32)** is **denied**.

2.  Defendants shall file their answer(s) to the FAC no later than **March 1, 2019**.

Dated this 19th day of February, 2019.

/s/
Fernando M. Olguin
United States District Judge