LYNN M. DEAN (Cal. Bar No. 205562)
Email: deanl@sec.gov
KATHRYN C. WANNER (Cal Bar No. 269310)
Email: wannerk@sec.gov

Michele Wein Layne, Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

Attorneys for Plaintiff
Securities and Exchange Commission

EDWARD GARTENBERG (Cal. Bar No. 102693)
egartenberg@gghslaw.com
MILENA DOLUKHANYAN (Cal Bar No. 303157)
mdolukhanyan@gghslaw.com
Gartenberg Gelfand Hayton LLP
15260 Ventura Boulevard, Suite 1920
Sherman Oaks, California 91403
Telephone: (213) 542-2100
Facsimile: (213) 542-2101

Attorneys for Defendants,
Tweed Financial Services, Inc. and Robert Russel Tweed

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>TWEED FINANCIAL SERVICES, INC. and ROBERT RUSSEL TWEED,<br><br>Defendants. | Case No. 2:17-cv-07251-FMO-E<br><br>**JOINT DISPUTED JURY INSTRUCTIONS AND VERDICT FORMS**<br><br>Trial Date: November 26, 2019<br>Time:        8:30 a.m.<br>Ctrm:       6D<br>Judge:      Hon. Fernando M. Olguin |

In accordance with the Order Re: Case Management Deadlines (Dkt. No. 45) and the Court's Scheduling and Case Management Order Re: Jury Trial (Dkt. No. 26), Plaintiff the Securities and Exchange Commission ("SEC") and Defendants Tweed Financial Services, Inc. ("TFSI") and Robert Russel Tweed ("Tweed") respectfully submit these joint disputed jury instructions for the Court's consideration.  Subject to the rules and any further order of this Court, the parties reserve the right to submit additional or revised jury instructions as may be necessary based upon the outcome of pre-trial motions, the evidence presented at trial, and any rulings issued before or during the course of the trial.

Dated:  October 25, 2019                    Respectfully submitted,

                                            */s/ Lynn M. Dean*
                                            Lynn M. Dean
                                            Kathryn C. Wanner
                                            Attorneys for
                                            Securities and Exchange Commission


                                            */s/ Edward Gartenberg*
                                            Edward Gartenberg
                                            Attorney for Defendants
                                            Tweed Financial Services, Inc. and Robert
                                            Russel Tweed

1

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, vs. TWEED FINANCIAL SERVICES, INC. and ROBERT RUSSEL TWEED, Defendants. | Case No. 2:17-cv-07251-FMO-E |

**JURY INSTRUCTIONS**

DATED: _____

_____
HON. FERNANDO J. OLGUIN
UNITED STATES DISTRICT JUDGE

# **INDEX**

SEC'S PROPOSED OPENING REMARKS OF THE COURT .................................................... 1

DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED OPENING REMARKS OF THE

COURT .............................................................................................. 5

SEC'S RESPONSES TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED OPENING

REMARKS OF THE COURT ........................................................................ 6

SEC PROPOSED INSTRUCTION NO. 1 .................................................................. 7

    Securities – Definition of Recurring Terms .................................................... 7

Source: Manual of Model Civil Jury Instructions for the Ninth Circuit, 2017 edition, Section 18.1 (selected applicable paragraphs); *Lowe v. SEC*, 472 U.S. 181, 199-200, 105 S. Ct. 2557, 1567-68 (1985) ("Not only must the public be protected from the frauds and misrepresentations of unscrupulous tipsters and touts, but the bona fide investment adviser must be safeguarded against the stigma of the activities of these individuals.") (citing S. Rep. No. 1775, 76th Cong., 3d Sess., 21-22 (1940)); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186-877, 84 S. Ct. 275, 280 (1963) (noting Congress's goal of "achiev[ing] a high standard of business ethics . . . in the [United States'] securities industry"); *United States v. Elliot*, 62 F.3d 1304, 1312 n. 9 (11th Cir. 1995) (noting Congress's goal of promoting "public's confidence in investment advisers"); *Steadman v. SEC*, 603 F.2d 1126, 1130 (5th Cir. 1979), aff'd, 450 U.S. 91 (1981) (fraudulent conduct must concern a material fact); *SEC v. Blavin*, 760 F.2d 706, 710-13 (6th Cir. 1985) (The standard of materiality under the Advisers Act is the same as that applied in the context of Section 10(b) of the Securities Exchange Act of 1934); Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (materiality standard); Joint Separate Statement of Undisputed Facts (Docket No. 50-2) P10 (Athenian Fund is a pooled investment vehicle); Athenian Fund Private Placement Memorandum, Ex. 5, p. 41 (same); Investment Advisers Act Release

No. 1092 (Oct. 8, 1987) (person who "holds himself out" as an investment adviser considered to be "in the business" of providing advice).................................................... 7

DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 1 ................... 10

SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 1 ................................................................ 11

SEC PROPOSED INSTRUCTION NO. 2 ............................................................... 12

Duty to Disclose.................................................................................... 12

Source: Adapted from 4 Sand et al., Modern Federal Jury Instructions, Instr. 82-4 (2010); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194, 84 S. Ct. 275, 284 (1963) (investment advisers have "affirmative duty" of "utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading."); *SEC v. Zandford*, 535 U.S. 813, 820-21, 122 S. Ct. 1899, 1903-04 (2002) (breach of fiduciary duty deceptive "because it was neither authorized by, nor disclosed to" client); *U.S. v. O'Hagan*, 521 U.S. 642, 653-55, 117 S. Ct. 2199, 2208-09 (1977) (undisclosed breach of fiduciary duty is fraud); *In re Centerline Sec. Litig.*, 380 Fed. Appx. 91, 93 (2d Cir. 2010) (duty to disclose "can arise from the need to make prior statements not misleading"); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 892 F.2d 199, 207 (2d Cir. 1989) (duty to disclose "arises when one party has information that [another] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them") (quotation omitted); *In re Refco Brokerage Customer Sec. Litig.*, No. 06 Civ. 643 (GEL), 2007 WL 2694469, at *7 (S.D.N.Y. Sept. 13, 2007) (nondisclosure of breach of fiduciary duty constitutes fraud because "[a]cceptance of a fiduciary duty creates an understanding that the fiduciary will behave in certain ways; if the fiduciary allows this understanding to continue while acting inconsistently with her obligations, she has deceived the victim . . . . [T]he fiduciary duty serves as a sort of standing false representation by the fraudster"); *Bullmore v. Bank of Am. Sec., LLC*, 485 F. Supp. 2d 464, 470-71 (LAK) (S.D.N.Y. 2007) ("[I]nvestment advisers owe fiduciary duties

to their clients" arising from their "discretion to manage the client's investment . . . . [T]he relationship . . . impose[s] . . . a duty to act with care and loyalty independent of the terms of the contract"); *Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816, 826 (LAK) (S.D.N.Y. 2010) (duty to disclose arises from "affirmative legal disclosure obligation" such as a fiduciary duty or if disclosure is "necessary to prevent existing disclosures from being misleading"); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*, 479 F. Supp. 2d 349, 363 n.70 (LAK) (S.D.N.Y. 2007) ("duty to update past representations arises when a statement of future intention, 'reasonable at the time it is made, becomes misleading because of a subsequent event.'") (quoting *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 110 (2d Cir. 1998)); *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 283 (LAK) (S.D.N.Y. 2011) (duty to disclose arises when "'secret information renders prior public statements materially misleading'") (quoting *In re Time Warner Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993)). ................................................................................ 12

DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 2 ................... 15

SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 2 ................................................................................ 17

SEC PROPOSED INSTRUCTION NO. 3 ................................................................ 21

Advisers Act Section 206(4) and Rule 206(4)-8: Elements............................. 21

Source: 15 U.S.C. §§ 80b-2(a)(11), 80b-6(1), (2), (4); 17 C.F.R. 275.206(4)-8; *SEC v. DiBella*, 587 F.3d 553, 569 (2d Cir. 2009) ("the Advisers Act holds liable negligent acts"); *SEC v. Laurins*, 930 F.2d 920, 1991 WL 157933, *2 (9th Cir. Apr. 16, 1991) (unpublished decision) (defendant who disseminated investment report to prospective clients and in doing so, sought compensation held investment adviser); *SEC v. Fife*, 311 F.3d 1, 10-11 (1st Cir. 2002) (individual defendant was investment adviser under Section 202(a)(11) where he provided investment advice and, although he "has not yet received compensation, he understood that he would be compensated for his efforts"); *SEC v. Steadman*, 967 F.2d 636, 646-47 (D.C. Cir. 1992) (scienter not required for Section 206(4)); *Abrahamson v.*

*Fleschner*, 568 F.2d 862, 871 (2d Cir. 1977), *cert. denied*, 436 U.S. 905, *cert. denied*, 436 U.S. 913 (1978) (control over purchases and sales constitutes investment advice); *SEC v. Young*, No. 09 Civ. 1634, 2011 WL 1376045, at *7 (E.D. Pa. Apr. 12, 2011) ("we find that both Acord Capital and Young [its President and Chief Investment Officer] were investment advisers as the Advisers Act defines that term")........................................... 21

DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 3 ................... 23

SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 3 ...................................................... 25

SEC PROPOSED INSTRUCTION NO. 4 ........................................................ 28

Advisers Act Sections 206(4) and Rule 206(4)-8: Harm ................................. 28

Source: Adapted from 4 Sand et al., Modern Federal Jury Instructions, Instr. 82-3 (2010) (omitting reliance and loss causation, which SEC need not show); *SEC v. Simpson Capital Mgmt., Inc.*, 586 F. Supp. 2d 196, 201 (S.D.N.Y. 2008) ("SEC is not required to prove investor reliance, loss causation, or damages in an action for securities fraud."); *SEC v. KPMG, LLP*, 412 F. Supp. 2d 349, 375 (S.D.N.Y. 2006) (same); *SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475, 490-91 (S.D.N.Y. 2002) (same) (citing *SEC v. North Am. Research & Dev. Corp.*, 424 F.2d 63, 84 (2d Cir.1970)).................................................. 28

DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 4 ................... 29

SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 4 ...................................................... 30

SEC PROPOSED INSTRUCTION NO. 5 ........................................................ 31

No Requirement for State of Mind ........................................................ 31

Source: Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles, Advisers Act Release No. 2628, 12-13 (Aug. 9, 2007) ("We believe use of a negligence standard also is appropriate as a method reasonably designed to prevent fraud."); *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (scienter not required under Section 206(4))........... 31

DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 5 ................... 32

SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED
INSTRUCTION NO. 5 ............................................................................................ 34

SEC PROPOSED INSTRUCTION NO. 6 .................................................................... 36

    Advisers Act Section 206(4): Negligence.............................................................. 36

    Source: 3 Fed. Jury Prac. & Instr. § 120:02 (6th ed.) (modified); .................................... 36

DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 6 ................... 37

SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED
INSTRUCTION NO. 6 ............................................................................................ 38

SEC PROPOSED INSTRUCTION NO. 7 .................................................................... 39

    Remedies................................................................................................................ 39

    Source: *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (no right to jury trial in SEC
    action seeking injunctive and disgorgement relief); *Tull v. United States*, 481 U.S. 412, 427
    (1987) (court determines penalty).......................................................................... 39

DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 7 ................... 40

SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED
INSTRUCTION NO. 7 ............................................................................................ 41

DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1 ........................................... 42

    Securities – Misrepresentations or Omissions – Materiality ............................. 42

    Authority: Manual of Model Civil Jury Instructions for the Ninth Circuit, 2017 edition,
    Section 18.3............................................................................................................ 42

SEC'S OPPOSITION TO DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1.......... 43

    SEC Proposed Instruction No. 18.1 in Addition to Defendants' Proposed Jury Instruction
    No. 1 ...................................................................................................................... 43

    Securities – Definition of Recurring Terms........................................................... 43

    Source: Manual of Model Civil Jury Instructions for the Ninth Circuit, 2017 edition,
    Section 18.1 (selected applicable paragraphs); *Lowe v. SEC*, 472 U.S. 181,
    199-200, 105 S. Ct. 2557, 1567-68 (1985) ("Not only must the public be

protected from the frauds and misrepresentations of unscrupulous tipsters and touts, but the bona fide investment adviser must be safeguarded against the stigma of the activities of these individuals.") (citing S. Rep. No. 1775, 76th Cong., 3d Sess., 21-22 (1940)); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186-877, 84 S. Ct. 275, 280 (1963) (noting Congress's goal of "achiev[ing] a high standard of business ethics . . . in the [United States'] securities industry"); *United States v. Elliot*, 62 F.3d 1304, 1312 n. 9 (11th Cir. 1995) (noting Congress's goal of promoting "public's confidence in investment advisers"); *Steadman v. SEC*, 603 F.2d 1126, 1130 (5th Cir. 1979), aff'd, 450 U.S. 91 (1981) (fraudulent conduct must concern a material fact); *SEC v. Blavin*, 760 F.2d 706, 710-13 (6th Cir. 1985) (The standard of materiality under the Advisers Act is the same as that applied in the context of Section 10(b) of the Securities Exchange Act of 1934); Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (materiality standard); Joint Separate Statement of Undisputed Facts (Docket No. 50-2) P10 (Athenian Fund is a pooled investment vehicle); Athenian Fund Private Placement Memorandum, Ex. 5, p. 41 (same); Investment Advisers Act Release No. 1092 (Oct. 8, 1987) (person who "holds himself out" as an investment adviser considered to be "in the business" of providing advice). ............................................................... 43

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1 ..................................................................................................... 46

DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 2 ...................................... 47

    Securities – Knowingly...................................................................... 47

    Source: Manual of Model Civil Jury Instructions for the Ninth Circuit, 2017 edition, Section 18.5................................................................................................... 47

SEC'S OPPOSITION TO DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 2.......... 48

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 2 ................................................................................................................ 50

DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 1 .................................. 51

    Affirmative Defense – Reliance on Professionals ............................................. 51

    Authority: *SEC v. Goldfield Deep Mines Co.* (9th Cir. 1985) 758 F.2d 459, 467 ("[I]n in order to establish good faith reliance on the advice of counsel, appellants must show that they (1) made a complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that advice."); *United States v. Westbrooks*, 780 F.3d 593, 596 (4th Cir. 2015) ("In order to establish an advice of counsel defense, the party asserting the defense must establish "(a) full disclosure of all pertinent facts to an attorney, and (b) good faith reliance on the attorney's advice."); *SEC v. Retail Pro, Inc.* (S.D.Cal. Apr. 9, 2010, No. 08cv1620-WQH-RBB) 2010 U.S.Dist.LEXIS 35872, at *14 (reliance on accountants); *United States v. Lindo* (6th Cir. 1994) 18 F.3d 353, 356 ("The elements of a reliance on counsel defense are (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice.") ........................................................... 51

SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 1 ..................................................................................................................... 52

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 1 .......................................................................... 53

DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 2 .................................. 55

    Advisers Act Section 206(4) and Rule 206(4)-8(A)(1) and 8(A)(2) – Elements ............ 55

    Authority:  Advisers Act Section 206(4) and Rule 206(4)-8(a)(1) and 8(a)(2) ............... 55

SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 2 ..................................................................................................................... 57

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 2 .......................................................................... 59

DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 3 .................................... 60

     Investment Adviser – Elements ............................................................. 60

     Authority:  Adviser's Act, Section202(a)(11) ...................................... 60

SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 3 ........................................................................................... 61

DEFENDANTS'   RESPONSE   RE   DEFENDANTS'   PROPOSED   SPECIAL   JURY INSTRUCTION NO. 3 ............................................................................. 63

DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 4 ............................................ 65

     Maker of Statements Under the Securities Laws ................................ 65

     Authority: *Janus Capital Group, Inc. v. First Derivative Traders* (2011) 564 U.S. 135. 65

SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 4 ... 66

DEFENDANTS'   RESPONSE   RE   DEFENDANTS'   PROPOSED   SPECIAL   JURY INSTRUCTION NO. 4 ............................................................................. 68

DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 5 ............................................ 69

     Penalties – Factors ............................................................................... 69

SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 5 ... 70

DEFENDANTS'   RESPONSE   RE   DEFENDANTS'   PROPOSED   SPECIAL   JURY INSTRUCTION NO. 5 ............................................................................. 71

DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 6 ............................................ 72

     Penalties – Tiers .................................................................................. 72

     Authority: Adviser's Act, Section 209(e) ........................................... 72

SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 6 ... 73

DEFENDANTS'   RESPONSE   RE   DEFENDANTS'   PROPOSED   SPECIAL   JURY INSTRUCTION NO. 6 ............................................................................. 74

DEFENDANTS'   PROPOSED   VERDICT   FORM   NO.   1   ADVISERS   ACT   FRAUD ALLEGATIONS (TWEED FINANCIAL SERVICES, INC.) ......................................... 75

SEC'S OPPOSITION TO  DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 1 78

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 1 .................................................................................................... 80

SEC'S OPPOSITION TO  DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 2 86

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 2 .................................................................................................... 88

SEC'S OPPOSITION TO  DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 3 93

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 3 .................................................................................................... 95

SEC'S OPPOSITION TO  DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 4 98

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 4 .................................................................................................. 100

SEC'S OPPOSITION TO  DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 5 .................................................................................................................. 103

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT NO. 5 .................................................................................................................. 104

SEC'S OPPOSITION TO  DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 6 .................................................................................................................. 106

DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT NO. 6 .................................................................................................................. 107

VERDICT FORM DEFENDANT TWEED FINANCIAL SERVICES, INC. ......................... 108

DEFENDANTS' OPPOSITION TO SEC'S PROPOSED VERDICT FORM AS TO TFSI.... 109

SEC RESPONSE TO DEFENDANTS' OPPOSITION  TO THE SEC'S PROPOSED VERDICT FORM .............................................................................................................. 110

VERDICT FORM ............................................................................................................. 111

DEFENDANT ROBERT RUSSEL TWEED ................................................................... 111

DEFENDANTS' OPPOSITION TO  SEC'S PROPOSED VERDICT FORM AS TO TWEED .................................................................................................................. 113

SEC RESPONSE TO DEFENDANTS' OPPOSITION  TO THE SEC'S PROPOSED VERDICT

FORM .................................................................................................................. 114

## SEC'S PROPOSED OPENING REMARKS OF THE COURT

Before we begin the trial, I would like to describe to you how the trial will be conducted.  At the end of the trial, I will give you more detailed guidance on how you will go about reaching your decision.  Let's turn now to this specific case. The plaintiff is the United States Securities and Exchange Commission, sometimes referred to as the SEC or the Commission.  The SEC is the agency of the federal government that is responsible for enforcing the securities laws of the United States.

The defendants in this case are Robert Russel Tweed and Tweed Financial Services, Inc. ("TFSI").  The SEC's complaint in this case alleges that Tweed and TFSI served as investment advisers to a pooled investment fund, the Athenian Fund.  You may hear the Athenian Fund referred to as the Fund.

The SEC alleges that Tweed and TFSI defrauded their advisory clients in various ways.  According to the SEC, the defendants made material misrepresentations to investors regarding the types of assets purchased, and the rates of return generated by the Fund.  The SEC further alleges that Defendants engaged in deceptive conduct by deceiving investors regarding the liquidity of the investments, while redeeming certain investors out of the Fund in preference to others.

The SEC has asserted claims against Tweed and TFSI for violating certain federal securities laws.  Defendants deny that their actions violated the securities laws.

The first step in this trial will be the opening statements.  The SEC in its opening statement will tell you about the evidence that it intends to put before you, so that you will have a preview of what its case is going to be.  The opening statement is not evidence.  Its purpose is only to help you understand what the evidence will be and what the SEC will try to prove.  After the SEC's opening

statement, counsel for Defendants will make his opening statement as well.  At this point in the trial, neither side has offered any evidence.

Next, the SEC will offer evidence that it says supports its claims.  The SEC's evidence will consist of the testimony of witnesses as well as various documents and exhibits.  After the SEC concludes its presentation of the evidence, Defendants may present evidence in their defense.  The parties will also have an opportunity to question the witnesses presented by the other side.

In general, the SEC has the burden of proof in this case.  Some of you may have heard of proof beyond a reasonable doubt, which is the standard of proof in a criminal trial.  This is a civil trial, not a criminal trial.  Because this is a civil trial, the reasonable doubt standard does not apply to this case and you should put that standard out of your mind.  As I will instruct you later in the trial, the SEC has the burden of proving that the defendants violated the law by a preponderance of the evidence, which is a lesser standard than proof beyond a reasonable doubt.  You should also know that the SEC does not need to prove that any investor in the Fund suffered or would suffer any harm or sustained any damages because of the defendants' alleged fraud.  You should not consider harm in determining whether the defendants' committed fraud under the securities laws.

After you have heard all the evidence on both sides, the SEC and the defendants will each make their closing arguments to you.  I just told you that the opening statements are not evidence.  The same applies to the closing arguments.  They are not evidence either.  In their closing arguments, the lawyers for the SEC and the defendants will attempt to summarize their cases and help you understand the evidence that was presented.

The final part of the trial occurs when I instruct you about the rules of law that you must use in reaching your verdict.  After hearing my instructions, you will leave the courtroom together to make your decision.  Your deliberations will be secret.  You will never have any obligation to explain your verdict to anyone.

Now that I have described the trial itself, let me explain the role that you and I are to perform during the trial. I will decide which rules of law apply to this case. I will make those decisions in response to questions raised by the parties as we go along with the trial, and also in the final instructions that I will give to you after the evidence and arguments are completed. You, in turn, will decide whether the SEC has proved that the defendants have violated the law. You must base that decision solely on the evidence presented in the case and my instructions to you about the law.

If you find the defendants violated the law as the SEC charges, it will then be my job to decide what relief to award. Although this is a case brought by an agency of the United States government, it is a civil case and not a criminal case. Therefore, I cannot sentence any of the defendants to time in jail as a result of your decision. In considering the evidence, you should not guess or speculate about what relief I might award to the SEC as a result of your decision. Relief should not be part of your consideration or discussions at any time.

At certain times during the trial, a lawyer for one party may make an objection to a question asked by an opposing lawyer or an answer given by a witness. This simply means that the objecting lawyer has requested that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. These only relate to the legal questions that I must determine and should not influence your thinking. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what the answer might have been had I allowed the question to be answered. Similarly, if I tell you not to consider a particular statement, you should not refer to or rely on that statement in your later deliberations. During the course of the trial I may ask a question of a witness. If I do, that does not indicate in any way that I have an opinion about the facts or evidence in the case.

Finally, let me clarify something you may wonder about later. During the course of the trial I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply here. Sometimes we will talk here, at the bench. But some of these conferences may take time. So, as a convenience to you, I may excuse you from the courtroom to consider the legal issue presented. I will try to avoid interruptions as much as possible, but please be patient even if the trial seems to be moving slowly at times because conferences often, in the end, save time for all of us.

I will give you a much fuller explanation of the laws that are at issue in this case after all the witnesses have testified and the case is ready to be submitted to you for your deliberations and verdict.

## **DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED OPENING REMARKS OF THE COURT**

Objection to this in its entirety.  It is unnecessary, duplicative in that it repeats other jury instructions suggesting thereby undue importance for certain biased and misleading. It also omits reference to affirmative defenses.  The Court can determine what, if any, neutral opening remarks, should be made.

## SEC'S RESPONSES TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED OPENING REMARKS OF THE COURT

The SEC's proposed Opening Remarks provide a concise summary of both the topics at issue and the format of the trial.   As such, it provides assistance to the jury regarding the trial process.

### SEC PROPOSED INSTRUCTION NO. 1
### Securities – Definition of Recurring Terms

**Source**: Manual of Model Civil Jury Instructions for the Ninth Circuit, 2017 edition, Section 18.1 (selected applicable paragraphs); *Lowe v. SEC*, 472 U.S. 181, 199-200, 105 S. Ct. 2557, 1567-68 (1985) ("Not only must the public be protected from the frauds and misrepresentations of unscrupulous tipsters and touts, but the bona fide investment adviser must be safeguarded against the stigma of the activities of these individuals.") (citing S. Rep. No. 1775, 76th Cong., 3d Sess., 21-22 (1940)); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186-877, 84 S. Ct. 275, 280 (1963) (noting Congress's goal of "achiev[ing] a high standard of business ethics . . . in the [United States'] securities industry"); *United States v. Elliot*, 62 F.3d 1304, 1312 n. 9 (11th Cir. 1995) (noting Congress's goal of promoting "public's confidence in investment advisers"); *Steadman v. SEC*, 603 F.2d 1126, 1130 (5th Cir. 1979), aff'd, 450 U.S. 91 (1981) (fraudulent conduct must concern a material fact); *SEC v. Blavin*, 760 F.2d 706, 710-13 (6th Cir. 1985) (The standard of materiality under the Advisers Act is the same as that applied in the context of Section 10(b) of the Securities Exchange Act of 1934); Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (materiality standard); Joint Separate Statement of Undisputed Facts (Docket No. 50-2) P10 (Athenian Fund is a pooled investment vehicle); Athenian Fund Private Placement Memorandum, Ex. 5, p. 41 (same); Investment Advisers Act Release No. 1092 (Oct. 8, 1987) (person who "holds himself out" as an investment adviser considered to be "in the business" of providing advice).

Congress has enacted securities laws designed to protect the integrity of

7

financial markets. The plaintiff claims to have suffered a loss caused by the defendant's violation of certain of these laws.

There are terms concerning securities laws that have a specific legal meaning. The following definitions apply throughout these instructions, unless noted otherwise.

A security is an investment of money in a commercial, financial, or other business enterprise, with the expectation of profit or other gain produced by the efforts of others.  Some common types of securities are stocks, bonds, and investment contracts.

The buying and selling of securities is controlled by the Securities Laws. Many of these laws are administered by the United States Securities and Exchange Commission (SEC).  The statute at issue in this case is the Investment Advisers Act of 1940 (often referred to as the Advisers Act).  Congress passed the Advisers Act to protect clients, investors, and other participants in the securities markets from fraud by investment advisers and to regulate the activities of investment advisers in order achieve a high standard of conduct in the investment advisory industry and to promote the public's confidence in investment advisers.

A "206(4) Claim" is a claim brought under a federal statute, Section 206(4) of the Investment Advisers Act of 1940, which in essence prohibits investment advisers from, directly or indirectly, engaging in any act, practice or course of business which is fraudulent, deceptive, or manipulative.  A corresponding SEC Rule, Rule 206(4)-8 defines such prohibited conduct to include: (1) making false or misleading statements or otherwise defrauding investors or prospective investors in pooled investment vehicles; or (2) engaging in fraudulent, deceptive, or manipulative conduct with respect to any investor or prospective investor in a pooled investment vehicle.

The fraudulent conduct must also concern a material fact.  A fact is material if there is a substantial likelihood that the information would have been viewed by

the reasonable investor as having significantly altered the total mix of information made available.

A pooled investment vehicle is an investment company as defined in the Investment Company Act of 1940.  The parties do not dispute that the Athenian Fund, L.P. is a Delaware limited partnership that operated as a pooled investment vehicle.

An investment adviser is any person, who, for compensation, engages in the business of advising others as to the value of securities or as to advisability of investing in, purchasing, or selling securities.

A misrepresentation is a statement of material fact that is false or misleading when it is made.

## DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION
## NO. 1

Objection.  Biased, argumentative and incomplete in its discussion of "recurring terms."  The proposed instructions is also confusing in that it includes irrelevant material, e.g., the proposed definition of a "security," which is not at issue in this action.  The description of the Investment Advisers Act is argumentative and incomplete.  Other terms are inadequately described.  To the extent definitions are appropriate, more complete and accurate definitions are presented in other proposed instructions.

## SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 1

SEC's proposed Instruction No. 1 is based almost entirely on the Ninth Circuit Model Instruction No. 18.1, changing the "10b-5 claim" portion of the model rule into the appropriate "206(4) claim" portion of the proposed rule. Contrary to Defendants' assertion, the definitions are not irrelevant, as this instruction is intended to compliment other jury instructions describing the law at issue. *See* Joint Disputed Jury Instructions SEC Proposed Instructions Nos. 3, 4, and 6.

## SEC PROPOSED INSTRUCTION NO. 2

### Duty to Disclose

**Source**: Adapted from 4 Sand et al., Modern Federal Jury Instructions, Instr. 82-4 (2010); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194, 84 S. Ct. 275, 284 (1963) (investment advisers have "affirmative duty" of "utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading."); *SEC v. Zandford*, 535 U.S. 813, 820-21, 122 S. Ct. 1899, 1903-04 (2002) (breach of fiduciary duty deceptive "because it was neither authorized by, nor disclosed to" client); *U.S. v. O'Hagan*, 521 U.S. 642, 653-55, 117 S. Ct. 2199, 2208-09 (1977) (undisclosed breach of fiduciary duty is fraud); *In re Centerline Sec. Litig.*, 380 Fed. Appx. 91, 93 (2d Cir. 2010) (duty to disclose "can arise from the need to make prior statements not misleading"); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 892 F.2d 199, 207 (2d Cir. 1989) (duty to disclose "arises when one party has information that [another] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them") (quotation omitted); *In re Refco Brokerage Customer Sec. Litig.*, No. 06 Civ. 643 (GEL), 2007 WL 2694469, at *7 (S.D.N.Y. Sept. 13, 2007) (nondisclosure of breach of fiduciary duty constitutes fraud because "[a]cceptance of a fiduciary duty creates an understanding that the fiduciary will behave in certain ways; if the fiduciary allows this understanding to continue while acting inconsistently with her obligations, she has deceived the victim . . . . [T]he fiduciary duty serves as a sort of standing false representation by the fraudster"); *Bullmore v. Bank of Am. Sec., LLC*, 485 F. Supp. 2d 464, 470-71 (LAK) (S.D.N.Y. 2007) ("[I]nvestment advisers owe fiduciary duties to their clients" arising from their "discretion to manage the client's investment . . . . [T]he relationship

12

. . . impose[s] . . . a duty to act with care and loyalty independent of the terms of the contract"); *Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816, 826 (LAK) (S.D.N.Y. 2010) (duty to disclose arises from "affirmative legal disclosure obligation" such as a fiduciary duty or if disclosure is "necessary to prevent existing disclosures from being misleading"); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*, 479 F. Supp. 2d 349, 363 n.70 (LAK) (S.D.N.Y. 2007) ("duty to update past representations arises when a statement of future intention, 'reasonable at the time it is made, becomes misleading because of a subsequent event.'") (quoting *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 110 (2d Cir. 1998)); *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 283 (LAK) (S.D.N.Y. 2011) (duty to disclose arises when "'secret information renders prior public statements materially misleading'") (quoting *In re Time Warner Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993)).

First, the law imposes a duty of disclosure on a person who is referred to as a "fiduciary." An investment adviser who agrees to manage, direct, or oversee the investments of a client is a fiduciary and owes certain duties to the client under the law. Here, Tweed and TFSI served as investment advisers to the Athenian Fund and were therefore the fiduciaries of those clients. This means that Tweed and TFSI owed each of those clients a duty of undivided loyalty to act always in that client's best interests and for its benefit. Tweed and TFSI also owed a duty to each of their clients to exercise care in managing each client's assets, and a duty of candor, which means that they had to provide full and fair disclosure to the client of all important information relating to the client's investments and had an affirmative obligation to avoid misleading the client.

To find that Tweed and TFSI violated Section 206(4) of the Advisers Act and Rule 206(4)-8 you can find that they deceived their clients by engaging in conduct that was inconsistent with their fiduciary duties as investment advisers. The duties that Tweed and TFSI undertook served as an implied, ongoing representation by them that they would act at all times in their client's best interests and manage their clients' assets consistently with their duties of loyalty, care, and candor.  If Tweed or TFSI violated those obligations — for example, by misrepresenting the rate of return, or the liquidity of the investment — you can find that the failure to disclose this constituted a violation of Section 206(4) of the Advisers Act and Rule 206(4)-8.

