LYNN M. DEAN (Cal. Bar No. 205562)
Email: deanl@sec.gov
KATHRYN C. WANNER (Cal. Bar No. 269310)
Email: wannerk@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>TWEED FINANCIAL SERVICES, INC. and ROBERT RUSSEL TWEED,<br><br>Defendants. | Case No. 2:17-cv-07251-FMO-E<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWER TO THE FIRST AMENDED COMPLAINT**<br><br>Date: November 21, 2019<br>Time: 10:00 a.m.<br>Ctrm: 6D<br>Judge: Hon. Fernando M. Olguin<br><br>Trial Date: November 26, 2019<br><br>Pretrial Conference/Motion in Limine Hearing Date: November 8, 2019 |

I.      INTRODUCTION ................................................................................1

II.     DEFENDANTS SHOULD NOT BE PERMITTED TO AMEND................1

        A.      Legal Standard for Amendment .............................................1

        B.      The SEC Will Be Prejudiced By Amendment .....................3

        C.      Amendment is Futile Because the Defense Is Meritless....................6

                1.      Advice of Professionals is Not an Affirmative Defense
                        and Is Irrelevant ..........................................................6

                2.      Defendants Cannot Establish the Elements of the Defense.......8

                3.      Defendants Admit They Issued Investor Account Statements ..9

        D.      Defendants Remain Bound By Their Admissions ...........................10

III.    CONCLUSION..............................................................................15

i

# **TABLE OF AUTHORITIES**

## **Cases**

*Ajayi v. Aramark Business Services*,
  336 F.3d 520 (7th Cir. 2003) ..................................................................1

*Am. Title Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988) ........................................................ 10, 14

*Bell v. Allstate Life Ins. Co.*,
  160 F.3d 452 (8th Cir. 1998) ..................................................................3

*Bethany Pharmacal Co. v. QVC, Inc.*,
  241 F.3d 854 (7th Cir. 2001) ..................................................................6

*Bisno v. United States*,
  299 F.2d 711 (9th Cir. 1961) ..................................................................7

*Butts v. Aurora Health Care, Inc.*,
  387 F.3d 921 (7th Cir. 2004) ..................................................................1

*C.F. v. Capistrano Unified School Dist.*,
  654 F.3d 975 (9th Cir. 2011) ..................................................................3

*Castiglione v. United States Life Ins. Co. in City of N.Y.*,
  262 F.Supp.2d 1025 (Dist Ariz. 2003) ................................................10

*Conley v. Gibson*,
  355 U.S. 41 (1957)..................................................................................2

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
  918 F.2d 1446 (9th Cir. 1990) ................................................................3

*DCD Programs, Ltd. Leighton*,
  833 F. 2d 183 (9th Cir. 1987) ................................................................2

*Dukes v. South Carolina Ins. Co.*,
  770 F.2d 545 (5th Cir.1985) ................................................................10

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ................................................................2

*Foman v. Davis*,
  371 U.S. 178 (1962)................................................................................2

*Global Tech. & Trading, Inc. v. Tech Mahindra Ltd.*,
  789 F. 3d 730 (7th Cir. 2015) ............................................................4, 5

*Hoodho v. Holder*,
  558 F.3d 184 (2d Cir. 2009) ........................................................ 10, 14

*Howey v. United States*,
  481 F. 2d 1187 (9th Cir. 1973) ..............................................................3

ii

*In re Carney,*
    258 F.3d 415 (5th Cir. 2001) ...................................................................10

*Jackson v. Bank of Hawaii,*
    902 F.2d 1385 (9th Cir. 1990) ................................................................3, 4

*L.G. Philips LCD Co. v. Tatung Co.,*
    243 F.R.D. 133 (D. Del. 2007) ...............................................................4, 7

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
    175 F.R.D. 640 (C.D. Cal. 1997) ..............................................................3

*Moore v. Kayport Package Express, Inc.*
    885 F. 2d 531 (9th Cir. 1989) ...................................................................2

*Morongo Band of Mission Indians v. Rose,*
    893 F.2d 1074 (9th Cir. 1990) .................................................................3

*Pioneer Investment Services Co. v. Brunswick Associates L.P.,*
    507 U.S. 380 (1993) .................................................................................5

*Provenz v. Miller,*
    102 F.3d 1478 (9th Cir. 1996) .................................................................8

*Roman v. Mukasey,*
    553 F.3d 184 (2d Cir. 2009) ...................................................................10

*SEC v. Coffey*
    493 F.2d 1304 (6th Cir. 1974) .................................................................7