The second circumstance in which the law imposes an affirmative duty of disclosure is when disclosure is needed to prevent a prior statement, even if accurate when made, from becoming false or misleading.  Not every statement has to be updated if subsequent facts render it false or misleading.  But if a person makes a representation of his future intention to conduct himself in a certain way, if that representation becomes false while his conduct is still expected or is ongoing, the person has a duty to disclose information to update his prior representation.  Here, the SEC alleges that Tweed and TFSI represented to their clients and to investors that they would invest in a particular kind of assets and that they later deceived those clients and investors by failing to update them that they had made investments in breach of those representations and that the investments had failed to perform as expected.

## DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 2

Objection. Biased, argumentative, misstates the law.  The instruction also would be a source of jury confusion by presenting a purported "duty of disclosure" which is not *per se* at issue here.

The proposed instruction also introduces an assertion that the Defendants were fiduciaries.   In Defendants' Motion in Limine No. 1, the Defendants are seeking to exclude and argument of evidence regarding Defendants' alleged breach of fiduciary duty.  Breach of fiduciary duty was ***not*** pled in the SEC's First Amended Complaint ("FAC"), nor does it appear once in the 101 paragraphs of the FAC.  Throughout this entire matter there has been no allegation regarding breach of fiduciary duty.  As explained above, there is no mention of breach of fiduciary duty anywhere in the operative pleadings.  Accordingly, any argument or evidence regarding breach of fiduciary duty should be excluded because it is not relevant.

In addition, the probative value of evidence or arguments relating to breach of fiduciary duty would be substantially outweighed by the danger of undue prejudice and should be excluded pursuant to Rule 403, Fed. R. Evid.

The proposed instruction also presents as decided an issue that is disputed, i.e., that the Defendants' were investment advisers with respect to the matters at issue here.  Section 202(a)(11) of the Adviser's Act defines an investment adviser as, "any person who, for compensation, is engaged in the business of providing advice to others or issuing reports as to securities." During the period at issue (Q4 2012 through Q1 2014), neither Defendant Tweed Financial Services, Inc. ("TFSI")  nor Defendant Robert Russel Tweed ("Tweed") received any compensation with respect to the Fund.

Neither TFSI nor Tweed were providing advice to any of the investors about whether or not to make any investment decisions relating to the Fund at the time of Quarterly Reports were distributed to investors.

In addition, the reports at issue  were prepared by accountants whom the Defendants assert prepared the reports. See *Wallent v. Bendelac (In re Bendelac)* 2005 Bankr. LEXIS 3484, 2005 Bankr. LEXIS 3484 (Bankr.S.D.N.Y. 2005) where the Court held that the Debtor was not an investment adviser, notwithstanding that the Debtor was an executive officer and director of a corporation which had filed a form 10-KSB with the SEC identifying itself as a registered investment advisory firm, the where the Debtor testified that the corporation was actually only a broker/dealer at the relevant time and that the Debtor personally was simply a registered broker with a securities license. The Court explained, "Plaintiffs have not demonstrated either the necessary facts or the legal guidance that would persuade this Court that the Debtor should be considered an investment adviser for the purposes of the Investment Advisers Act. The Debtor testified that he did not act as an investment adviser in his capacity as an officer or director of Laidlaw, stating that he was 'simply a broker." 3/23 Tr. at 154-155. The Debtor may have received substantial compensation from Laidlaw, but it was not shown that Debtor's compensation from Laidlaw was directly related to providing investment advice." *Id.,* 2005 Bankr. LEXIS 3484, at *49. See also, *Wang v. Gordon,* 715 F. *Id.,* 2005 Bankr. LEXIS 3484, at *49. See also, *Wang v. Gordon,* 715 F.2d 1187, 1192 (7th Cir. 1983) (Defendant general partner was not an investment adviser under §202(a)(11) of the Adviser's Act where he was compensated for selling partnership property but not for information regarding securities.)

## SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 2

The SEC's Proposed Disputed Jury Instruction No. 2 properly contains an assertion that Defendants' were fiduciaries and explains the fiduciary duties owed to Defendants' clients.  As explained in the SEC's opposition to Defendants' motion *in limine* No. 1, a cause of action for violation of the federal securities laws, specifically, Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-(8) thereunder require a showing of negligence.  Because negligence requires a breach of a legal duty, the standard of care expected of investment advisers is relevant to the question of whether Defendants were in fact negligent.  Section 206 of the Advisers Act establishes a statutory fiduciary duty for investment advisers.  Therefore, a jury instruction on this point is both relevant to the jury, does not misstate the law, and would not be more prejudicial than probative under Federal Rule of Evidence 403.

Moreover, contrary to Defendants' assertion, the question of whether Defendants are investment advisers is in fact not in dispute, but rather has already been admitted and may appropriately be addressed in the proposed jury instruction. It is well-settled that admissions in an answer are conclusively established and are not subject to proof.  *Hoodho v. Holder*, 558 F.3d 184, 190-92 (2d Cir. 2009) (admissions during pleading stage are binding); *Roman v. Mukasey*, 553 F.3d 184, 186-87 (2d Cir. 2009) (per curiam) (same); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (statement in an answer in a civil case is a binding judicial admission).  "Judicial admissions are not evidence at all.  Rather, they are formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.  Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case . . . ."  *Hoodho*, 558

F.3d at 191 (quoting 2 McCormick on Evid. § 254 (6th ed. 2006)). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Ins. Co.*, 861 F.2d at 226 (internal quotation marks and citation omitted). "Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them." *Id.* "A statement in a[n] . . . answer . . . is a judicial admission." *Id.*[1]

Likewise, admissions in responses to Requests for Admission are "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. Proc. 36(b). Unlike admissions made in interrogatory answers or depositions, admissions made in RFAs are binding and cannot be explained away or contradicted by other evidence. *In re Carney*, 258 F3d 415, 421 (5th Cir. 2001); *Castiglione v. United States Life Ins. Co. in City of N.Y.,* 262 F.Supp.2d 1025, 1030 (Dist Ariz. 2003). Since Rule 36 admissions are conclusive as to the matters admitted, they cannot be overcome by contradictory affidavit testimony or other evidence in the summary judgment record, and Defendants' attempts to revive this settled issue by way of Mr. Tweed's Declaration or live testimony must be disallowed. *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548–49 (5th Cir.1985).

---

[1] *See also*, 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 413, pp. 510-511 ("An admission in the pleadings is not treated procedurally as evidence; i.e., the pleading need not (and should not) be offered in evidence, but may be commented on in argument and relied on as part of the case. And it is fundamentally different from evidence: It is a *waiver of proof* of a fact by conceding its truth, and it has the effect of removing the matter from the issues. Under the doctrine of 'conclusiveness of pleadings,' a pleader is bound by well pleaded material allegations or by failure to deny well pleaded material allegations. [Citations.]);" *Valerio v. Andrew Youngquist Construction*, 103 Cal. App. 4th 1264, 1271 (1st Dist. Ct. of Appeal 2002) ("When allegations in a complaint are admitted by the answer (a) no evidence need be offered in their support; (b) evidence is not admissible to prove their untruth; (c) no finding thereon is necessary; (d) a finding contrary thereto is error").

Defendants have admitted all the facts necessary to establish that they were investment advisers to the Athenian Fund.  Defendants have admitted that (1) TFSI was an investment adviser to the Athenian Fund (Dkt. No. 64, at Ex. 5 and 6, Resp. No. 7); (2) Tweed controlled TFSI (Dkt. No. 47 (Answer ¶ 14)); (3) Defendants have admitted that Tweed moved the Athenian Fund's capital to QAMF (Dkt. No. 64, at Ex. 5 and 6, Resp. No. 14); and (4) Defendants admitted that it was Tweed who made the Athenian Fund investment with Teamwork Retail.  *Id.*, Resp. No. 25.  Defendants admitted in their responses to the SEC's First Set of Requests for Admission that "from October 2012 to the first quarter of 2014, *TFSI, acting through Tweed, issued quarterly account statements to Athenian Fund investors.*" Dkt. No. 64, at Ex. 5 and 6, Resp. No. 22 (emphasis added.)

 Section 202(a)(11) of the Advisers Act defines an "investment adviser" as any person who, for compensation, is engaged in the business of providing advice to others or issuing reports regarding securities. 15 U.S.C. § 80b-2(a)(11). Defendants provided advice to Athenian Fund investors during the relevant period by exercising control over client funds, as Defendants have admitted in their Answer and in their RFA responses.  Dkt. No. 64, at Ex. 5 and 6, RFA Resp. Nos. 7, 14, 25.  *Abrahamson v. Fleschner*, 568 F.2d 862, 871 (2d Cir. 1977) ("investment advisers 'advise' their customers by exercising control over what purchases and sales are made with their clients' funds"); *SEC v. Ahmed*, 308 F. Supp. 3d 628, 652 (D. Conn. 2018) (definition of an investment adviser is a "broad definition" and includes both those who receive compensation for investing funds for their clients or those who advise by exercising control) (*citing Financial Planning Ass'n v. SEC*, 482 F3d 481, 484 (D.C. Cir. 2007)).  Because they have admitted that it was TFSI, through Tweed, that invested the Athenian Fund assets with QAMF and Teamwork Retail, Defendants cannot now dispute it.  Dkt. No. 64, at Ex. 5 and 6, Resp. Nos. 7, 14, 25.  Therefore, both Tweed and TFSI are investment advisers under the Advisers Act.

19

1    Because Defendants are bound by their admissions in both the pleading

2    stage and in their responses to the SEC's requests for admission, it is appropriate

3    for the court to issue a jury instruction acknowledging that Defendants are

4    investment advisers.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SEC PROPOSED INSTRUCTION NO. 3

### Advisers Act Section 206(4) and Rule 206(4)-8: Elements

**Source**: 15 U.S.C. §§ 80b-2(a)(11), 80b-6(1), (2), (4); 17 C.F.R. 275.206(4)-8; *SEC v. DiBella*, 587 F.3d 553, 569 (2d Cir. 2009) ("the Advisers Act holds liable negligent acts"); *SEC v. Laurins*, 930 F.2d 920, 1991 WL 157933, *2 (9th Cir. Apr. 16, 1991) (unpublished decision) (defendant who disseminated investment report to prospective clients and in doing so, sought compensation held investment adviser); *SEC v. Fife*, 311 F.3d 1, 10-11 (1st Cir. 2002) (individual defendant was investment adviser under Section 202(a)(11) where he provided investment advice and, although he "has not yet received compensation, he understood that he would be compensated for his efforts"); *SEC v. Steadman*, 967 F.2d 636, 646-47 (D.C. Cir. 1992) (scienter not required for Section 206(4)); *Abrahamson v. Fleschner*, 568 F.2d 862, 871 (2d Cir. 1977), *cert. denied*, 436 U.S. 905, *cert. denied*, 436 U.S. 913 (1978) (control over purchases and sales constitutes investment advice); *SEC v. Young*, No. 09 Civ. 1634, 2011 WL 1376045, at *7 (E.D. Pa. Apr. 12, 2011) ("we find that both Acord Capital and Young [its President and Chief Investment Officer] were investment advisers as the Advisers Act defines that term").

The SEC alleges that Tweed and TFSI violated Sections 206(4) of the Advisers Act and Rule 206(4)-8.  To prove these violations, the SEC must first establish by a preponderance of the evidence that Tweed and TFSI Manager were investment advisers, as that term is defined in the Advisers Act.  The Act defines an "investment adviser" as:

> any person who, for compensation, engages in the business of advising
> others, either directly or through publications or writings, as to the value of

securities or as to the advisability of investing in, purchasing, or selling securities.

The act of "advising" is broader than simply communicating a recommendation to a client. "Many investment advisers 'advise' their customers by exercising control over what purchases and sales are made with their clients' funds."

Tweed and TFSI dispute that they were investment advisers within the meaning of the Advisers Act. Therefore, you must consider whether Tweed and TFSI satisfied the statutory definition by providing investment advice for compensation.

To prove a violation of Section 206(4) and Rule 206(4)-8, the SEC must establish by a preponderance of evidence that Tweed and TFSI did one or more of the following:

(1)   made any untrue statement of a material fact to any investor or prospective investor in the Athenian Fund, or omitted to state a material fact necessary to make statements made to such investors, in the light of the circumstances under which they were made, not misleading; or

(2)   engaged in any act, practice, or course of business that was fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the Athenian Fund.

The elements of a violation of Sections 206(4) and Rule 206(4)-8 require a showing of a fraudulent act, misstatement, or failure to disclose, and a showing of materiality.

Under Section 206 of the Advisers Act, the SEC need not show that the alleged fraud was in connection with the offer, purchase, or sale of a security. It is sufficient that Tweed and TFSI committed fraud on their advisory clients or prospective clients, or on investors in the Athenian Fund, irrespective of whether the fraud was related to transactions in securities.

As for the required state of mind, the SEC need only prove negligence.

## DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 3

Objection.  The proposed instruction is argumentative and confusing.   It states the SE's position without fully stating the Defendants' position.   It also confuses several different elements of what constitutes a violation of the statute and the Rule.  It is also an inaccurate statement of the law.

The proposed instruction also adds elements that are irrelevant.  Thus, the instruction discusses "prospective clients," which are not at issue here.

To avoid confusion, Defendants' proposed instruction which treat the elements separately and completely are far preferable.

The unnecessary proposed statement, "As for the required state of mind, the SEC need only prove negligence," is misleading.  First, the SEC relies upon *SEC v. Steadman*, 967 F.2d 636, 646 (D.C. Cir. 1992) for the proposition that scienter is not required under section 206(4).  This law, however, is not necessarily controlling.  In *Carroll v. Bear Stearns & Co.* (S.D.N.Y.) 1976) 416 F. Supp. 998, 1002, held scienter was required for a violation of section 206.  Accordingly, the law is disputed on this point and excluding the evidence outright would be improper.

In the *Concurrence of Commissioner Paul Atkins* to the adoption of Rule 206(4)-8(aq)(2) by the SEC, SEC Commissioner Atkins appropriately reasoned [footnotes omitted]:

The language of Section 206(4) does not reach negligent conduct. Section 206(4) makes it unlawful for an advisor "to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative" and directs the Commission "by rules and regulations [to] define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative." . . . As the Supreme

23

Court has said, however, "it is a 'familiar principle of statutory construction that words grouped in a list should be given related meaning.'" Hence, it is inappropriate to base a conclusion that negligent conduct is reached by looking at the term "deceptive" apart from its companion terms. In the Section 10(b) context, the Supreme Court has accorded special significance to the term "manipulative": Use of the word The language  of Section 206(4), like the language of Section 10(b), would seem then to  suggest a scienter requirement.

Negligence is also insufficient to establish aiding and abetting liability. Including the proposed statement may confuse the jury on this issue.    Actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it is required for aiding and abetting liability.  *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996);  *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012).

## SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 3

The SEC's proposed disputed instruction No. 3 is neither argumentative nor confusing.  The proposed instruction merely tracks the language contained in Section 206(4) of the Advisers Act and Rule 206(4)-8.  Defendants' conclusory statement that the instruction is an inaccurate statement of the law provides no context or explanation for what portions of the instruction the Defendants believe are inaccurate.

In fact, contrary to Defendants' assertion that the proposed instruction fails to fully state the Defendants' position, this proposed instruction even contains the following language regarding Defendants' defense that they are not investment advisers: "Tweed and TFSI dispute that they were investment advisers within the meaning of the Advisers Act.  Therefore, you must consider whether Tweed and TFSI satisfied the statutory definition by providing investment advice for compensation."  The SEC has argued, and will continue to assert, that Defendants have already admitted that they are investment advisers, but inserted this language in the instruction on the understanding that this issue is still before the Court.  *See* Dkt. No. 61 (SEC MIL No. 2 to Exclude Evidence and Argument Regarding Matters Previously Admitted by Defendants).  If the Court grants the SEC's motion *in limine*, the SEC will request that the quoted language be stricken from this Instruction.