*SEC v. Gold Std. Mining Corp.*
    2012 U.S. Dist. LEXIS 195875, *7 (C.D. Cal. 2012) ...............................7

*SEC v. Goldfield Deep Mines,*
    758 F.2d 459 (9th Cir.1985) ....................................................................8

*SEC v. Huff,*
    758 F. Supp. 2d 1288 (S.D. Fl. 2010) ......................................................7

*SEC v. Lybrand,*
    200 F.Supp.2d 384 (S.D.N.Y. 2002) ........................................................7

*SEC v. Retail Pro. Inc.,*
    2010 WL 1444993 (S.D. Cal. Apr. 9, 2010) ............................................8

*SEC v. Steadman,*
    967 F.2d 636 (D.C. Cir. 1992) .................................................................8

*SEC v.Yuen,*
    2006 U.S. Dist. LEXIS 33938 (C.D. Cal. Mar. 16, 2006) ........................6

*Sonoma County Ass'n of Retired Employees v. Sonoma County,*
    708 F.3d 1109 (9th Cir. 2013) .................................................................2

*United States v. Reyes*
    577 F. 3d 1069 (9th Cir. 2009) ................................................................7

iii

*Valerio v. Andrew Youngquist Construction*,
    103 Cal. App. 4th 1264 (1st Dist. Ct. of Appeal 2002)................................14

*Winters v. Fru-Con Inc.*,
    498 F.3d 734 (7th Cir. 2007) ...........................................................................1


**Investment Advisers Act of 1940**

Section 206(4)
    [15 U.S.C. § 80b-6(4)]......................................................................................7


**Advisers Act Rules**

Rule 206(4)-8
    [17 C.F.R. § 275.206(4)-8] ...............................................................................7


**Federal Rules**

Fed. R. Civ. Proc. 15(a)(2)....................................................................................4

Fed. R. Civ. Proc. 36(b) .......................................................................................9

Fed. R. Civ. Proc.  6(b)(1)(B) ...............................................................................5

Fed. R. Evid. 402 ....................................................................................... 1, 8, 10

Fed. R. Evid. 403 ....................................................................................... 1, 8, 10


**Other Authorities**

2 McCormick on Evid. § 254 (6th ed. 2006) .................................................. 10, 14

4 Witkin, *Cal. Procedure* (4th ed. 1997) Pleading,
    § 413, pp. 510-511 ..........................................................................................14

*Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*,
    Advisers Act Release No. 2628 (Aug. 3, 2007) ...............................................8

Wright & Miller, *6 Federal Practice & Procedure*
    § 1487, at 637-642 (2d ed. 1990)...................................................................6

I. **INTRODUCTION**

Plaintiff Securities and Exchange Commission ("SEC") respectfully opposes Defendants' motion to amend their answer to the first amended complaint. Defendants' motion should be denied because such an amendment on the eve of trial is both unduly prejudicial to the SEC and futile.

The SEC is prejudiced because it has not had an opportunity to take discovery of this defense and will be subject to unfair surprise at trial, with incomplete evidence to impeach the defense. Moreover, the defense is futile because (1) it acts solely to negate scienter and the direct violations alleged against Defendants do not require the SEC to prove scienter; (2) the Defendants cannot establish all the elements of the defense; and (3) Defendants have admitted that they issued the quarterly account statements they now contend were created by their outside accountants.

Because the SEC will be severely prejudiced and Defendants cannot establish the elements of the defense of advice of accounting professionals, argument and evidence of such a defense would be unduly prejudicial to the SEC, and would serve to confuse the issues, mislead the jury, cause undue delay, and waste the Court's time. Fed. R. Evid. 402, 403. Accordingly, Defendants should not be permitted to amend their answer to enable them to present the defense at trial. *Id.*

II. **DEFENDANTS SHOULD NOT BE PERMITTED TO AMEND**

A. **Legal Standard for Amendment**

The decision to permit leave to amend is within the discretion of the court and denying leave to amend a pleading is an abuse of discretion only if no reasonable person could agree with the decision. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (quoting *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004)); *Ajayi v. Aramark Business Services*, 336 F.3d 520, 530 (7th Cir. 2003). In deciding whether justice requires granting leave to amend, the factors to be considered include: (1) the presence or absence of undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4)