Defendants claim that the elements of the charges should be broken up into separate jury instructions in order to avoid confusing the jury.  The SEC disagrees.  Jury instructions are intended be brief and the SEC's proposed instruction is more efficient than the multiple instructions proposed by Defendants.  *See Central Microfilm Service Corp. v. Basic/Four Corp.*, 688 F.2d 1206, 1219 n.12 (8th Cir. 1982) (finding that jury instructions should be simple and brief) (internal citations

omitted).

Finally, Defendants again improperly attempt to insert a scienter requirement into the law.  Scienter is not required for violations of Section 206(4) and Rule 206(4)-8; rather, a showing of negligence is sufficient.  *See Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*, Advisers Act Release No. 2628 (Aug. 3, 2007) at 12-13 ("We believe use of a negligence standard also is appropriate as a method reasonable designed to prevent fraud."); *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (scienter not required under Section 206(4)); *SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 177-178 (D.R.I. 2004) (same); *SEC v. Daifotis*, 874 F. Supp. 2d 870, 887 (N.D. Cal. 2012) (same). Because scienter is not an element of the Defendants' direct violations, an instruction on negligence is appropriate.

Defendants cite an out of circuit district court case, *Carroll v. Bear Stearns & Co*. 416 F. Supp. 998, 1002 (S.D.N.Y. 1976) for the proposition that "scienter is required for violations of Section 206."  That statement, while true of Section 206(1) of the Advisers Act, is irrelevant to the SEC's claims for violation of Section 206(4) of the Act and Rule 206(4)-8 thereunder.  It is well-settled that Section 206(4) does not require proof of scienter.  *Steadman*, 967 F.2d at 647; *Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 679 (11th Cir. 1988); *Steadman v. SEC*, 603 F.2d 1126, 1134 (5th Cir. 1979) *aff'd*, 450 U.S. 91, 101 S. Ct. 999, 67 L. Ed. 2d 69 (1981).  The "Advisers Act holds liable negligent acts."  *SEC v. DiBella*, 587 F.3d 553, 569 (2d Cir. 2009); *In re Reserve Fund Sec. & Derivative Litig.*, 2013 U.S. Dist. LEXIS 141018, 2013 WL 5432334, at *12 (S.D.N.Y. Sept. 30, 2013); *SEC v. Yorkville Advisors, LLC*, 2013 U.S. Dist. LEXIS 110624, 2013 WL 3989054, at *3 (S.D.N.Y. Aug. 2, 2013).  Moreover, the *Carroll* case was decided in 1976, but Rule 206(4)-8 of the Advisers Act was not enacted until 2007.  The enacting release for Rule 206(4)-8 makes it clear that scienter is not required to establish a violation.  *Prohibition of Fraud by Advisers to Certain Pooled*

1   *Investment Vehicles*, Advisers Act Release No. 2628 (Aug. 3, 2007) at 12-13 ("We

2   believe use of a negligence standard also is appropriate as a method reasonably

3   designed to prevent fraud."). [2]

4          The SEC's jury instruction properly instructs the jury on the fact that the

5   jury need only find negligence.  As this jury instruction does not pertain to the

6   aiding and abetting claim, the state of mind for that claim is not relevant to this

7   instruction.

---

25   [2] Nor are the statements of a former SEC Commissioner controlling.  Such a statement is
26   not binding legal authority and should be disregarded against the weight of the authority
     in this Circuit and others.  *See Siddell, v. Commissioner of Internal Revenue*, 177 F. 3d
27   136, 145 (1st Cir. 2000) ("statements by individual IRS employees cannot bind the
     Secretary [of the Treasury]"); *SEC v. Nat'l Student Mktg. Corp.,* 68 F.R.D. 157, 160
28   (D.D.C. 1975) ("the views of an individual Commissioner will not invariably reflect the
     position of the agency as a whole").

## SEC PROPOSED INSTRUCTION NO. 4

### Advisers Act Sections 206(4) and Rule 206(4)-8: Harm

**Source**: Adapted from 4 Sand et al., Modern Federal Jury Instructions, Instr. 82-3 (2010) (omitting reliance and loss causation, which SEC need not show); *SEC v. Simpson Capital Mgmt., Inc.*, 586 F. Supp. 2d 196, 201 (S.D.N.Y. 2008) ("SEC is not required to prove investor reliance, loss causation, or damages in an action for securities fraud."); *SEC v. KPMG, LLP*, 412 F. Supp. 2d 349, 375 (S.D.N.Y. 2006) (same); *SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475, 490-91 (S.D.N.Y. 2002) (same) (citing *SEC v. North Am. Research & Dev. Corp.*, 424 F.2d 63, 84 (2d Cir.1970))**.**

The SEC does not need to prove that anyone suffered or would suffer any losses or harm as a result of the defendants' alleged fraud.   Therefore, you should not consider whether anyone lost any money as a result of the alleged fraud, in determining whether the defendants' committed fraud under the securities laws.

# DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION
## NO. 4

Objection.  Unnecessary and confusing.

### SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 4

Defendants' brief and unsupported objection fails to explain why the SEC's proposed jury instruction No. 4 is "unnecessary" or "confusing."  This is a brief and efficient instruction to explain the relevant standard of care, "negligence," to the jury.

## SEC PROPOSED INSTRUCTION NO. 5
### No Requirement for State of Mind

**Source**: Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles, Advisers Act Release No. 2628, 12-13 (Aug. 9, 2007) ("We believe use of a negligence standard also is appropriate as a method reasonably designed to prevent fraud."); *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (scienter not required under Section 206(4))


There is no requirement that the SEC prove that each of the Defendants acted with any particular state of mind to establish a violation of Section 206(4) and Rule 206(4)-8; rather, a showing of negligence is sufficient.

### DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 5

Objection.  Unnecessary, confusing and misleading.   To avoid confusion, Defendants' proposed instruction which treat the elements separately and completely are far preferable.

First, the SEC relies upon *SEC v. Steadman*, 967 F.2d 636, 646 (D.C. Cir. 1992) for the proposition that scienter is not required under section 206(4).  This law, however, is not necessarily controlling.  In *Carroll v. Bear Stearns & Co.* (S.D.N.Y.) 1976) 416 F. Supp. 998, 1002, held scienter was required for a violation of section 206.  Accordingly, the law is disputed on this point and excluding the evidence outright would be improper.

The SEC's reliance on its own Advisers Act Release No. 2628, 12-13 (issued in  connection with the adoption of Rule 206(4)-8(a)(2) should be considered together with the *Concurrence of Commissioner Paul Atkins* to the adoption of the regulation, SEC Commissioner Atkins appropriately reasoned [footnotes omitted]:

The language of Section 206(4) does not reach negligent conduct. Section 206(4) makes it unlawful for an advisor "to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative" and directs the Commission "by rules and regulations [to] define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative." . . . As the Supreme Court has said, however, "it is a 'familiar principle of statutory construction that words grouped in a list should be given related meaning.'" Hence, it is inappropriate to base a conclusion that negligent conduct is reached by looking at the term "deceptive" apart from its companion terms. In the Section 10(b) context, the Supreme Court has accorded special significance

1    to the term "manipulative": Use of the word The language  of Section

2    206(4), like the language of Section 10(b), would seem then to  suggest a

3    scienter requirement.

4

5    Negligence is also insufficient to establish aiding and abetting liability.

6    Including the proposed statement may confuse the jury on this issue.    Actual

7    knowledge by the alleged aider and abettor of the primary violation and of his or her

8    own role in furthering it is required for aiding and abetting liability.  *SEC v. Fehn*,

9    97 F.3d 1276, 1288 (9th Cir. 1996);  *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir.

10   2012).

## SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 5

First, Defendants claim that the elements of the charges should be broken up into separate jury instructions in order to avoid confusing the jury.  The SEC disagrees.  Jury instructions are intended be brief and the SEC's proposed instruction is more efficient than the multiple instructions proposed by Defendants. *See Central Microfilm Service Corp. v. Basic/Four Corp.*, 688 F.2d 1206, 1219 n.12 (8th Cir. 1982) (finding that jury instructions should be simple and brief) (internal citations omitted).

Second, Defendants again improperly attempt to insert a scienter requirement into the law.  Scienter is not required for violations of Section 206(4) and Rule 206(4)-8; rather, a showing of negligence is sufficient.  *See Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*, Advisers Act Release No. 2628 (Aug. 3, 2007) at 12-13 ("We believe use of a negligence standard also is appropriate as a method reasonable designed to prevent fraud."); *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (scienter not required under Section 206(4)); *SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 177-178 (D.R.I. 2004) (same); *SEC v. Daifotis*, 874 F. Supp. 2d 870, 887 (N.D. Cal. 2012) (same). Because scienter is not an element of the Defendants' direct violations, an instruction on mere negligence is appropriate.

Defendants cite *Carroll v. Bear Stearns & Co*. 416 F. Supp. 998, 1002 (S.D.N.Y. 1976) for the proposition that "scienter is required for violations of Section 206." That statement, while true of Section 206(1) of the Advisers Act, is irrelevant to the SEC's claims for violation of Section 206(4) of the Act and Rule 206(4)-8 thereunder.  It is well-settled that Section 206(4) does not require proof of scienter.  *Steadman*, 967 F.2d at 647; *Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 679 (11th Cir. 1988); *Steadman v. SEC*, 603 F.2d 1126, 1134 (5th Cir. 1979) *aff'd*,

450 U.S. 91, 101 S. Ct. 999, 67 L. Ed. 2d 69 (1981).  The "Advisers Act holds liable negligent acts."  *SEC v. DiBella*, 587 F.3d 553, 569 (2d Cir. 2009); *In re Reserve Fund Sec. & Derivative Litig.*, 2013 U.S. Dist. LEXIS 141018, 2013 WL 5432334, at *12 (S.D.N.Y. Sept. 30, 2013); *SEC v. Yorkville Advisors, LLC*, 2013 U.S. Dist. LEXIS 110624, 2013 WL 3989054, at *3 (S.D.N.Y. Aug. 2, 2013). Moreover, the *Carroll* case was decided in 1976, but Rule 206(4)-8 of the Advisers Act was not enacted until 2007.  The enacting release for Rule 206(4)-8 makes it clear that scienter is not required to establish a violation.  *Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*, Advisers Act Release No. 2628 (Aug. 3, 2007) at 12-13 ("We believe use of a negligence standard also is appropriate as a method reasonably designed to prevent fraud.").

  The SEC's jury instruction properly instructs the jury on the fact that the jury need only find negligence.  As this jury instruction does not pertain to the aiding and abetting claim, the state of mind for that claim is not relevant to this instruction.

## SEC PROPOSED INSTRUCTION NO. 6

### Advisers Act Section 206(4): Negligence

**Source**: 3 Fed. Jury Prac. & Instr. § 120:02 (6th ed.) (modified);

A person is "negligent" when the person fails to exercise ordinary care. "Ordinary care" is the care a reasonable person would use in similar circumstances. A person is negligent if the person, without intending to do harm, does something (or fails to do something) a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property. Negligence may also consist of the failure to act for the benefit of another when one is under a duty to do so.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION</u>**

**<u>NO. 6</u>**

Objection.  Unnecessary and confusing.

## SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 6

Defendants' brief and unsupported objection fails to explain why the SEC's proposed jury instruction No. 6 is "unnecessary" or "confusing."  This is a brief and efficient instruction to explain the relevant standard of care, "negligence," to the jury.

## **SEC PROPOSED INSTRUCTION NO. 7**

### **Remedies**

**Source**: *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (no right to jury trial in SEC action seeking injunctive and disgorgement relief); *Tull v. United States*, 481 U.S. 412, 427 (1987) (court determines penalty).

     If you decide that the SEC has proved any Defendant liable, then it will be my job to decide what the appropriate remedy should be.  Deciding what the remedy should be is my job, not yours.  In considering whether the Defendant is liable, you should not consider what relief I might award.

## **DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 7**

Objection.  Unnecessary and confusing.  In addition, it is misleading in that the jury should make factual findings to assist the Court in determining remedies, if any.  Specifically, the jury should make factual findings on the following elements relevant to the granting or denial of a permanent injunction:

1. The degree of intent, if any, involved;

2. The isolated or recurrent nature of the infraction;

3. The Defendant's recognition of the wrongful nature of his or its conduct;

4. The likelihood, because of defendant's professional occupation, that future violations might occur;

5. The sincerity of his or its assurances against future violations.

See, *SEC v. Murphy,* 626 F.2d 633, 655 (9th Cir. 1980) (In predicting the likehood of future violations, courts evaluate the totality of the circumstances, taking into account such factors as the degree of scienter involved, the isolated or recurrent nature of the unlawful conduct, the defendant's recognition of the wrongful nature of the conduct, the likelihood that future violations will occur, and the sincerity of defendant's assurances against future violations.)  See also, *SEC v. Kotrozo,* 2006 U.S. Dist. LEXIS 96795 (C.D. Cal. Jan. 30, 2006) *5 ("None of the factors in *Murphy* weigh in favor of the issuance of an injunction in this case. The Court does not find a reasonable likelihood that future violations will be committed by either defendant. The plaintiff's request for an injunction is denied as to each defendant.")

## SEC'S RESPONSE TO DEFENDANTS' OBJECTIONS TO SEC'S PROPOSED INSTRUCTION NO. 7

Defendants' own authority supports the SEC's position that remedies are a question for the Court not the jury. *SEC v. Murphy,* 626 F.2d 633, 655 (9th Cir. 1980) (In predicting the likelihood of future violations, **courts** evaluate the totality of the circumstances, taking into account such factors as the degree of scienter involved, the isolated or recurrent nature of the unlawful conduct, the defendant's recognition of the wrongful nature of the conduct, the likelihood that future violations will occur, and the sincerity of defendant's assurances against future violations); *See also, SEC v. Kotrozo,* 2006 U.S. Dist. LEXIS 96795 (C.D. Cal. Jan. 30, 2006) *5 ("None of the factors in *Murphy* weigh in favor of the issuance of an injunction in this case. **The Court** does not find a reasonable likelihood that future violations will be committed by either defendant. The plaintiff's request for an injunction is denied as to each defendant.") (emphasis added). Defendants' assertion that the jury must make specific factual findings for the Court's determination of remedies is unsupported by any authority.  Remedies in this matter are to be determined by the Court.  *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (no right to jury trial in SEC action seeking injunctive and disgorgement relief); *Tull v. United States*, 481 U.S. 412, 427 (1987) (court determines penalty).

## **DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1**

### **Securities – Misrepresentations or Omissions – Materiality**

**Authority**: Manual of Model Civil Jury Instructions for the Ninth Circuit, 2017 edition, Section 18.3

The plaintiff must prove by a preponderance of the evidence that the defendant's alleged misrepresentation or omission was material.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security.

An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed to him, her or it as having significantly altered the total mix of information he, she or it took into account in deciding whether to buy or sell the security.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.

# SEC'S OPPOSITION TO DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1

The SEC would be willing to accept this proposed jury instruction regarding materiality if the relevant portions of Ninth Circuit Manual of Model Civil Jury Instruction No. 18.1 (Securities – Definition of Recurring Terms) is also given in the following format.  Defendants' proposed jury instruction No. 1 is incomplete and would be misleading to the jury without the additional definitions provided in proposed and revised Model Jury Instruction No. 18.1.