prejudice to the opposing party; and (5) futility of the proposed amendment. *Moore v. Kayport Package Express, Inc.* 885 F. 2d 531, 538 (9th Cir. 1989) (affirming denial of leave to file amended complaint).  Leave to amend may be denied at the district court's discretion for "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Not all of the factors identified by the Supreme Court in *Foman* "merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Defendants are therefore correct that "[p]rejudice is the touchstone of the inquiry under rule 15(a)." *Id.* (granting leave to amend a complaint where allegations were not frivolous, plaintiffs were attempting in good faith to meet heightened pleading requirements of the Private Securities Litigation Reform Act of 1995, and had a reasonable chance of successfully stating a claim); *Sonoma County Ass'n of Retired Employees v. Sonoma County,* 708 F.3d 1109, 1117 (9th Cir. 2013) (granting leave to amend a complaint where the controlling precedent changed midway through the litigation).  However, the cases cited by Defendants actually support the SEC's position that the Court should deny Defendants leave to amend.[1]  For example, it is true the Ninth Circuit has held that "rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *DCD Programs, Ltd. Leighton*, 833 F. 2d 183, 186 (9th Cir. 1987) (permitting amended complaint where lawsuit was "still in its early stages").  However, that liberality is subject to "the qualification that amendment of the complaint does not cause the opposing party undue prejudice." *Id.*

---

[1] Defendants' citation to *Conley v. Gibson* is misleading.  Dkt. No. 77 at p. 5.  In that case, the Supreme Court was concerned with the sufficiency of a complaint under Federal Rule of Civil Procedure 8.  *Conley v. Gibson,* 355 U.S. 41, 48 (1957).

It is well settled that prejudice and delay are valid reasons for denying leave to amend. *Morongo Band of Mission Indians v. R*ose, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of leave to amend complaint after a two year delay due to inordinate delay and prejudice to defendant); *Bell v. Allstate Life Ins. Co*., 160 F.3d 452, 454 (8th Cir. 1998) (affirming denial of motion to amend complaint filed after the discovery cut-off due to prejudice to the defendants in having to reopen discovery close to the trial date, and because the only reason for the untimeliness of the motion was plaintiff's lack of due diligence); *C.F. v. Capistrano Unified School Dist.,* 654 F.3d 975, 985 (9th Cir. 2011) (affirming grant of leave to amend because "there was no undue delay, bad faith, dilatory motive or undue prejudice to [plaintiff]"); *Howey v. United States*, 481 F. 2d 1187, 1190 (9th Cir. 1973) (acknowledging undue prejudice to opposing party as a reason to deny leave to amend). "Undue delay is a valid reason for denying leave to amend." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 175 F.R.D. 640, 643 (C.D. Cal. 1997) quoting *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1454 (9th Cir. 1990). "Considerable delay with no reasonable explanation is relevant where a proposed amendment would cause prejudice to the other party or would significantly delay resolution of the case." *Id.* quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (affirming grant of summary judgment where appellee would have been unduly prejudiced by permitting appellants to file an amended complaint).

Defendants' motion should be denied because the SEC will be unduly prejudiced if Defendants are permitted to amend their answer at this late date and because the amendment is futile.

## B.    The SEC Will Be Prejudiced By Amendment

"'[P]rejudice' is a reduction in the plaintiff's ability to meet the defense on the merits—if, say, a witness has died, or documents have been destroyed, during the time between when the defense should have been raised and when it was actually raised." *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F. 3d 730, 732-

3

733 (7th Cir. 2015).  The prejudice to the SEC in permitting Defendants to amend their answer at this late hour is manifest.  Although Courts do have the power to permit amendment of pleadings even during trial, such amendments should only be permitted when (1) when doing so will aid in presenting the merits and (2) does not unfairly surprise or prejudice the opposing party.  Fed. R. Civ. Proc. 15(a)(2); *Jackson*, 213 F.3d at 390.  Moreover a party "does not have an unfettered right to determine when to raise the advice of [professionals] defense, and there is a point in litigation when it becomes too late to raise the defense.  *L.G. Philips LCD Co. v. Tatung Co.*, 243 F.R.D. 133, 137 (D. Del. 2007) (permitting the belated assertion of advice of counsel where the parties were still conducting discovery).

The time for Defendants to amend their Answer is long past. It is less than 30 days to trial.  The scheduling order in this case required that any motions to amend be filed by no later than April 2, 2018.  Dkt. No. 26 at p. 17.  Discovery closed on January 4, 2019 with expert discovery continuing to June 14, 2019.  Dkt. Nos. 41 and 49. The SEC moved for summary judgment on July 17, 2019.  Dkt. No. 50. Defendants' failure to plead advice of professionals as a defense has denied the SEC the opportunity to take discovery regarding the defense.