### SEC Proposed Instruction No. 18.1 in Addition to Defendants' Proposed Jury Instruction No. 1

### Securities – Definition of Recurring Terms

**Source**: Manual of Model Civil Jury Instructions for the Ninth Circuit, 2017 edition, Section 18.1 (selected applicable paragraphs); *Lowe v. SEC*, 472 U.S. 181, 199-200, 105 S. Ct. 2557, 1567-68 (1985) ("Not only must the public be protected from the frauds and misrepresentations of unscrupulous tipsters and touts, but the bona fide investment adviser must be safeguarded against the stigma of the activities of these individuals.") (citing S. Rep. No. 1775, 76th Cong., 3d Sess., 21-22 (1940)); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186-877, 84 S. Ct. 275, 280 (1963) (noting Congress's goal of "achiev[ing] a high standard of business ethics . . . in the [United States'] securities industry"); *United States v. Elliot*, 62 F.3d 1304, 1312 n. 9 (11th Cir. 1995) (noting Congress's goal of promoting "public's confidence in investment advisers"); *Steadman v. SEC*, 603 F.2d 1126, 1130 (5th Cir. 1979), aff'd, 450 U.S. 91 (1981) (fraudulent conduct must concern a material fact); *SEC v. Blavin*, 760

43

F.2d 706, 710-13 (6th Cir. 1985) (The standard of materiality under the Advisers Act is the same as that applied in the context of Section 10(b) of the Securities Exchange Act of 1934); Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (materiality standard); Joint Separate Statement of Undisputed Facts (Docket No. 50-2) P10 (Athenian Fund is a pooled investment vehicle); Athenian Fund Private Placement Memorandum, Ex. 5, p. 41 (same); Investment Advisers Act Release No. 1092 (Oct. 8, 1987) (person who "holds himself out" as an investment adviser **considered to be "in the business" of providing advice).**

Congress has enacted securities laws designed to protect the integrity of financial markets. The plaintiff claims to have suffered a loss caused by the defendant's violation of certain of these laws.

There are terms concerning securities laws that have a specific legal meaning. The following definitions apply throughout these instructions, unless noted otherwise.

A security is an investment of money in a commercial, financial, or other business enterprise, with the expectation of profit or other gain produced by the efforts of others.  Some common types of securities are stocks, bonds, and investment contracts.

The buying and selling of securities is controlled by the Securities Laws. Many of these laws are administered by the United States Securities and Exchange Commission (SEC).  The statute at issue in this case is the Investment Advisers Act of 1940 (often referred to as the Advisers Act).  Congress passed the Advisers Act to protect clients, investors, and other participants in the securities markets from fraud by investment advisers and to regulate the activities of investment

advisers in order achieve a high standard of conduct in the investment advisory industry and to promote the public's confidence in investment advisers.

A "206(4) Claim" is a claim brought under a federal statute, Section 206(4) of the Investment Advisers Act of 1940, which in essence prohibits investment advisers from, directly or indirectly, engaging in any act, practice or course of business which is fraudulent, deceptive, or manipulative.  A corresponding SEC Rule, Rule 206(4)-8 defines such prohibited conduct to include: (1) making false or misleading statements or otherwise defrauding investors or prospective investors in pooled investment vehicles; or (2) engaging in fraudulent, deceptive, or manipulative conduct with respect to any investor or prospective investor in a pooled investment vehicle.

The fraudulent conduct must also concern a material fact.  A fact is material if there is a substantial likelihood that the information would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.

A pooled investment vehicle is an investment company as defined in the Investment Company Act of 1940.  The parties do not dispute that the Athenian Fund, L.P. is a Delaware limited partnership that operated as a pooled investment vehicle.

An investment adviser is any person, who, for compensation, engages in the business of advising others as to the value of securities or as to advisability of investing in, purchasing, or selling securities.

A misrepresentation is a statement of material fact that is false or misleading when it is made.

## **DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1**

The Defendants' proposed jury instruction is verbatim from the Ninth Circuit's Model Instructions. The SEC's additional language is biased, argumentative and incomplete in its discussion of "recurring terms." The proposed instructions is also confusing in that it includes irrelevant material, e.g., the proposed definition of a "security," which is not at issue in this action. The description of the Investment Advisers Act is argumentative and incomplete. Other terms are inadequately described. To the extent definitions are appropriate, more complete and accurate definitions are presented in other proposed instructions.

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 2

### Securities – Knowingly

**Source**: Manual of Model Civil Jury Instructions for the Ninth Circuit,
2017 edition, Section 18.5


A defendant acts knowingly when he, she or it makes an untrue statement with the knowledge that the statement was false or with reckless disregard for whether the statement was true.  A defendant acts knowingly when he, she or it omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.

"Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.

## SEC'S OPPOSITION TO DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 2

Defendants' proposed jury instruction No. 2 improperly relates to the determination of scienter, either "knowingly" or "recklessly" neither of which is at issue in this case.[3]  Scienter, including references to recklessness, is not an element of the direct violations alleged by the SEC,[4] and such references would be irrelevant, improper, and would only serve to confuse the jury as to the proper elements of the claims at issue.

The SEC has alleged that Defendants directly violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.  Dkt. No. 31 (First Amended Complaint) at ¶¶ 81-92.  Section 206(4) prohibits investment advisers from, directly or indirectly, engaging in any act, practice or course of business that is

_____

[3] The SEC has moved *in limine* to exclude any evidence or argument on matters which are not elements of the charged violations, including whether the Defendants acted "knowingly" or with scienter.  Dkt. No. 60.

[4] The SEC has also alleged that Tweed aided and abetted TFSI's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.  To establish aiding and abetting liability, the Commission must show "(1) the existence of an independent primary violation; (2) actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it; and (3) 'substantial assistance' by the defendant in the commission of the primary violation."  *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996); *see also SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012).  With respect to the second element of actual knowledge of the primary violation, the SEC must prove only that Tweed knew of his role in the activity that is improper.  *SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974).  The SEC must prove only that Tweed knew of the wrong, not that he knew that TFSI was violating the law.  *See SEC v. Gold Std. Mining Corp.*, 2012 U.S. Dist. LEXIS 195875, *7 (C.D. Cal. 2012) (evaluating aiding and abetting charges pursuant to 15 U.S.C. § 78t(e)); *citing United States v. Reyes*, 577 F. 3d 1069, 1080 (9th Cir. 2009).  Severe recklessness can satisfy the knowledge requirement in an aiding and abetting case, where, as here, the alleged aider and abettor owes a duty to the defrauded party.  *SEC v. Lybrand*, 200 F.Supp.2d 384, 400 (S.D.N.Y. 2002) ("it is well-established that recklessness satisfies the scienter requirement for aider and abettor liability when the alleged aider and abettor owes a fiduciary duty to the defrauded party"); *see also Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 44 (2d Cir.), *cert. denied*, 439 U.S. 1039 (1978); *IIT v. Cornfeld*, 619 F.2d 909, 923-25 (2d Cir. 1980).

fraudulent, deceptive, or manipulative.  Rule 206(4)-8(a) defines such prohibited conduct to include: (1) making false or misleading statements or otherwise defrauding investors in pooled investment vehicles; or (2) engaging in fraudulent, deceptive or manipulative conduct with respect to any investor or prospective investor in a pooled investment vehicle.  *See Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*, Advisers Act Release No. 2628 (Aug. 3, 2007).  Scienter is not required for violations of Section 206(4) and Rule 206(4)-8; rather, a showing of negligence is sufficient.[5]  *Id*. at 12-13 ("We believe use of a negligence standard also is appropriate as a method reasonable designed to prevent fraud."); *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (scienter not required under Section 206(4)); *SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 177-178 (D.R.I. 2004) (same); *SEC v. Daifotis*, 874 F. Supp. 2d 870, 887 (N.D. Cal. 2012) (same).

Because scienter is not an element of the Defendants' direct violations, a jury instruction regarding the definition of "knowingly" or "recklessly" is irrelevant and unnecessary.

---

[5] Defendants have previously improperly relied upon a statement by a Commissioner to argue that scienter is an element of the violations charged.  (Dkt. No. 50-1, at 36:4-6.) However, such a statement is not binding legal authority and should be disregarded against the weight of the authority in this Circuit and others.  *See Siddell, v. Commissioner of Internal Revenue*, 177 F. 3d 136, 145 (1st Cir. 2000) ("statements by individual IRS employees cannot bind the Secretary [of the Treasury]"); *SEC v. Nat'l Student Mktg. Corp.*, 68 F.R.D. 157, 160 (D.D.C. 1975) ("the views of an individual Commissioner will not invariably reflect the position of the agency as a whole").

# DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 2

The Defendants' proposed jury instruction is verbatim from the Ninth Circuit's Model Instructions.

"Knowingly" should be defined in the jury instructions because actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it is required for aiding and abetting liability. *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996); *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012).

The SEC's assertion that scienter is not an element of the primary violation is also subject to dispute. (See Defendants' Objections to SEC Proposed Jury Instruction No. 5 above.

## **DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 1**
### **Affirmative Defense – Reliance on Professionals**

**Authority**: *SEC v. Goldfield Deep Mines Co.* (9th Cir. 1985) 758 F.2d 459, 467 ("[I]n in order to establish good faith reliance on the advice of counsel, appellants must show that they (1) made a complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that advice."); *United States v. Westbrooks*, 780 F.3d 593, 596 (4th Cir. 2015) ("In order to establish an advice of counsel defense, the party asserting the defense must establish "(a) full disclosure of all pertinent facts to an attorney, and (b) good faith reliance on the attorney's advice."); *SEC v. Retail Pro, Inc.* (S.D.Cal. Apr. 9, 2010, No. 08cv1620-WQH-RBB) 2010 U.S.Dist.LEXIS 35872, at *14 (reliance on accountants); *United States v. Lindo* (6th Cir. 1994) 18 F.3d 353, 356 ("The elements of a reliance on counsel defense are (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice.")

Defendants assert that they relied in good faith on Lunsford Peck as certified public accountants and Boyd Cook as a professional accountant with respect to the preparation and issuing of the quarterly reports about which the Plaintiff is complaining.

Good faith reliance on professionals is a complete defense.  To establish this defense here, the Defendants must show they: (1) made a complete disclosure to the professional; (2) requested the professional's advice as to the contemplated action; and (3) relied in good faith on that advice.

## **SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 1**

The SEC objects to Defendants' Proposed Special Jury Instruction No. 1 concerning the affirmative defense of reliance on professionals,[6] because Defendants have failed to adequately plead this defense.  *See* Dkt. No. 47 (Defendants' Answer to the First Amended Complaint).  Moreover, Defendants cannot establish all of the elements of such a defense.  Offering such a jury instruction would therefore needlessly confuse the jury and delay the proceedings as the defense of reliance on professionals is not at issue.

---

[6] The SEC has moved *in limine* to exclude evidence or argument relating to Defendants' purported reliance on the advice of professionals  Dkt. No. 62.  Defendants have very recently sought to amend their answer, on the eve of trial, to assert a last minute reliance on professionals defense.  Dkt. No. 77.  The SEC intends to oppose this motion.

**DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL**
**JURY INSTRUCTION NO. 1**

This defense is the subject of the SEC's Motion in Limine No. 3 which has been briefed by both sides.   In addition, while the defenses is subsumed in Defendants'  affirmative defense of good faith, the Defendants have also filed a Motion to Amend the Answer to specifically add this defense.

The proposed instruction is an accurate statement of the law.  To establish good faith reliance on professionals, Defendants must show they:  (1) made  a complete disclosure to the professional; (2) requested the professional's  advice as to the contemplated action; and (3) relied in good faith on that advice.

For example, in *SEC v. Goldfield Deep Mines Co.* (9th Cir. 1985) 758 F.2d 459, 467, the Court held, ("[I]n in order to establish good faith reliance on the advice of counsel, appellants must show that they (1) made a complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that advice."); *United States v. Westbrooks*, 780 F.3d 593, 596 (4th Cir. 2015) ("In order to establish an advice of counsel defense, the party asserting the defense must establish "(a) full disclosure of all pertinent facts to an attorney, and (b) good faith reliance on the attorney's advice."); *SEC v. Retail Pro, Inc.* (S.D.Cal. Apr. 9, 2010, No. 08cv1620-WQH-RBB) 2010 U.S.Dist.LEXIS 35872, at *14 (reliance on accountants); *United States v. Lindo* (6th Cir. 1994) 18 F.3d 353, 356 ("The elements of a reliance on counsel defense are (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice.")

In this case, Defendants' pled good faith as their third affirmative defense. ("Actions by Defendants were undertaken in good faith and in the absence of malicious intent to injure anyone, and were lawful, proper, privileged, and/or justified.")

Defendants reserved the right to add affirmative defenses. ("Defendants reserved the right to timely amend or add available affirmative defenses as Defendants becomes aware through discovery, other investigation or additional disclosures by Plaintiff admitting any wrongdoing or liability, each and every purported claim for relief herein is barred, in whole or in part, because the Defendants were not the makers of the allegedly fraudulent misrepresentations.") As Plaintiff did not agree that the good faith affirmative defense set forth in the answer was sufficient to encompass a reliance on professionals as an affirmative defense, Defendants have filed a motion to permit Defendants to amend their answer. A court has the power to permit a defendant to amend an answer to set forth an omitted defense. These amendments are freely permitted, See FRCP 15(a) and 6(b)(1)(B); *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd*, 789 F.3d 730, 732.

The answer may also be amended to conform to proof at trial. See FRCP 15(b)(2).

The SEC has long anticipated this defense and addressed this defense in its Motion for Summary Judgment filed July 17, 2019. Accordingly, the SEC will not be prejudiced by the inclusion of this defense. It is no surprise that Defendants relied upon accountants and other professionals in connection with the acts alleged in this case.

**DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 2**

**Advisers Act Section 206(4) and Rule 206(4)-8(A)(1) and 8(A)(2) – Elements**

**Authority**:  Advisers Act Section 206(4) and Rule 206(4)-8(a)(1) and 8(a)(2)

The Plaintiff alleges that each Defendant violated the Investment Advisers Act Section 206(4) and Rule 206(4)-8(a)(1) and 8(a)(2).   The Advisers Act is a federal law governing the conduct of investment advisers.  Each of the Defendants defrauded denies this allegation.

To prove a violation of the foregoing by each Defendant, the Plaintiff must prove as to each Defendant each of the following elements of a violation:

1.  Each Defendant was acting as an investment adviser with respect to the investment at issue; and

2.  The investment at issue was a pooled investment vehicle; and

3.  The conduct which Plaintiff alleges was fraudulent was done through the use of the mail or instrumentalities of interstate commerce; and

4.  Each Defendant:

(a) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which there were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; and

(b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

5.  Each Defendant acted knowingly in doing the alleged wrongful conduct.

If you find that the Plaintiff has proved each of the above elements, your

verdict as to this claim should be for the Plaintiff. If, on the other hand, you find that the Plaintiff has failed to prove any of these elements, your verdicts on all claims should be for the Defendants.

## SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 2

The SEC objects to Defendants' Proposed Special Jury Instruction No. 2 concerning the elements of Advisers Act Section 206(4) and Rule 206(4)-8(A)(1) and 8(A)(2) because the proposed instruction obscures the issues that the jury must determine.

First, Defendants have already admitted all the facts necessary to show that they are investment advisers. As such, the SEC has moved *in limine* to prevent Defendants from arguing that they were not. Dkt. No. 61. This jury instruction would thus unnecessarily confuse the jury as to the elements they must decide.

Second, the Athenian Fund, L.P. has already specifically held itself out to be a pooled investment vehicle, and the jury need not decide this issue, nor be confused as to whether this is an element for them to decide. Dkt. No. 50-2 (SS at P10); Dkt No. 51 (JA Tabs 5, 6, 14). The SEC has proposed language in disputed SEC Proposed Jury Instruction No. 1 (above) explaining what a pooled investment vehicle is, and that the parties do not dispute that the Athenian Fund operated as a pooled investment vehicle. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1064 (9th Cir. 2008) ("a party is not entitled to an instruction unsupported by the record").