Defendants correctly note that the SEC has known the identity of the outside accountants retained by Defendants and took their testimony in its pre-litigation investigation.  Dkt. No. 77 at p. 8.   However, the SEC was not aware that Defendants intended to argue that they relied upon the advice of these accountants in deciding what information to include in the quarterly account statements.  Declaration of Lynn M. Dean ("Dean Decl.") ¶ 2.  Arguing that "no percipient witness deposition is impacted" by their untimely disclosure, as Defendants do at page 8 of their motion, is not only an unsupported conclusion, it is nonsensical.  The SEC's examination of these witnesses and of Tweed himself would obviously have been different had it known that Defendants were asserting this defense. *Id.*  The SEC would have requested documents regarding this defense and taken the

depositions of these witnesses on the defense had it known of it.  *Id.*  Nor does Defendants' flat assertion that "[p]resumably these same individuals will be available for the SEC at trial," cure the prejudice to the SEC, which will now find itself in the position of being surprised by witness testimony with incomplete evidence to impeach them.  Dkt. No. 77 at p. 8.

Defendants also argue that the SEC cannot be prejudiced because the SEC proactively briefed the possibility that Defendants would raise the defense that they relied upon professionals in the SEC's Motion for Summary Judgment. Dkt. No. 50-1, pages 25 and 26 of 53.  But the SEC would in fact be prejudiced by Defendants' proposed amendment, because Defendants' counsel raised advice of professionals as a defense for the first time in the meet and confer immediately prior to the filing of the summary judgment motion.  Dean Decl. ¶ 3.  That meet and confer took place on June 21, 2019, over 5 months after the January 4, 2019 fact discovery cut-off.  Dkt. No. 50 at p. 3; Dkt. No. 41 at p. 1.  The June 2019 disclosure could not and did not cure the prejudice that late assertion of the defense presents to the SEC.

Nor can Defendants' citation to Federal Rule of Civil Procedure Rule 6(b)(1)(B) cannot save their motion.  That Rule permits extensions of time where a party "failed to act because of excusable neglect."   Fed. R. Civ. Proc.  6(b)(1)(B); *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 732 (7th Cir. 2015).  Excusable neglect has been defined as "simple, faultless omissions to act and, more commonly, omissions caused by carelessness."  *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 388 (1993).  Here, Defendants have known of this defense since the day that the Complaint was filed, when the SEC put them on notice that it alleged that Tweed Financial Services, Inc., through Tweed, issued false and misleading quarterly account statements to investors.  Dkt. No. 1 at ¶ 94.  The only argument that Defendants offer to excuse their failure to assert the defense is that defense counsel "believed the affirmative defense raised relating to Defendants' conduct being in 'good faith,' would encompass the fact that Defendants

acted in reliance upon professionals." Dkt. No. 77 at p. 4. This is tantamount to an admission that Defendants were aware of the defense but made a conscious decision not to plead it. That is not "excusable neglect." The facts of his interaction with the outside accountants were known to Tweed long before Defendants answered the Complaint. If Defendants were aware of a possible defense of advice of professionals they should have pled it.

### C.    Amendment is Futile Because the Defense Is Meritless

The Court should also deny leave to amend because the amendment is futile. *Bethany Pharmacal Co. v. QVC, Inc.,* 241 F.3d 854, 861 (7th Cir. 2001) (declining leave to amend complaint where amendment would be futile); *see also* Wright & Miller*, 6 Federal Practice & Procedure* § 1487, at 637-642 (2d ed. 1990) ("If the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend.").

### 1.    Advice of Professionals is Not an Affirmative Defense and Is Irrelevant

Contrary to Defendants bald assertion, good faith reliance on professionals is not a "complete defense." Dkt. No. 77 at p. 6.[2] "Reliance on a professional is not an affirmative defense but merely one factor that a court may consider, along with the rest of the evidence presented, when evaluating whether a defendant acted with scienter." *SEC v. Yuen*, 2006 U.S. Dist. LEXIS 33938 *112 (C.D. Cal. Mar. 16, 2006) ("good faith reliance upon the advice of auditors does not negate the fact a defendant acted with scienter, nor is it a complete defense to securities fraud"). A genuine

---

[2] The SEC has alleged that Defendants made a series of misrepresentations to investors and engaged in deceptive conduct separate from the account statements from which they now seek to distance themselves. Even if Defendants could establish an advice of professionals defense with respect to the quarterly investor account statements – which they cannot – that defense is irrelevant to the other misconduct alleged by the SEC, which includes false and misleading statements to investors by Tweed in emails and by telephone, selective redemption of investors and accompanying misrepresentations regarding fund liquidity, and the failure to distribute audited account statements to investors.