Third, the language Defendants propose as to conduct in interstate commerce is unnecessarily confusing. Defendants' wording is that the SEC prove that "conduct which Plaintiff alleges was fraudulent" was done through interstate commerce. This statement is needlessly confusing and could instead simply read that Defendants "by use of the mails or means or instrumentalities of interstate commerce" violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8(a)(1) and (2) thereunder [17 C.F.R. § 275.206(4)-8(a)(1) and (2)].

1    Finally, Defendants have inserted a scienter element into the elements that is

2  not required.  Specifically, this jury instruction includes element (5) that the SEC

3  must prove that each Defendant acted "knowingly" in the alleged wrongful

4  conduct.  As discussed in the SEC's objection to Defendants' Proposed Jury

5  Instruction No. 2 above, scienter, including references to recklessness, is not an

6  element of the direct violations alleged by the SEC, and such references would be

7  irrelevant, improper, and would only serve to confuse the jury as to the proper

8  elements of the claims at issue.  *See Bird v. Lewis & Clark College,* 303 F.3d 1015,

9  1022 (9th Cir.2002) (holding that plaintiff's proposed jury instructions "based in

10  part on federal regulations" were properly omitted because "the proposed

11  instructions overall misstate the law").

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 2**

Defendants' proposed instruction is a correct statement of the law which tracks the language of the statute and the Rule.

## **DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 3**

### **Investment Adviser – Elements**

**Authority**:  Adviser's Act, Section202(a)(11)

The Plaintiff alleges that both Defendants were "investment advisers" under the Advisers Act subject to Section 206.  The Defendants deny that during the period at issue (the last quarter of 2012 through the first quarter of 2014) that they were investments advisers with respect to the in fund at issue.

The Adviser's Act provides that to be an  investment adviser all of the following elements must be met:

1. A person must be engaged in the business of providing advice to others or issuing reports as to securities; and

2. The person must do the foregoing for compensation.

# SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 3

The SEC objects to Defendants' Proposed Special Jury Instruction No. 3 because the proposed instruction unnecessarily limits the definition of an investment adviser under the Advisers Act subject to Section 206.  First, the Act defines an "investment adviser" as:

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.

However, the act of "advising" is broader than simply communicating a recommendation to a client.  Many investment advisers "advise" their customers by exercising control over what purchases and sales are made with their clients' funds. *Abrahamson v. Fleschner*, 568 F.2d 862, 871 (2d Cir. 1977), *cert. denied*, 436 U.S. 905, *cert. denied*, 436 U.S. 913 (1978) (control over purchases and sales constitutes investment advice).  In addition, Defendants unnecessarily restrict the explanation of what it means to be compensated.  *See SEC v. Fife*, 311 F.3d 1, 10-11 (1st Cir. 2002) (individual defendant was investment adviser under Section 202(a)(11) where he provided investment advice and, although he "has not yet received compensation, he understood that he would be compensated for his efforts").

Moreover, Defendants have already admitted all the facts necessary to show that they are investment advisers.  As such, the SEC has moved *in limine* to prevent Defendants from arguing that they were not.  Dkt. No. 61.  This jury instruction would thus unnecessarily confuse the jury as to the elements they must determine.  *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1064

1   (9th Cir. 2008) ("a party is not entitled to an instruction unsupported by the

2   record").

## DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 3

Defendants' proposed instruction is a correct statement of the law which tracks the language of the statute.

As to the disclosures of the applicable quarterly  neither Defendant was acting as an  investment adviser.   Tweed's Declaration filed in Opposition to Motion for Summary Judgment, at ¶¶ 34-35  states, "As to the disclosures of the applicable quarterly statements, neither TFSI nor I were acting as investment advisers. Neither TFSI nor I were providing advice to any of the investors about whether or not to make any investment decisions relating to the Fund at the time of Quarterly Reports were distributed to investors."   Moreover, at trial, Defendants expect to prove that during the period at issue (Q4 2012 through Q1 2014), neither TFSI nor Tweed received any compensation with respect to the Fund. Neither TFSI nor Tweed were providing advice to any of the investors about whether or not to make any investment decisions relating to the Fund at the time of Quarterly Reports were distributed to investors. The quarterly reports were prepared by accountants Lunsford Peck and Cook, whom the Defendants assert issued the reports.

In addition, as to Tweed individually, his position with TFSI did not make him personally an investment adviser. In *Wallent v. Bendelac (In re Bendelac)* 2005 Bankr. LEXIS 3484, 2005 Bankr. LEXIS 3484 (Bankr.S.D.N.Y. 2005), the Court held that the Debtor was not an investment adviser, notwithstanding that the Debtor was an executive officer and director of a corporation which had filed a form 10-KSB with the SEC identifying itself as a registered investment advisory firm, the where the Debtor testified that the corporation was actually only a broker/dealer at the relevant time and that the Debtor personally was simply a registered broker with a securities license." The Court further held, "Plaintiffs have

1   not demonstrated either the necessary facts or the legal guidance that would

2   persuade this Court that the Debtor should be considered an investment adviser for

3   the purposes of the Investment Advisers Act. The Debtor testified that he did not

4   act as an investment adviser in his capacity as an officer or director of Laidlaw,

5   stating that he was "simply a broker." 3/23 Tr. at 154-155. The Debtor may have

6   received substantial compensation from Laidlaw, but it was not shown that

7   Debtor's compensation from Laidlaw was directly related to providing investment

8   advice. *Id*., 2005 Bankr. LEXIS 3484, at \*49. *See also, Wang v. Gordon*, 715 F.2d

9   1187, 1192 (7th Cir. 1983) (Defendant general partner was not an investment

10  adviser under §202(a)(11) of the Adviser's Act where he was compensated for

11  selling partnership property but not for information regarding securities.)

12       The cases cited by the SEC on the issue of the status of the Defendants are

13  distinguishable. In *Abramson v. Fleshner*, 568 F.2d 862 (2d Cir. 1977), cert.

14  denied, 436 U.S. 906 and 436 U.S. 913 (1978), the general partner defendants were

15  receiving compensation and the monthly reports which contained the alleged

16  fraudulent representations were reports which provided investment advice to the

17  limited partners (*Id*. at 870); here that is not true for the Defendants with respect to

18  the time at issue.

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 4

### Maker of Statements Under the Securities Laws

**Authority:** *Janus Capital Group, Inc. v. First Derivative Traders* (2011) 564 U.S. 135.


An investment adviser cannot be liable for securities fraud where the adviser as not the "maker" of the allegedly false statement.

The Plaintiff argues that Tweed was  the "maker" of the allegedly false quarterly reports.   Tweed argues that he was not the "maker" and that the "maker" of the statements for 2012Q4 through 2013Q4 was Lunsford Peck and for 2014 Q1 it was Boyd. Lunsford Peck prepared all of these statements, except for the 2014Q1 statement.

## SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 4

The SEC objects to Defendants' proposed special instruction No. 4 for several reasons.  First, the SEC need not prove that Defendants were "makers" of statements for claims under the Investment Advisers Act.  "[I]t is far from clear that *Janus* applies to a claim under the Investment Advisers Act.  *Janus* addresses the scope of private actions under Rule 10b-5, and, in particular, language in that rule providing that it is unlawful to 'make any untrue statement of a material fact . . . in connection with the purchase or sale of any security.'" *SEC v. Reserve Mgmt. Co. (In re Reserve Fund Secs. & Derivative Litig.)*, 2012 U.S. Dist. LEXIS 191101, *35 (S.D.N.Y. Oct. 8, 2012) (citing *Janus Capital Group, Inc. v. First Derivative Traders* (2011) 564 U.S. 135).

Second, assuming *arguendo,* that even if the Court were to decide that *Janus* applies to claims under the Investment Advisers Act, Defendants' proposed jury instruction leaves out important language from *Janus* that a maker can both be someone who "makes" the misleading statement or omission, or who has "ultimate authority over it." *Janus*, 564 U.S. 135, 142 (2011).   A jury instruction should be excluded when it misstates the law.  *See Bird v. Lewis & Clark College,* 303 F.3d 1015, 1022 (9th Cir.2002) (holding that plaintiff's proposed jury instructions "based in part on federal regulations" were properly omitted because "the proposed instructions overall misstate the law").

Finally, the SEC has moved *in limine* to exclude any evidence or argument that Defendants did not "make" the statements in the quarterly account statements. Dkt. No. 61.  Defendants have previously admitted to the facts necessary to determine they were "makers" under *Janus*, and providing this jury instruction would unnecessarily confuse the jury as to the elements they must consider.

66

1  *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1064 (9th Cir.

2  2008) ("a party is not entitled to an instruction unsupported by the record").

## DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 4

The "maker" issue is a subject of the SEC's Motion in Limine No. 3 which has been briefed by both sides.

 In *Janus Capital Group, Inc. v. First Derivative Traders* (2011) 564 U.S. 135,  the Supreme Court held that in a private Rule 10b-5 action, an investment adviser could not be liable for securities fraud where the adviser was not the "maker" of the allegedly false statement.

Tweed contends that the "maker" of the statements for 2012 Q4 through 2013 Q4 was Lunsford Peck and for 2014 Q1 it was L. Boyd Cook ("Cook"). Lunsford Peck prepared all of these statements, except for the 2014 Q1 statement. Its name appears on those statements. In the 2014 Q1, that name is replaced by Cook's. Tweed received the

statements before they were sent out, but he did not instruct the accountants what to

put in them.

The matter is the subject of the SEC's Motion in Limine No. 2.

## DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 5
### Penalties – Factors

If you decide that the Plaintiff has proven the violations of law alleged in the First Amended Complaint, you must decide whether or not penalties should be awarded against each Defendant.  You may consider the following factors:

1. The degree of intent, if any, involved;

2. The isolated or recurrent nature of the infraction;

3. The Defendant's recognition of the wrongful nature of his or its conduct;

4. The likelihood, because of defendant's professional occupation, that future violations might occur;

5. The sincerity of his or its assurances against future violations.

## SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 5

As an initial matter, Defendants have offered no authority in support of Defendants' proposed Special Instruction No. 5 and the SEC objects to this instruction on that ground.  In addition, an instruction on penalties is unnecessary and likely to confuse the jury, as penalties are a matter for the court to decide, not the jury.  Although the Seventh Amendment grants Defendants the right to a jury trial on those claims for which the SEC seeks imposition of a civil penalty, that right is limited to a determination of their liability.  The Court must determine the amount of the penalty, if any.  *Tull v. United States*, 481 U.S. 412, 427 (1987).

**DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL**
**JURY INSTRUCTION NO. 5**

Defendants' have no objection to withdrawing this proposed instruction and replacing it with "Special Interrogatories" in which the jury is asked to advise the Court of its findings on these factors for consideration by the Court in determining remedies if liability is found.

## DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 6

### Penalties – Tiers

**Authority**: Adviser's Act, Section 209(e)

If you decide that the Plaintiff has proven the violations of law alleged in the First Amended Complaint, you must decide whether or not penalties should be awarded against each Defendant.  You may consider the following factors:

1. The degree of intent, if any, involved;

2. The isolated or recurrent nature of the infraction;

3. The Defendant's recognition of the wrongful nature of his or its conduct;

4. The likelihood, because of defendant's professional occupation, that future violations might occur;

5. The sincerity of his or its assurances against future violations.

## SEC'S OPPOSITION TO DEFENDANTS' PROPOSED SPECIAL INSTRUCTION NO. 6

An instruction on penalties is unnecessary and likely to confuse the jury, as penalties are a matter for the court to decide, not the jury.  Although the Seventh Amendment grants Defendants the right to a jury trial on those claims for which the SEC seeks imposition of a civil penalty, that right is limited to a determination of their liability.  The Court must determine the amount of the penalty, if any.  *Tull v. United States*, 481 U.S. 412, 427 (1987).

## **DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL JURY INSTRUCTION NO. 6**

The Defendants agree to withdraw this proposed special jury instruction.

## **DEFENDANTS' PROPOSED VERDICT FORM NO. 1**
## **ADVISERS ACT FRAUD ALLEGATIONS**
## **(TWEED FINANCIAL SERVICES, INC.)**

We answer the questions submitted to us as follows:

1.     Did Tweed Financial Services, Inc. act as an investment adviser with respect to the investment at issue?

_____     Yes          _____          No

If your answer to question 1 is yes, then answer question 2.

If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.     Was Tweed Financial Services, Inc. the "maker" of the statements which the plaintiff alleges were false and misleading?

_____     Yes          _____          No

If your answer to question 2 is yes, then answer question 3.

If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Did Tweed Financial Services, Inc.  make untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which there were made, not

misleading, to any investor or prospective investor in the pooled investment vehicle?

_____   Yes          _____          No

4.  Did Tweed Financial Services, Inc.  engage in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

_____   Yes          _____          No

If your answer to questions 3 or 4 was yes, then answer question 5.

If you answered no to questions 3 and 4, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.  Did Tweed Financial Services, Inc. act knowingly in doing the alleged wrongful conduct?

_____   Yes          _____          No

If your answer to question 5 is yes, then answer question 6.

If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6.  Did Tweed Financial Services, Inc. rely in good faith on a professional with respect to the preparation and issuing of the quarterly reports about which the plaintiff is complaining?

_____   Yes          _____          No

1

2

3

4    Signed: _____

5            Presiding Juror

6

7    Dated:  _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>SEC'S OPPOSITION TO</u>**

**<u>DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 1</u>**

As an initial matter, the SEC objects to Defendants' proposed verdict form No. 1 on the grounds that it is unduly complicated and likely to cause jury confusion. *Mattson v. Schultz*, 145 F.3d 937, 939 (7th Cir. 1998) (special verdict questions must not be "ambiguous, biased, misleading or confusing").

The SEC also objects to questions 1 and 2 on Special Verdict Form No. 1, because Defendants have admitted these facts in their responses to the SEC's First Set of Requests for Admission. These matters are the subject of the SEC's Motion *in Limine* No. 1 and have been fully briefed therein. One of the purposes of Requests for Admission is to narrow the scope of the case by removing issues from the case once and for all. *See* Adv. Comm. Note to 1970 Amendment to FRCP 36. "A matter admitted under [Rule 36 of the FRCP] is conclusively established." Defendants' cannot now ask that a jury decide a matter that they have admitted and has been conclusively established.

In addition, the SEC objects to Question No. 5 on Special Verdict Form No. 1 because defendants have improperly inserted a requirement that the Defendants must have acted "knowingly." Scienter is not required for violations of Section 206(4) and Rule 206(4)-8; rather, a showing of negligence is sufficient. *See Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*, Advisers Act Release No. 2628 (Aug. 3, 2007) at 12-13 ("We believe use of a negligence standard also is appropriate as a method reasonable designed to prevent fraud."); *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (scienter not required under Section 206(4)); *SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 177-178 (D.R.I. 2004) (same); *SEC v. Daifotis*, 874 F. Supp. 2d 870, 887 (N.D. Cal. 2012) (same). Because scienter is not an element of the Defendants' direct violations, a special verdict form inquiring whether Defendants acted knowingly is improper.

The SEC further objects to Question No. 6 on Special Verdict Form No. 1 because Defendants cannot make out the elements of the defense on the evidence in this case.  This matter has been fully briefed in the SEC's Motion *in Limine* No. 3.  Inserting this question on a verdict form will only lead to juror confusion and unduly prejudice the SEC.  Finally, this question as worded improperly suggests that the SEC's claims are limited to the quarterly account statements.  The SEC has alleged that Defendants made false statements and omissions that were not in the account statements, and has further alleged that Defendants engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative. First Amended Complaint ¶¶ 38, 41-42, 50, 53, 54-61, 62-71, 72-73, 75.

## DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 1

Defendants object to the use of general verdicts in this action and urge the use of special verdicts.  Special verdicts should be used as authorized by Rule 49(a), Fed. R. Civ. P.  As set forth at 9 Moore's Federal Practice – Civil §49.11 (2019):

> The Rule 49(a) special verdict was designed to avoid confusion . . . , appellate uncertainty, and the need for additional proceedings by identifying the bases upon which the jury rendered its verdict. Thus, special verdicts promote judicial efficiency by reducing the likelihood of new trials. Special verdicts indirectly "increase confidence in the fairness and effectiveness of the jury system" by providing valuable insight into the jury's analysis of the case.