affirmative defense has been defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *L.G. Philips,* 2007 U.S. Dist. LEXIS 50822. A defense that "merely negates some element of plaintiff's *prima facie* case is not truly an affirmative defense." *Id.*

The purpose of a reliance on professionals defense is to negate a defendant's scienter, or intent to defraud. *See Bisno v. United States,* 299 F.2d 711, 719 (9th Cir. 1961) (reliance on counsel is a "circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent."); *SEC v. Huff*, 758 F. Supp. 2d 1288, 1351 (S.D. Fl. 2010) (holding the SEC had not established *scienter* regarding misrepresentations and omissions because a company should be able to rely on auditor's advice so long as no conspiracy to deceive) (emphasis added). But "fraudulent intent" is not an element of the direct violations alleged against Defendants here, so evidence intended to negate proof of scienter is irrelevant.[3]

The SEC has alleged that Defendants violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder. Dkt. No. 31 at ¶¶ 9, 88-101. Section 206(4) prohibits investment advisers from, directly or indirectly, engaging in any act, practice or course of business that is fraudulent, deceptive, or manipulative. Rule 206(4)-8(a) defines such prohibited conduct to include: (1) making false or misleading statements or otherwise defrauding investors or prospective investors in

---

[3] With respect to its aiding and abetting claim, the SEC must prove only that Tweed knew of his role in activity that is improper. *SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974). That is, the SEC must prove only that Tweed knew of the wrong, not that he knew that TFSI was violating the law. *See SEC v. Gold Std. Mining Corp.*, 2012 U.S. Dist. LEXIS 195875, *7 (C.D. Cal. 2012) (evaluating aiding and abetting charges pursuant to 15 U.S.C. § 78t(e)); *citing United States v. Reyes*, 577 F. 3d 1069, 1080 (9th Cir. 2009). Severe recklessness can satisfy the knowledge requirement in an aiding and abetting case, where, as here, the alleged aider and abettor owes a duty to the defrauded party. *SEC v. Lybrand*, 200 F.Supp.2d 384, 400 (S.D.N.Y. 2002) ("it is well-established that recklessness satisfies the scienter requirement for aider and abettor liability when the alleged aider and abettor owes a fiduciary duty to the defrauded party").

pooled investment vehicles; or (2) engaging in fraudulent, deceptive, or manipulative conduct with respect to any investor or prospective investor in a pooled investment vehicle. *See Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*, Advisers Act Release No. 2628 (Aug. 3, 2007). Scienter is not required for violations of Section 206(4) and Rule 206(4)-8; rather, a showing of negligence is sufficient. *Id*. at 12-13 ("We believe use of a negligence standard also is appropriate as a method reasonably designed to prevent fraud."); *SEC v. Steadman*, 967 F.2d 636, at 647 (D.C. Cir. 1992) (scienter not required under Section 206(4)). Because scienter is not at issue, argument or evidence relating to advice of counsel is irrelevant. Allowing Defendants to amend their answer to add an irrelevant defense, thereby opening the door to irrelevant evidence at trial, would unnecessarily mislead the jury and waste time. Fed. R. Evid. 402, 403.

### 2.     Defendants Cannot Establish the Elements of the Defense

To avail themselves of an advice of professionals defense, Defendants "must show that they (1) made a complete disclosure to [the professional]; (2) requested advice from [the professional] as to the legality of a contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that advice." *SEC v. Goldfield Deep Mines*, 758 F.2d 459, 467 (9th Cir.1985); *SEC v. Retail Pro. Inc*., 2010 WL 1444993 (S.D. Cal. Apr. 9, 2010); *see also Provenz v. Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996).