> Special verdicts are especially helpful in cases involving multiple, alternative theories of recovery because they eliminate the uncertainty as to whether the verdict was based wholly on an improper theory requiring a retrial of the case.

*See also Rivera v. La Porte*, 896 F.2d 691, 691–692 (2d Cir. 1990) ("This appeal reveals the hazards of submitting cases of more than minimal complexity to a jury without a written form calling for either special verdicts or answers to interrogatories").

With respect to the SEC's specific objection to question nos.1 and 2, these issues are factually disputed and are the SEC's Motion *in Limine* No. 1 and are further discussed in disputed jury instructions above (see Defendants' Special Jury Instruction Nos. 3 and 4).

With respect to question no. 5, "knowingly" is repeatedly  discussed above. See, e.g.,  Defendants' Objections to SEC Proposed Jury Instruction No. 5 above.

1    With respect to question no. 6,   This defense is the subject of the SEC's

2    Motion in Limine No. 3 which has been briefed by both sides.   In addition, while

3    the defenses is subsumed in  Defendants'  affirmative defense of good faith, the

4    Defendants have also filed a Motion to Amend the Answer to specifically add this

5    defense.

6    The proposed instruction is an accurate statement of the law.  To establish good

7    faith reliance on professionals, Defendants must show they:  (1) made  a complete

8    disclosure to the professional; (2) requested the professional's  advice as to the

9    contemplated action; and (3) relied in good faith on that advice.

10   For example, in *SEC v. Goldfield Deep Mines Co*. (9th Cir. 1985) 758 F.2d

11   459, 467, the Court held, ("[I]n in order to establish good faith reliance on the

12   advice of counsel, appellants must show that they (1) made a complete disclosure

13   to counsel; (2) requested counsel's advice as to the legality of the contemplated

14   action; (3) received advice that it was legal; and (4) relied in good faith on that

15   advice."); *United States v. Westbrooks*, 780 F.3d 593, 596 (4th Cir. 2015) ("In

16   order to establish an advice of counsel defense, the party asserting the defense

17   must establish "(a) full disclosure of all pertinent facts to an attorney, and (b) good

18   faith reliance on the attorney's advice."); *SEC v. Retail Pro, Inc.* (S.D.Cal. Apr. 9,

19   2010, No. 08cv1620-WQH-RBB) 2010 U.S.Dist.LEXIS 35872, at *14 (reliance on

20   accountants); *United States v. Lindo* (6th Cir. 1994) 18 F.3d 353, 356 ("The

21   elements of a reliance on counsel defense are (1) full disclosure of all pertinent

22   facts to counsel, and (2) good faith reliance on counsel's advice.")

23   In this case, Defendants' pled good faith as their third affirmative defense.

24   ("Actions by Defendants were undertaken in good faith and in the absence of

25   malicious intent to injure anyone, and were lawful, proper, privileged, and/or

26   justified.")

27   Defendants reserved the right to add affirmative defenses. ("Defendants

28   reserved the right to timely amend or add available affirmative defenses as

81

Defendants becomes aware through discovery, other investigation or additional disclosures by Plaintiff admitting any wrongdoing or liability, each and every purported claim for relief herein is barred, in whole or in part, because the Defendants were not the makers of the allegedly fraudulent misrepresentations.") As  Plaintiff did not agree that the good faith affirmative defense set forth in the answer was sufficient to encompass a reliance on professionals as an affirmative defense, Defendants have filed a motion to permit Defendants to amend their answer. A court has the power to permit a defendant to amend an answer to set forth an omitted defense. These amendments are freely permitted, See FRCP 15(a) and 6(b)(1)(B); *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd*, 789 F.3d 730, 732.

The answer may also be amended to conform to proof at trial. See FRCP 15(b)(2).

The SEC has long anticipated this defense and addressed this defense in its Motion for Summary Judgment filed July 17, 2019. Accordingly, the SEC will not be prejudiced by the inclusion of this defense. It is no surprise that Defendants relied upon accountants and other professionals in connection with the acts alleged in this case.

## DEFENDANTS' PROPOSED VERDICT FORM NO. 2

## ADVISERS ACT FRAUD ALLEGATIONS

### (Robert Russel Tweed)

We answer the questions submitted to us as follows:

1.      Did Mr. Tweed personally act as an investment adviser with respect to the investment at issue?

_____      Yes      _____      No

If your answer to question 1 is yes, then answer question 2.

If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.      Was Mr. Tweed personally the "maker" of the statements which the plaintiff alleges were false and misleading?

_____      Yes      _____      No

If your answer to question 2 is yes, then answer question 3.

If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Did Mr. Tweed personally make untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which there were made, not misleading, to any

83

investor or prospective investor in the pooled investment vehicle?

_____          Yes          _____          No

4.  Did Mr. Tweed personally engage in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

_____          Yes          _____          No

If your answer to questions 3 or 4 was yes, then answer question 5.

If you answered no to questions 3 and 4, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.  Did Mr. Tweed personally act knowingly in doing the alleged wrongful conduct?

_____          Yes          _____          No

If your answer to question 5 is yes, then answer question 6.

If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6.  Did Mr. Tweed personally rely in good faith on a professional with respect to the preparation and issuing of the quarterly reports about which the plaintiff is complaining?

_____        Yes        _____        No

Signed: _____

        Presiding Juror

Dated: _____

**SEC'S OPPOSITION TO**

**DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 2**

As an initial matter, the SEC objects to Defendants' proposed verdict form No. 2 on the grounds that it is unduly complicated and likely to cause jury confusion. *Mattson v. Schultz*, 145 F.3d 937, 939 (7th Cir. 1998) (special verdict questions must not be "ambiguous, biased, misleading or confusing").

The SEC also objects to questions 1 and 2 on Special Verdict Form No. 2, because Defendants have admitted these facts in their responses to the SEC's First Set of Requests for Admission. These matters are the subject of the SEC's Motion *in Limine* No. 1 and have been fully briefed therein. One of the purposes of Requests for Admission is to narrow the scope of the case by removing issues from the case once and for all. *See* Adv. Comm. Note to 1970 Amendment to FRCP 36. "A matter admitted under [Rule 36 of the FRCP] is conclusively established." Defendants' cannot now ask that a jury decide a matter that they have admitted and has been conclusively established.

In addition, the SEC objects to Question No. 5 on Special Verdict Form No. 2 because defendants have improperly inserted a requirement that the Defendants must have acted "knowingly." Scienter is not required for violations of Section 206(4) and Rule 206(4)-8; rather, a showing of negligence is sufficient. *See Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*, Advisers Act Release No. 2628 (Aug. 3, 2007) at 12-13 ("We believe use of a negligence standard also is appropriate as a method reasonable designed to prevent fraud."); *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (scienter not required under Section 206(4)); *SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 177-178 (D.R.I. 2004) (same); *SEC v. Daifotis*, 874 F. Supp. 2d 870, 887 (N.D. Cal. 2012) (same). Because scienter is not an element of the Defendants' direct violations, a special verdict form inquiring whether Defendants acted knowingly is improper.

1    The SEC further objects to Question No. 6 on Special Verdict Form No. 2
2  because Defendants cannot make out the elements of the defense on the evidence
3  in this case.  This matter has been fully briefed in the SEC's Motion *in Limine* No.
4  3.  Inserting this question on a verdict form will only lead to juror confusion and
5  unduly prejudice the SEC.  Finally, this question as worded improperly suggests
6  that the SEC's claims are limited to the quarterly account statements.  The SEC has
7  alleged that Defendants made false statements and omissions that were not in the
8  account statements, and has further alleged that Defendants engaged in acts,
9  practices, or courses of business that were fraudulent, deceptive, or manipulative.
10  First Amended Complaint ¶¶ 38, 41-42, 50, 53, 54-61, 62-71, 72-73, 75.

## DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 2

Defendants object to the use of general verdicts in this action and urge the use of special verdicts.  Special verdicts should be used as authorized by Rule 49(a), Fed. R. Civ. P.  As set forth at 9 Moore's Federal Practice – Civil §49.11 (2019):

> The Rule 49(a) special verdict was designed to avoid confusion . . . , appellate uncertainty, and the need for additional proceedings by identifying the bases upon which the jury rendered its verdict. Thus, special verdicts promote judicial efficiency by reducing the likelihood of new trials. Special verdicts indirectly "increase confidence in the fairness and effectiveness of the jury system" by providing valuable insight into the jury's analysis of the case.

> Special verdicts are especially helpful in cases involving multiple, alternative theories of recovery because they eliminate the uncertainty as to whether the verdict was based wholly on an improper theory requiring a retrial of the case.

*See also Rivera v. La Porte*, 896 F.2d 691, 691–692 (2d Cir. 1990) ("This appeal reveals the hazards of submitting cases of more than minimal complexity to a jury without a written form calling for either special verdicts or answers to interrogatories").

With respect to question no. 5, "knowingly" is repeatedly  discussed above. See, e.g.,  Defendants' Objections to SEC Proposed Jury Instruction No. 5 above.

With respect to question no. 6,   This defense is the subject of the SEC's Motion in Limine No. 3 which has been briefed by both sides.   In addition, while the defenses is subsumed in  Defendants'  affirmative defense of good faith, the Defendants have also filed a Motion to Amend the Answer to specifically add this defense.

The proposed instruction is an accurate statement of the law.  To establish good faith reliance on professionals, Defendants must show they:  (1) made  a complete disclosure to the professional; (2) requested the professional's  advice as to the contemplated action; and (3) relied in good faith on that advice.

For example, in *SEC v. Goldfield Deep Mines Co*. (9th Cir. 1985) 758 F.2d 459, 467, the Court held, ("[I]n in order to establish good faith reliance on the advice of counsel, appellants must show that they (1) made a complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that advice."); *United States v. Westbrooks*, 780 F.3d 593, 596 (4th Cir. 2015) ("In order to establish an advice of counsel defense, the party asserting the defense must establish "(a) full disclosure of all pertinent facts to an attorney, and (b) good faith reliance on the attorney's advice."); *SEC v. Retail Pro, Inc.* (S.D.Cal. Apr. 9, 2010, No. 08cv1620-WQH-RBB) 2010 U.S.Dist.LEXIS 35872, at *14 (reliance on accountants); *United States v. Lindo* (6th Cir. 1994) 18 F.3d 353, 356 ("The elements of a reliance on counsel defense are (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice.")

In this case, Defendants' pled good faith as their third affirmative defense. ("Actions by Defendants were undertaken in good faith and in the absence of malicious intent to injure anyone, and were lawful, proper, privileged, and/or justified.")

Defendants reserved the right to add affirmative defenses. ("Defendants reserved the right to timely amend or add available affirmative defenses as Defendants becomes aware through discovery, other investigation or additional disclosures by Plaintiff admitting any wrongdoing or liability, each and every purported claim for relief herein is barred, in whole or in part, because the Defendants were not the makers of the allegedly fraudulent misrepresentations.") As  Plaintiff did not agree that the good faith affirmative defense set forth in the

89

answer was sufficient to encompass a reliance on professionals as an affirmative defense, Defendants have filed a motion to permit Defendants to amend their answer. A court has the power to permit a defendant to amend an answer to set forth an omitted defense. These amendments are freely permitted, See FRCP 15(a) and 6(b)(1)(B); *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd*, 789 F.3d 730, 732.

The answer may also be amended to conform to proof at trial. See FRCP 15(b)(2).

The SEC has long anticipated this defense and addressed this defense in its Motion for Summary Judgment filed July 17, 2019. Accordingly, the SEC will not be prejudiced by the inclusion of this defense. It is no surprise that Defendants relied upon accountants and other professionals in connection with the acts alleged in this case.

## DEFENDANTS' PROPOSED VERDICT FORM NO. 3

### (Tweed Financial Services, Inc.)

We answer the questions submitted to us as follows:

1.     Did Mr. Tweed personally violate the Investment Adviser's Act by committing fraud as alleged by the Plaintiff?  Before answering this question, you should review your answers to Verdict Form No. 2 (Robert Russel Tweed).  If you answered "No" on that Verdict Form to Questions 1, 2 or 5 or if you answer "No" to Question 3 and 4 , you must answer "No" to this question.

_____        Yes         _____          No

> If your answer to question 1 is yes, then answer question 2.
>
> If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.     Did Tweed Financial Services, Inc. substantially assist Mr. Tweed personally in violating the Investment Adviser's Act by committing fraud as alleged by the Plaintiff?

_____        Yes         _____          No

> If your answer to question 2 is yes, then answer question 3.
>
> If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.  Did Tweed Financial Services, Inc. have actual knowledge of  Mr. Tweed

91

personally violating the Investment Adviser's Act by committing fraud as alleged

by the Plaintiff and of its role in furthering that violation?

_____       Yes         _____         No


Signed: _____

      Presiding Juror


Dated: _____

## SEC'S OPPOSITION TO
## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 3

As an initial matter, the SEC objects to Defendants' proposed verdict form No. 3 on the grounds that it is unduly complicated and likely to cause jury confusion. *Mattson v. Schultz*, 145 F.3d 937, 939 (7th Cir. 1998) (special verdict questions must not be "ambiguous, biased, misleading or confusing"). In addition, because the SEC has not alleged that TFSI aided and abetted Tweed's violation of the Advisers Act, this verdict form is unnecessary.

The SEC objects to question one on the form, because it misstates the law with respect to a violation of Advisers Act Section 206(4) ad Rule 206(4)-8 thereunder. The Advisers Act section refers to "untrue statements of a material fact," omissions, and "acts, practices, or courses of business that were fraudulent, deceptive, or manipulative." Violations are not limited to "fraud."

The SEC also objects to questions 2 and 3 on Special Verdict Form No. 3 because they incorrectly state the law. The SEC has alleged that Tweed aided and abetted TFSI's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder. To establish aiding and abetting liability, the Commission must show "(1) the existence of an independent primary violation; (2) actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it; and (3) 'substantial assistance' by the defendant in the commission of the primary violation." *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996); *see also SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012).

With respect to the second element of actual knowledge of the primary violation, the SEC must prove only that Tweed knew of his role in the activity that is improper. *SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974). That is, the SEC must prove that Tweed knew of the wrong, but not that he knew that TFSI was violating the law. *See SEC v. Gold Std. Mining Corp.*, 2012 U.S. Dist. LEXIS 195875, *7 (C.D. Cal. 2012) (evaluating aiding and abetting charges pursuant to

93

15 U.S.C. § 78t(e)); *citing United States v. Reyes*, 577 F. 3d 1069, 1080 (9th Cir. 2009).  Severe recklessness can satisfy the knowledge requirement in an aiding and abetting case, where, as here, the alleged aider and abettor owes a duty to the defrauded party.  *SEC v. Lybrand*, 200 F.Supp.2d 384, 400 (S.D.N.Y. 2002) ("it is well-established that recklessness satisfies the scienter requirement for aider and abettor liability when the alleged aider and abettor owes a fiduciary duty to the defrauded party"); *see also Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 44 (2d Cir.), *cert. denied*, 439 U.S. 1039 (1978); *IIT v. Cornfeld*, 619 F.2d 909, 923-25 (2d Cir. 1980).  Tweed owes a fiduciary duty in Athenian Fund investors.  *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194, 84 S. Ct. 275, 284 (1963) (investment advisers have "affirmative duty" of "utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading."); *Transamerica Mortgage Adviser, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) ("Indeed, the Act's legislative history leaves no doubt that Congress intended to impose enforceable fiduciary obligations.").

## **DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 3**

Defendants withdraw this requested Special Verdict because iit is unnecessary as the FAC does not allege aiding and abetting liability against TFSI.