Although Defendants did hire outside accountants, they have never identified the subject matter of any advice they purportedly sought, what disclosures Tweed made in seeking the advice, what advice he purportedly received, and whether he followed it. Dkt. No. 51-92 (Tweed Decl. ¶ 25). The actual evidence is that Boyd Cook, the accountant from the outside firm that Tweed retained to prepare investor account statements, was not a CPA. Dkt. No. 50-2 (SS at P90-P93); Dkt. No. 51 (JA Tab 32, 52). Cook testified that he kept the value of the QAMF investment unchanged in the financial statements for several quarters in 2012 and 2013 because

8

1   he was told to do so by Tweed.  Dkt. No. 50-2 (SS at P95); Dkt. No. 51 (JA Tabs 32,

2   52).  Similarly, when the QAMF and Retail Teamwork investments were written

3   down in 2014, Cook did so without seeing any supporting documents, because Tweed

4   told him to.  Dkt. No. 50-2 (SS at P96); Dkt. No. 51 (JA Tabs 32, 52).  Indeed,

5   Defendants' own purported expert, Bernerd Young, admitted that the accountants had

6   testified that they prepared the account statements based on representations made to

7   them by Tweed.  Dkt. No. 51-2, Ex. 2 at pp. 152:10-153:4.

8        The only evidence that Defendants have adduced to date on this defense is a

9   self-serving declaration by Tweed in opposition to the SEC's motion for summary

10  judgment.  That declaration, which presumably will be the substance of Tweed's live

11  testimony, is flatly contracted by all the other documents and testimony in the record.

12  Accordingly, Defendants cannot prove an advice of counsel defense.  They should

13  not be permitted to confuse the jury and waste the Court's time by amending their

14  answer so that they can present Tweed's self-serving testimony in an effort to do so.

### 3.   Defendants Admit They Issued Investor Account Statements

16       Amendment to add the defense would also be futile because Defendants have

17  admitted in their responses to the SEC's First Set of Requests for Admission that

18  "from October 2012 to the first quarter of 2014, *TFSI, acting through Tweed, issued*

19  *quarterly account statements to Athenian Fund investors."*  Dkt. No. 64, at Ex. 5 and

20  6, Resp. No. 22 (emphasis added).  Defendants admitted in their Answer that even

21  after Teamwork Retail filed for bankruptcy protection in August 2013, *TFSI, acting*

22  *through Tweed, issued Third Quarter 2013 account statements* to the Athenian

23  Fund's investors that valued the investment based on the full value of the loan plus

24  accrued interest.  Dkt. No. 47 (Answer ¶ 50) (emphasis added).

25       Admissions in an answer or in response to Requests for Admission ("RFA")

26  conclusively establish the admitted facts.  RFA admissions are "conclusively

27  established unless the court, on motion, permits the admission to be withdrawn or

28  amended."  Fed. R. Civ. Proc. 36(b).  Admissions made in RFAs are binding and

*cannot* be explained away or contradicted by other evidence. *In re Carney,* 258 F3d 415, 421 (5th Cir. 2001); *Castiglione v. United States Life Ins. Co. in City of N.Y.,* 262 F.Supp.2d 1025, 1030 (Dist Ariz. 2003). Since Rule 36 admissions are conclusive as to the matters admitted, they cannot be overcome by contradictory affidavit testimony or other evidence in the summary judgment record, and Defendants' attempts to revive this settled issue by way of contrary evidence must be disallowed. *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548–49 (5th Cir.1985). Likewise, it is well-settled that admissions in an answer are conclusively established and are not subject to proof. *Hoodho v. Holder*, 558 F.3d 184, 190-92 (2d Cir. 2009) (admissions during pleading stage are binding); *Roman v. Mukasey*, 553 F.3d 184, 186-87 (2d Cir. 2009) (per curiam) (same); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (statement in an answer in a civil case is a binding judicial admission). "Judicial admissions are not evidence at all. Rather, they are formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Hoodho*, 558 F.3d at 191 (quoting 2 McCormick on Evid. § 254 (6th ed. 2006)). Argument and evidence at trial contrary to Defendants' admissions would only serve to confuse the issues, mislead the jury, cause undue delay, and waste the Court's time. Fed. R. Evid. 402 and 403. This Court should not permit Defendants to introduce evidence or argument contradicted by their prior admissions.

### D.   Defendants Remain Bound By Their Admissions

If the Court does permit Defendants to Amend their Answer at this late date, Defendants must not be permitted to alter the admissions they previously made. In their Answer, Defendants admitted the following facts:

1)    TFSI is a California corporation headquartered in San Marino. Dkt. No. 47  (Answer ¶ 10)

2)    Tweed formed TFSI in 1992 to provide investment advisory services to

his clients.  Dkt. No. 47  (Answer ¶ 10)

3) During the relevant period TFSI was a California registered investment adviser.  Dkt. No. 47  (Answer ¶ 10)

4) TFSI terminated its California investment adviser registration on April 30, 2015.  Dkt. No. 47  (Answer ¶ 10)

5) TFSI is still an active California corporation that purports to provide financial planning services.  Dkt. No. 47  (Answer ¶ 10)