# VERDICT FORM NO. 4

## (Robert Russel Tweed)

We answer the questions submitted to us as follows:

1.     Did Tweed Financial Services, Inc.  violate the Investment Adviser's Act by committing fraud as alleged by the Plaintiff?  Before answering this question, you should review your answers to Verdict Form No. 1 (Tweed Financial Services, Inc.).  If you answered "No" on that Verdict Form to Questions 1, 2 or 5 or if you answer "No" to Question 3 and 4 , you must answer "No" to this question.

_____     Yes     _____          No

> If your answer to question 1 is yes, then answer question 2.
> If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.     Did Mr. Tweed personally substantially assist Tweed Financial Services, Inc. in violating the Investment Adviser's Act by committing fraud as alleged by the Plaintiff?

_____     Yes     _____          No

> If your answer to question 2 is yes, then answer question 3.
> If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.   Did Mr. Tweed personally have actual knowledge of Tweed Financial

96

1  Services, Inc. violating the Investment Adviser's Act by committing fraud as alleged

2  by the Plaintiff and of its role in furthering that violation?

3

4  _____          Yes          _____          No

5

6

7  Signed: _____

8          Presiding Juror

9

10 Dated:  _____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEC'S OPPOSITION TO
## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 4

As an initial matter, the SEC objects to Defendants' proposed verdict form No. 4 on the grounds that it is unduly complicated and likely to cause jury confusion. *Mattson v. Schultz*, 145 F.3d 937, 939 (7th Cir. 1998) (special verdict questions must not be "ambiguous, biased, misleading or confusing").

The SEC objects to question 1 on the form because it misstates the law with respect to a violation of Advisers Act Section 206(4) ad Rule 206(4)-8 thereunder. The Advisers Act section refers to "untrue statements of a material fact," omissions, and "acts, practices, or courses of business that were fraudulent, deceptive, or manipulative." Violations are not limited to "fraud."

The SEC also objects to questions 2 and 3 on Special Verdict Form No. 4 because they incorrectly state the law. The SEC has alleged that Tweed aided and abetted TFSI's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder. To establish aiding and abetting liability, the Commission must show "(1) the existence of an independent primary violation; (2) actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it; and (3) 'substantial assistance' by the defendant in the commission of the primary violation." *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996); *see also SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012).

With respect to the second element of actual knowledge of the primary violation, the SEC must prove only that Tweed knew of his role in the activity that is improper. *SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974). That is, the SEC must prove that Tweed knew of the wrong, but not that he knew that TFSI was violating the law. *See SEC v. Gold Std. Mining Corp.*, 2012 U.S. Dist. LEXIS 195875, *7 (C.D. Cal. 2012) (evaluating aiding and abetting charges pursuant to 15 U.S.C. § 78t(e)); *citing United States v. Reyes*, 577 F. 3d 1069, 1080 (9th Cir. 2009). Severe recklessness can satisfy the knowledge requirement in an aiding and

98

abetting case, where, as here, the alleged aider and abettor owes a duty to the defrauded party. *SEC v. Lybrand*, 200 F.Supp.2d 384, 400 (S.D.N.Y. 2002) ("it is well-established that recklessness satisfies the scienter requirement for aider and abettor liability when the alleged aider and abettor owes a fiduciary duty to the defrauded party"); *see also Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 44 (2d Cir.), *cert. denied*, 439 U.S. 1039 (1978); *IIT v. Cornfeld*, 619 F.2d 909, 923-25 (2d Cir. 1980). Tweed owes a fiduciary duty in Athenian Fund investors. *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194, 84 S. Ct. 275, 284 (1963) (investment advisers have "affirmative duty" of "utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading."); *Transamerica Mortgage Adviser, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) ("Indeed, the Act's legislative history leaves no doubt that Congress intended to impose enforceable fiduciary obligations.").

Finally, Question 3 refers to TFSI's role in furthering the violation, when the aiding and abetting claim is directed at Tweed's role in furthering the violation.

## DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 4

Defendants object to the use of general verdicts in this action and urge the use of special verdicts.  Special verdicts should be used as authorized by Rule 49(a), Fed. R. Civ. P.  As set forth at 9 Moore's Federal Practice – Civil §49.11 (2019):

> The Rule 49(a) special verdict was designed to avoid confusion . . . , appellate uncertainty, and the need for additional proceedings by identifying the bases upon which the jury rendered its verdict. Thus, special verdicts promote judicial efficiency by reducing the likelihood of new trials. Special verdicts indirectly "increase confidence in the fairness and effectiveness of the jury system" by providing valuable insight into the jury's analysis of the case.

> Special verdicts are especially helpful in cases involving multiple, alternative theories of recovery because they eliminate the uncertainty as to whether the verdict was based wholly on an improper theory requiring a retrial of the case.

*See also Rivera v. La Porte*, 896 F.2d 691, 691–692 (2d Cir. 1990) ("This appeal reveals the hazards of submitting cases of more than minimal complexity to a jury without a written form calling for either special verdicts or answers to interrogatories").

The questions correctly state the law for aiding and abetting.  To establish aiding and abetting liability, the Commission must show "(1) the existence of an independent primary violation; (2) actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it; and (3) 'substantial assistance' by the defendant in the commission of the primary violation."  *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996); *see also SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012).  The SEC's arguments that they do not,

demonstrate the need for a special verdict form so that the jury may correctly apply

the law.

**DEFENDANTS' PROPOSED VERDICT FORM NO. 5**

**PENALTIES**

**(Tweed Financial Services, Inc.)**

We answer the questions submitted to us as follows:

    1.    Should a penalty be awarded against Tweed Financial Services, Inc.?

_____          Yes        _____          No

          If your answer to question 1 is yes, then answer question 2.

          If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

    2.    What is the amount of the penalty which should be awarded against Tweed Financial Services, Inc.?

_____

Signed: _____

      Presiding Juror

Dated: _____

102

## SEC'S OPPOSITION TO

## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 5

A verdict form on penalties is unnecessary and likely to confuse the jury, as penalties are a matter for the court to decide, not the jury.  Although the Seventh Amendment grants Defendants the right to a jury trial on those claims for which the SEC seeks imposition of a civil penalty, that right is limited to a determination of their liability.  The Court must determine the amount of the penalty, if any.  *Tull v. United States*, 481 U.S. 412, 427 (1987).

1

## **DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT NO. 5**

2

3

4      The Defendants agree to withdraw this proposed special verdict.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS'PROPOSED VERDICT FORM NO. 6**

**PENALTIES**

**(Robert Russel Tweed)**

We answer the questions submitted to us as follows:

     1.    Should a penalty be awarded against Mr. Tweed?

_____     Yes     _____     No

         If your answer to question 1 is yes, then answer question 2.

         If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

     2.    What is the amount of the penalty which should be awarded against Mr. Tweed?

_____

Signed: _____

     Presiding Juror

Dated: _____

105

**<u>SEC'S OPPOSITION TO</u>**

**<u>DEFENDANTS' PROPOSED SPECIAL VERDICT FORM NO. 6</u>**

A verdict form on penalties is unnecessary and likely to confuse the jury, as penalties are a matter for the court to decide, not the jury. Although the Seventh Amendment grants Defendants the right to a jury trial on those claims for which the SEC seeks imposition of a civil penalty, that right is limited to a determination of their liability. The Court must determine the amount of the penalty, if any. *Tull v. United States*, 481 U.S. 412, 427 (1987).

## **DEFENDANTS' RESPONSE RE DEFENDANTS' PROPOSED SPECIAL VERDICT NO. 6**

The Defendants agree to withdraw this proposed special verdict.

# **VERDICT FORM**

## **DEFENDANT TWEED FINANCIAL SERVICES, INC.**

*As to each Question, please place a check mark beside the appropriate response.*

**1.** **Section 206(4) of the Investment Advisers Act and Rule 206(4)-8(a)(1) and 8(a)(2) thereunder**

**A.** Did the Securities and Exchange Commission prove by a preponderance of the evidence that defendant Tweed Financial Services, Inc. violated Section 206(4) of the Investment Advisers Act and Rule 206(4)-8 thereunder?

_____ YES          _____ NO

## DEFENDANTS' OPPOSITION TO
## SEC'S PROPOSED VERDICT FORM AS TO TFSI

Defendants object to the use of general verdicts in this action and urge the use of special verdicts.  Special verdicts should be used as authorized by Rule 49(a), Fed. R. Civ. P.  As set forth at 9 Moore's Federal Practice – Civil §49.11 (2019):

> The Rule 49(a) special verdict was designed to avoid confusion . . . , appellate uncertainty, and the need for additional proceedings by identifying the bases upon which the jury rendered its verdict. Thus, special verdicts promote judicial efficiency by reducing the likelihood of new trials. Special verdicts indirectly "increase confidence in the fairness and effectiveness of the jury system" by providing valuable insight into the jury's analysis of the case.

> Special verdicts are especially helpful in cases involving multiple, alternative theories of recovery because they eliminate the uncertainty as to whether the verdict was based wholly on an improper theory requiring a retrial of the case.

*See also Rivera v. La Porte*, 896 F.2d 691, 691–692 (2d Cir. 1990) ("This appeal reveals the hazards of submitting cases of more than minimal complexity to a jury without a written form calling for either special verdicts or answers to interrogatories").

## SEC RESPONSE TO DEFENDANTS' OPPOSITION
## TO THE SEC'S PROPOSED VERDICT FORM

The verdict form proposed by the SEC is a general verdict form that requires the jury to apply the law to the facts and make a determination of liability.  The use of such verdict forms are within the discretion of the Court.  *R. H. Baker & Co. v Smith-Blair, Inc.*, 331 F.2d 506, (9th Cir.1964).  Moreover, a general verdict form is appropriate, where, as here, the issues to be decided are of minimal complexity.  Defendants have admitted they are investment advisers and that they issued quarterly account statements to investors.  Dkt. No. 64, at Ex. 5 and 6, Resp. Nos. 7, 14, 22, 25.  Defendants have admitted that they lost $850,000 of the Athenian Fund's capital in investments with QAMF and Teamwork Retail.  Dkt. No. 47 (Answer ¶ 44); Dkt. No. 64, Ex. 5 and 6 (RFA No. 28).  Defendants have admitted that they never distributed audited financial statements to investors.  Dkt. No. 64, Ex. 5 and 6 (RFA No. 32).

The SEC has alleged that Defendants made false statements and material omissions to investors, and engaged in a deceptive scheme to cover up those false statements and omissions by failing to distribute audited financials to investors.  As has been set forth in detail elsewhere in these proposed instructions, the relevant culpability standard is negligence.  This not a case involving "multiple, alternative theories of recovery" and Defendants' liability can be decided without the need for special interrogatories.

To the extent that the Court believes that special interrogatories are appropriate, those questions should be limited to factual findings, not conclusions of liability.  Fed. R. Civ. Proc. 49(b) ("court may submit to the jury forms for a general verdict, together with written questions on one or more *issues of fact* that the jury must decide") (emphasis added.)

## **VERDICT FORM**

## **DEFENDANT ROBERT RUSSEL TWEED**

*As to each Question, please place a check mark beside the appropriate response. Only answer Question 2 if you answered Yes to the claim against Defendant Tweed Financial Services, Inc.*

    1. **FIRST CLAIM:**    **Section 206(4) of the Investment Advisers Act and Rule 206(4)-8(a)(1) and 8(a)(2) thereunder**

    **A.**    Did the Securities and Exchange Commission prove by a preponderance of the evidence that defendant Robert Russel Tweed violated Section 206(4) of the Investment Advisers Act and Rule 206(4)-8 thereunder?

_____ YES    _____ NO

    2.    **SECOND CLAIM:  Aiding and abetting defendant Tweed Financial Services, Inc.'s violations of Section 206(4) of the Investment Advisers Act and Rule 206(4)-8(a)(1) and 8(a)(2) thereunder**

    Did the Securities and Exchange Commission prove by a preponderance of the evidence that defendant Robert Russel Tweed aided and abetted defendant Tweed Financial Services, Inc.'s violations of Section 206(4) of the Investment Advisers Act and Rule 206(4)-8(a)(1) and 8(a)(2) thereunder?

111

_____ YES          _____ NO

## **DEFENDANTS' OPPOSITION TO**
## **SEC'S PROPOSED VERDICT FORM AS TO TWEED**

Defendants object to the use of general verdicts in this action and urge the use of special verdicts.  Special verdicts should be used as authorized by Rule 49(a), Fed. R. Civ. P.  As set forth at 9 Moore's Federal Practice – Civil §49.11 (2019):

> The Rule 49(a) special verdict was designed to avoid confusion . . . , appellate uncertainty, and the need for additional proceedings by identifying the bases upon which the jury rendered its verdict. Thus, special verdicts promote judicial efficiency by reducing the likelihood of new trials. Special verdicts indirectly "increase confidence in the fairness and effectiveness of the jury system" by providing valuable insight into the jury's analysis of the case.

> Special verdicts are especially helpful in cases involving multiple, alternative theories of recovery because they eliminate the uncertainty as to whether the verdict was based wholly on an improper theory requiring a retrial of the case.

*See also Rivera v. La Porte*, 896 F.2d 691, 691–692 (2d Cir. 1990) ("This appeal reveals the hazards of submitting cases of more than minimal complexity to a jury without a written form calling for either special verdicts or answers to interrogatories").

**SEC RESPONSE TO DEFENDANTS' OPPOSITION**
**TO THE SEC'S PROPOSED VERDICT FORM**

The verdict form proposed by the SEC is a general verdict form that requires the jury to apply the law to the facts and make a determination of liability. The use of such verdict forms are within the discretion of the Court. *R. H. Baker & Co. v Smith-Blair, Inc.*, 331 F.2d 506, (9th Cir.1964). Moreover, a general verdict form is appropriate, where, as here, the issues to be decided are of minimal complexity. Defendants have admitted they are investment advisers and that they issued quarterly account statements to investors. Dkt. No. 64, at Ex. 5 and 6, Resp. Nos. 7, 14, 22, 25. Defendants have admitted that they lost $850,000 of the Athenian Fund's capital in investments with QAMF and Teamwork Retail. Dkt. No. 47 (Answer ¶ 44); Dkt. No. 64, Ex. 5 and 6 (RFA No. 28). Defendants have admitted that they never distributed audited financial statements to investors. Dkt. No. 64, Ex. 5 and 6 (RFA No. 32).

The SEC has alleged that Defendants made false statements and material omissions to investors, and engaged in a deceptive scheme to cover up those false statements and omissions by failing to distribute audited financials to investors. As has been set forth in detail elsewhere in these proposed instructions, the relevant culpability standard is negligence. This not a case involving "multiple, alternative theories of recovery" and Defendants' liability can be decided without the need for special interrogatories.

To the extent that the Court believes that special interrogatories are appropriate, those questions should be limited to factual findings, not conclusions of liability. Fed. R. Civ. Proc. 49(b) ("court may submit to the jury forms for a general verdict, together with written questions on one or more *issues of fact* that the jury must decide") (emphasis added.)

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

[X]   U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036-3648 Telephone No. (323) 965-3998; Facsimile No. (323) 965-3908.

On October 25, 2019, I caused to be served the document entitled **JOINT SET OF DISPUTED JURY INSTRUCTIONS** on all the parties to this action addressed as stated on the attached service list:

[  ]   **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

     [  ]   **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

     [  ]   **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[  ]   **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[  ]   **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[  ]   **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X]   **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[  ]   **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

     I declare under penalty of perjury that the foregoing is true and correct.

Date: __October 25, 2019_____          __/s/ Lynn M. Dean_____
                                              Lynn M. Dean

*SEC v. Tweed Financial Services, Inc., et al.*

**United States District Court—Central District of California**
**Case No. 2:17-cv-07251-FMO-E**

## SERVICE LIST

Edward Gartenberg, Esq. *(via ECF only)*
Gartenberg, Gelfand, Hayton LLP
15260 Ventura Blvd., Suite 1920
Sherman Oaks, CA 91403
Tel: (213) 542-2111
Fax: (213) 542-2101
Email: egarternberg@ggslaw.com
*Attorneys for Defendants*