6) Tweed is the sole owner and President of TFSI, and manages TFSI's portfolio, operations and day-to-day activities.  Dkt. No. 47  (Answer ¶ 11)

7) Tweed holds Series 7, 24, 31, 63 and 65 securities licenses.  Dkt. No. 47 (Answer ¶ 11)

8) The Athenian Fund, L.P. is a California limited partnership that was formed in 2008 and operates as an unregistered private fund. (RFA No. 4)

9) TFSI and Tweed formed the Athenian Fund on January 22, 2008. RFA No. 5; Dkt. No. 47 (Answer ¶ 18)

10) From January 22, 2008 to October 2017, TFSI was the general partner of the Athenian Fund as well as the Athenian Fund's investment adviser and administrator.  RFA No. 7; Dkt. No. 47 (Answer ¶18)

11) At all relevant times, TFSI was the general partner of the Athenian Fund as well as the Athenian Fund's investment adviser and administrator and it had discretionary authority over the Fund's investments.  Dkt. No. 47 (Answer ¶18)

12) The Athenian Fund was managed by TFSI, which was controlled by Tweed.  Dkt. No. 47 (Answer ¶ 15)

13) Tweed handled the investment decisions and day-to-day operations of TFSI, including the investment decisions for the Athenian Fund.  Dkt. No. 47 (Answer ¶18)

14) In exchange for its services, TFSI was entitled to collect a monthly management fee based on a percentage of the Athenian Fund's assets and a quarterly

payment based on the performance of the Fund.  Dkt. No. 47 (Answer ¶19)

15)    From December 2009 to March 2010, Tweed, through TFSI, raised more than $1.7 million from 24 investors for the Athenian Fund.  RFA No. 9; Dkt. No. 47 (Answer ¶ 20)

16)    In October 2010, Tweed asked Richardson to return all of the Athenian Fund's investment in QAMF because QAMF was generating lower than expected returns. Dkt. No. 47  (Answer ¶ 29)

17)    In October 2010, when Tweed asked Eric Richardson to return all of Athenian Fund's investment in QAMF, Richardson told him that he had invested $650,000 of the approximately $1.7 million invested by Athenian Fund in a purported one-year note with Luminary.  (RFA No. 15; Dkt. No. 47 (Answer ¶ 29)

18)    By February 2012, Tweed learned that the FBI had executed a search warrant at Richardson's office.  (RFA No. 17; Dkt. No. 47 (Answer ¶ 33)

19)    Tweed received a February 17, 2012 letter from Richardson.  Dkt. No. 47  (Answer ¶ 35)

20)    In June 2012, the U.S. Attorney's Office for the District of Utah filed felony bank fraud charges against Richardson.  Dkt. No. 47 (Answer ¶ 36)

21)    On July 12, 2012, Richardson notified Tweed that he was resigning as the co-manager of QAMF due to "extraneous events."  Dkt. No. 47 (Answer ¶ 36)

22)    In July 2012, Tweed understood that Richardson was resigning because he was being criminally prosecuted.  Dkt. No. 47 (Answer ¶ 36)

23)    In June 2012, Tweed learned that Richardson had been indicted for bank fraud.  Dkt. No. 47 (Answer ¶ 7)

24)    In November 2012, Richardson pleaded guilty to the bank fraud charge and was sentenced to more than one year in prison, followed by supervised release, and ordered to pay restitution.  Dkt. No. 47 (Answer ¶ 39)

25)    In the first quarter of 2014, Tweed caused the Athenian Fund to partially write down the value of the QAMF investment to the principal amount of $650,000.

Dkt. No. 47 (Answer ¶ 43)

26)     To date, TFSI has not recovered the $650,000 QAMF investment.  Dkt. No. 47 (Answer ¶ 44)

27)     In March 2011, TFSI and Tweed caused the Athenian Fund to loan $200,000 of the $924,460 that Richardson had returned from the initial QAMF investment to Teamwork Retail.  (RFA No. 25; Dkt. No. 47 (Answer ¶ 45)

28)     Tweed informed TFSI's outside accountant Boyd Cook that interest on the Teamwork Retail loan continued to accrue.  Dkt. No. 47 (Answer ¶ 47)

29)     On June 12, 2013, Tweed received an email message notifying him that Teamwork Retail planned to file for reorganization under Chapter 11 of the Bankruptcy Code.  (Dkt. No. 47 (Answer ¶ 7, 49)

30)     Even after Teamwork Retail filed for bankruptcy protection in August 2013, TFSI, acting through Tweed, issued Third Quarter 2013 account statements to the Athenian Fund's investors that valued the investment based on the full value of the loan plus accrued interest.  Dkt. No. 47 (Answer ¶ 50)

31)     Tweed allowed 10 investors to redeem a total of approximately $676,000 in capital from the Athenian Fund from 2010 through 2012.  Dkt. No. 47 (Answer ¶ 54)

32)     Four investors who requested redemptions in 2010 received the entire amount of their capital contribution back. Dkt. No. 47  (Answer ¶ 55)

33)     One of the investors who received its entire capital contribution back was the TFSI Profit Sharing Plan, which had invested $65,000 in the Athenian Fund. Dkt. No. 47 (Answer ¶ 56)

34)     One investor who cashed out in February 2012 received $99,911.43 of his initial $100,000 investment.  Dkt. No. 47 (Answer ¶ 59)

35)     Tweed's stepson, whose investment was completely redeemed in the first quarter of 2012, received $50,103.25, which was more than his $50,000 original investment.  Dkt. No. 47 (Answer ¶ 59)

13

36)    Beginning in 2012, Tweed began to deny redemptions requests by the Athenian Fund's investors because the Fund had insufficient liquidity to satisfy the requests.  Dkt. No. 47 (Answer ¶ 60).

These admissions go to the very heart of the SEC's case, and formed the basis for decisions SEC counsel made about what discovery to take and forego in this matter.  Dean Decl. ¶ 4.  As set forth above, admissions in an answer are conclusively established and are not subject to proof.  *Hoodho*, 558 F.3d at 190-92 (admissions during pleading stage are binding); *Am. Title Ins. Co.*, 861 F.2d at 226 (statement in an answer in a civil case is a binding judicial admission).  Judicial admissions withdraw a fact from issue and dispense with the need for proof of the fact.  "Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case . . . ."  *Hoodho*, 558 F.3d at 191 (quoting 2 McCormick on Evid. § 254 (6th ed. 2006)).  "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *Am. Title Ins. Co*., 861 F.2d at 226 (internal quotation marks and citation omitted).  "Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them."  *Id*.  "A statement in a[n] . . . answer . . . is a judicial admission."  *Id*.[4]  Because the SEC relied on Defendants' admissions in putting together its case, it would be severely prejudiced if Defendants were permitted to withdraw them now.  Accordingly, if the Court does grant leave to amend the answer, under no circumstances should Defendants be permitted to

---

[4] *See also*, 4 Witkin, *Cal. Procedure* (4th ed. 1997) Pleading, § 413, pp. 510-511 (An admission in the pleadings may be commented on in argument and relied on as part of the case.  "And it is fundamentally different from evidence: It is a *waiver of proof* of a fact by conceding its truth, and it has the effect of removing the matter from the issues.  Under the doctrine of 'conclusiveness of pleadings,' a pleader is bound by well pleaded material allegations or by failure to deny well pleaded material allegations. [Citations.]);" *Valerio v. Andrew Youngquist Construction*, 103 Cal. App. 4th 1264, 1271 (1st Dist. Ct. of Appeal 2002) ("When allegations in a complaint are admitted by the answer (a) no evidence need be offered in their support; (b) evidence is not admissible to prove their untruth; (c) no finding thereon is necessary; (d) a finding contrary thereto is error").

withdraw their prior admissions.

## III.  <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants' motion for leave to amend their answer should be denied.

Dated:  October 31, 2019

<u>/s/ Lynn M. Dean</u>
Lynn M. Dean
Kathryn C. Wanner
Counsel for Plaintiff
Securities and Exchange Commission

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

> U.S. SECURITIES AND EXCHANGE COMMISSION
> 444 S. Flower Street, Suite 900, Los Angeles, California 90071
> Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On October 31, 2019, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWER TO THE FIRST AMENDED COMPLAINT** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  October 31, 2019                    */s/ Lynn M. Dean*
                                           Lynn M. Dean

16

*SEC v. Tweed Financial Services, Inc., et al.*

**United States District Court—Central District of California
Case No. 2:17-cv-07251-FMO-E**

## SERVICE LIST

Edward Gartenberg, Esq. *(ECF)*
Gartenberg, Gelfand, Hayton LLP
15260 Ventura Blvd., Suite 1920
Sherman Oaks, CA 91403
Tel: (213) 542-2111
Fax: (213) 542-2101
Email: egarternberg@ggslaw.com
*Attorneys for Defendants*

17